FILED COPY: MAY 23, 2008
08CV3020   EDA
JUDGE ST. EVE
MAGISTRATE JUDGE COX

## U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| The CIT Group/Equipment Financing, Inc., | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| Plaintiff, | ) | No. |
| | ) | |
| v. | ) | |
| | ) | |
| B.E.S.C.R., Inc., an Illinois corporation, | ) | |
| Elizabeth M. Eastwood, Steven H. Artstein, | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT

Plaintiff, The CIT Group/Equipment Financing, Inc. ("CIT"), a Delaware corporation, complains of defendants, B.E.S.C.R., Inc., an Illinois corporation ("BESCR"), Elizabeth M. Eastwood ("Eastwood") and Steven H. Artstein ("Artstein") as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is complete diversity among the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

2.      Venue is proper in this district under 28 U.S.C. 1391(b), because Designer resides in this district, and because a substantial part of the events giving rise to the claims made herein occurred in this district.

### The Parties

3.      CIT is a Delaware corporation with its principal office in Livingston, New Jersey.

4.      BESCR is an Illinois corporation maintaining its principal place of business in the City of Chicago, County of Cook, State of Illinois.

1

5.      Eastwood is an individual residing at a property commonly known as 2337 Wyckwood Drive, City of Aurora, Kane County, State of Illinois.

6.      Artstein is an individual residing at a property commonly known as 915 Huckleberry Lane, Northbrook, County of Cook, State of Illinois.

### Common Facts

7.      On or about February 15, 2005, BESCR entered into a lease agreement with Insight Financial Corporation ("Insight") for the lease of certain copier equipment ("Master Lease") collectively referred to as Savin Digital Copier Equipment ("Equipment").  A copy of the Master Lease is attached as Exhibit A**.**

8.      On or about February 25, 2005, Eastwood, as President of BESCR, accepted receipt and installation of the Equipment.  A copy of the Certificate of Acceptance is attached as Exhibit B**.**

9.      On or about February 25, 2005, Eastwood and Artstein each personally guaranteed, *inter alia*, the payment and performance of all obligations by BESCR under the Master Lease ("Personal Guarantee").  A copy of the Personal Guarantee is attached as Exhibit C.

10.      On or about February 25, 2005, Insight assigned the Master Lease to CIT ("Assignment").  A copy of the Assignment is attached hereto as Exhibit D.

11.      On or about February 25, 2005, Eastwood, as President of BESCR, accepted the Assignment from Insight to CIT.  *See* bottom of page 2 of the Assignment attached as Exhibit D.

#169870 v2

**COUNT I**
**BREACH OF CONTRACT FOR LOSS OF RENT AND OTHER COSTS**

12.    Plaintiff realleges paragraphs 1 through 11 as paragraphs 12 through 22 of Count I.

23.    In accordance with the Assignment and Master Lease, BESCR was to make 32 monthly payments in the amount of $5,193.28 to CIT commencing on June 1, 2005.  See page 1, ¶2 of Exhibit D.

24.    BESCR has failed to make any payments to CIT since its last payment in or about April 18, 2007.

25.    CIT performed all of its obligations under the Note.

26.    On or about March 27, 2008, a demand was made for BESCR to pay the outstanding balance.  A copy of the demand letter to BESCR is attached hereto as Exhibit E.

27.    On or about March 27, 2008, a demand was made to each of the personal guarantors for Eastwood and/or Artstein to pay the outstanding balance.  Copies of both demand letters to the personal guarantors are attached as Exhibit F.

28.    BESCR, Eastwood and Artstein have failed to make any payment.

29.    As of May 13, 2008, the outstanding balance on the Master Lease is $143,906.46 including $109,632.45 in past due rental payments, $25,212.21 in late charges and fees, and $9,061.80 in past due rental taxes.

30.    The outstanding balance is and has been accruing late charges and fees in accordance with the Master Lease.  See ¶10 of Exhibit A.

31.    CIT is entitled to recover its attorneys' fees, costs, expenses, and other damages incurred in having to bring this action against BESCR, Eastwood, and/or Artstein.  See ¶10 of Exhibit A and Exhibit C.

#169870 v2

**WHEREFORE**, Plaintiff, CIT, prays that this Court enter a judgment in its favor and against defendants, BESCR, Eastwood, and Artstein, as follows:

    A.  For a judgment in the sum of $143,906.46 plus late charges, fees, and other expenses accrued through the date of judgment in accordance with the terms set forth in the Master Lease;

    B.  For costs and contractual attorneys' fees in connection with this action; and

    C.  For any further relief as this Court deems just and proper.

**COUNT II**
**BREACH OF CONTRACT FOR VALUE OF LOST EQUIPMENT**

32.    Plaintiff realleges paragraphs 1 through 11 as paragraphs 32 through 42 of Count II.

43.    BESCR assumed all risk of, *inter alia*, loss, damage, or destruction of the Equipment. *See* ¶6(a) of Exhibit A.

44.    Upon information and belief, the Equipment has been lost, damaged, or destroyed.

45.    BESCR owes to CIT the Casualty Value of the Equipment as defined in paragraph 6(c)(ii) of the Master Lease. See ¶6(c)(ii) of Exhibit A.

46.    The Casualty Value of the Equipment is $122,304.00.  See Exhibit B to Equipment Schedule No. 1 to Master Lease of Exhibit A.

47.    CIT is entitled to recover its attorneys' fees, costs, expenses, and other damages incurred in having to bring this action against BESCR, Eastwood, and/or Artstein.  See ¶10 of the Master Lease attached hereto as Exhibit A and Personal Guaranty attached as Exhibit C.

**WHEREFORE**, Plaintiff, CIT, prays that this Court enter a judgment in its favor and against defendants, BESCR, Eastwood, and Artstein, as follows:

4

D.  For a judgment in the sum of $122,304.00;

E.  For costs and contractual attorneys' fees in connection with this action; and

F.  For any further relief as this Court deems just and proper.

The CIT Group/Equipment Financing, Inc.,
a Delaware corporation, Plaintiff

/s/ Agata P. Karpowicz
By:  One of its Attorneys

Bruce Menkes
ARDC No. 6187337
Agata P. Karpowicz
ARDC No. 6280323
Mandell Menkes LLC
333 West Wacker Drive, Suite 300
Chicago, Illinois 60606
Telephone: (312) 251-1000

#169870 v2

08CV3020 EDA
JUDGE ST. EVE
MAGISTRATE JUDGE COX

# LIST OF EXHIBITS TO COMPLAINT

EXHIBIT A – Master Lease

EXHIBIT B – Certificate of Acceptance

EXHIBIT C – Personal Guarantee

EXHIBIT D – Assignment

EXHIBIT E – BESCR demand letter

EXHIBIT F – 2 Demand letters, 1 to each personal guarantor

#170061 v1

**EXHIBIT A**

# MASTER LEASE AGREEMENT

CERTIFIED
COPY
MMB
3/8/05

**LESSOR:** INSIGHT FINANCIAL CORPORATION, a Delaware corporation
1935 Shermer Road, Northbrook, IL  60062

**LESSEE:** B.E.S.C.R., Inc, an Illinois corporation
11 S. LaSalle St, Suite 900, Chicago, IL  60603

**AGREEMENT DATE:** February 15, 2005

**LEASE AGREEMENT NO:** 993

This contract is a Master Lease Agreement The terms of each Equipment Schedule ( Schedule ) hereto are subject to any and all conditions and provisions set forth herein at the time of execution of such Schedule as the same may have been amended prior to the execution of such Schedule Each Schedule shall provide a description of Equipment, Lease Term, Rental Payment(s), Location of Equipment, Commencement Date, Commitment Expiration Date and such other information as may be required Each Schedule is enforceable according to the terms and conditions contained therein and in the event of a conflict between the language of the Master Lease Agreement and any Schedule hereto, the language of the Schedule shall prevail in respect to that Schedule  Each Schedule together with the terms and conditions of this Master Lease Agreement incorporated therein is referred to herein as the "Lease" or "Lease Agreement "  Lessor, by its acceptance hereof, hereby leases to Lessee, and the Lessee hereby leases from Lessor, in accordance with the terms and conditions set forth herein and in the applicable Schedule, the Equipment described on the Schedule and in any attachments thereto together with all replacement parts, additions, accessories, alterations and repairs incorporated therein or now or hereafter affixed to such Equipment (the "Equipment").

## 1 LEASE TERM

This Master Lease Agreement shall be effective from the date hereof. As to any particular item of Equipment, the term shall continue as stated in the applicable Schedule, from the respective Commencement Date, as, from time to time, Equipment described in any Schedule is accepted by Lessee Said term shall be automatically extended for an additional twelve (12) month period at the monthly lease rate in effect at the end of said term unless and until terminated by either party hereto giving the other not less than one hundred eighty (180) days prior written notice. Acceptance ("Acceptance") shall occur on the following applicable date:  (i) in the case of Equipment acquired by Lessor from a third party vendor which Equipment by its nature does not require installation, the date of delivery of the item of Equipment to Lessee; (ii) in the case of Equipment acquired by Lessor from a third party Vendor which Equipment by its nature does require installation, the day the Equipment is installed; or (iii) in the case of an item of Equipment which is the subject of a sale and leaseback between Lessor and Lessee, the date upon which Lessee purchases such Equipment from Lessee

## 2. PAYMENTS OF RENT

Unless otherwise set forth in the respective Schedule, the following shall apply: The first rental payment shall be due upon the Acceptance of the Equipment by Lessee, and such payment shall cover the lease month or other period commencing on the Commencement Date Each subsequent rental payment shall be due and payable in advance, for the lease period covered by such payment, on the first day thereof. In the event Acceptance occurs prior to the Commencement Date, interim rental shall be paid by Lessee in the amount equal to a proration on a per diem basis of the Monthly Rent, as hereinafter defined, for the period commencing as of the date of Acceptance to the Commencement Date  All rental and other payments by Lessee under this Lease shall be made to Lessor at its address stated above or at such other address as Lessor may designate in writing and if payment shall be made by check, such check shall arrive at such address on or before the date the rental payment shall be due. Monthly rent payable with respect to each item of Equipment ("Monthly Rent") shall be as set forth for such item in the applicable Schedule. Any and all amounts payable to Lessor hereunder other than Monthly Rent shall be considered and referred to herein as "Supplemental Rent " Monthly Rent, together with Supplemental Rent, shall be referred to herein as "Rent " This Lease provides for a net lease, and the Rent due hereunder from Lessee to Lessor shall be absolute and unconditional and shall not be subject to any abatement, recoupment, defense, claim, counter-claim, reduction, set-off, or any other adjustment of any kind for any reason whatsoever

## 3 ADDITIONAL SUMS PAYABLE BY LESSEE

(a)  All transportation, transit insurance and other charges payable for delivery of the Equipment to Lessee, and for installation of the Equipment, shall be paid by Lessee

(b) Lessee shall promptly pay all costs, expenses and obligations of every kind and nature incurred in connection with the use, maintenance, servicing, repair or operation of the Equipment which may arise or be payable during the lease term of such Equipment hereunder, except as specifically provided herein, and shall keep the Equipment in as good repair condition and working order as when delivered to Lessee hereunder  reasonable wear and tear from the proper use thereof alone excepted, and shall furnish any and all parts, mechanisms and devices required to keep the Equipment in such good repair, condition and working order, at the expense of Lessee, and in addition will permit the manufacturer to make all free-of-charge engineering changes all so that the Equipment will remain acceptable to the manufacturer for

maintenance. Without limiting the foregoing, Lessee shall, during the continuance of this Lease, at its own expense make appropriate arrangements for maintenance of each item of Equipment, including without limitation with respect to each item of Equipment entering into and maintaining in force a contract with the manufacturer of the Equipment or other person or entity approved in writing by Lessor covering at least prime shift maintenance

(c)  Lessee shall indemnify and hold harmless Lessor against and shall pay all federal, state, county or local taxes, fees or other charges, however designated (together with any related interest or penalties not arising from negligence on the part of Lessor), imposed or assessed against or with respect to this Lease, Rent hereunder, the Equipment, Lessor or Lessee or payable by Lessor or Lessee with respect to the use, lease, sale purchase delivery, possession, sublease or ownership of the Equipment, excepting only (i) taxes on or to the extent measured by the net income of Lessor, franchise taxes and gross receipts taxes in the nature of an income tax; and (ii) sales, use or similar taxes or other amounts paid by Lessor if, and only if, any such taxes or other amounts are included as part of the acquisition cost of any Equipment

## 4  WARRANTIES

(a)  Lessor hereby warrants and covenants to Lessee that so long as no Event of Default has occurred under the applicable Schedule hereto. Lessee shall and may quietly have, hold and enjoy the Equipment and every part thereof leased hereunder for the term of this Lease, as such term may be extended hereunder, free from disturbance by Lessor or its agents, employees, successors or assigns, or by anyone (whether the holder of a lien or otherwise) claiming solely by, through or under Lessor LESSEE HAS EXCLUSIVELY SELECTED AND CHOSEN THE TYPE, DESIGN, CONFIGURATION, SPECIFICATION AND QUALITY OF THE EQUIPMENT HEREIN LEASED AND THE VENDOR. DEALER, SELLER, MANUFACTURER OR SUPPLIER THEREOF (the "Seller"). LESSEE LEASES, HIRES AND RENTS THE EQUIPMENT "AS IS, WHERE IS "  LESSOR HAS NOT MADE AND MAKES NO, AND HEREBY EXPRESSLY DISCLAIMS ANY OTHER, EXPRESS OR IMPLIED WARRANTY WHATSOEVER HEREUNDER, INCLUDING ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR ANY PURPOSE, OR OTHERWISE, REGARDING THE EQUIPMENT OR ANY PART OR THE DESIGN OR CONDITION THEREOF  Subject to the provisions of Section 10 hereof, Lessor hereby transfers and assigns to Lessee during the term of this Lease all of its right, title and interest in any express or implied warranties and covenants of any Equipment manufacturer or vendor which are assignable by Lessor  Lessor shall not be liable for any loss or damage suffered by Lessee or by any other person or entity, direct or indirect or consequential, including, but not limited to, business interruption and injury to persons or property, resulting from the non-delivery or late delivery installation failure or faulty operation, condition, suitability or use of the Equipment leased by Lessee hereunder or for any failure of any representations, warranties or covenants made by the Seller. Any claims of Lessee, with respect to claims discussed in the preceding sentences, shall not be made against Lessor but shall be made, if at all, solely and exclusively against Seller, or any persons other than the Lessor

(b)  Lessee, at the time of execution of this Master Lease Agreement and any Schedule hereto, hereby warrants and represents to Lessor, Secured Party, as hereinafter defined, and their respective successors and assigns: (i) that execution, delivery and performance of this Lease Agreement have been duly authorized by all necessary corporate action on its part and are not in conflict with its charter or bylaws or with or constitute a breach of or default under any indenture, contract or agreement by which it is bound, or with any statute, judgment, decree rule or regulation binding upon it; (ii) that no consent or approval of any trustee or holder of any indebtedness or obligation, and no consent or approval of, or taking of any other action with respect to, any governmental authority, is necessary for the execution, delivery or performance of this Lease Agreement (iii) that this Lease Agreement is legal, valid, binding and enforceable against the Lessee in accordance with its terms, subject to enforcement limitations imposed by rules of equity or by bankruptcy or similar laws; (iv) Lessee is an Illinois corporation validly existing and in good standing under the laws of the jurisdiction of its incorporation and the jurisdiction(s) where the Equipment will be located and has adequate corporate power to enter into and perform this Lease; (v) Lessee's organizational number is 58657875; and (vi) there are no actions, suits or proceedings pending or, to the knowledge of Lessee threatened against or affecting Lessee in any court or before any governmental commission, board or authority which, if adversely determined, will have a materially adverse effect on the ability of Lessee to perform its obligations under this Lease

INITIAL: Lessee _[signature]_                    Lessor _MMB_

**5  POSSESSION, USE AND MAINTENANCE OF THE EQUIPMENT**

(a)  The Equipment shall be kept by Lessee (i) subject to inspection by Lessor at reasonable times and manner, (2) at Lessee's address, as stated on each Schedule hereto, which Equipment shall not be relocated without prior written consent of Lessor, which consent shall not be unreasonably withheld, (3) free of all security interests of any kind whatever, liens encumbrances and other claims except (i) those of persons claiming solely against Lessor but not Lessee on account of obligations which Lessee is not required by this Lease to discharge, (ii) liens of current taxes not delinquent (except liens for taxes which are being contested by Lessee as provided in Section 3 hereof), (4) marked with the manufacturer's identification marks or numbers and if requested by Lessor or Secured Party, conspicuously labeled with labels supplied by Lessor or Secured Party to disclose Lessor's and any Secured Party's interest in the Equipment, and (5) in good and efficient working order, condition and repair, reasonable wear and tear excepted, and acceptable for maintenance under the manufacturer's maintenance agreement at the expiration of the Lease Term, if such agreement is then generally available for the item of Equipment, Lessee will, within ten (10) working days of receiving notice thereof, promptly notify Lessor in writing of any mortgage, pledge, lien, attachment, charge, encumbrance or right of others which has arisen with respect to the Equipment.

(b)  Lessee shall use the Equipment with due care to prevent injury thereto, and to any person or property, and in conformity with all applicable laws, ordinances, rules, regulations and other requirements of any insurer or governmental body and with all requirements of the manufacturer with respect to the use, maintenance and operation of the Equipment. Except as provided below, Lessee shall not modify any Equipment without the prior written consent of Lessor, which consent shall not be unreasonably withheld. Lessee shall be entitled, from time to time during the term of this Lease, without written consent of Lessor, to acquire and install, at Lessee's expense, such additional features, options or modifications as may be available at such time which (i) shall be of the type which are readily removable without causing material damage to the Equipment; (ii) will not impair the originally intended function or use of the Equipment in which they are installed; and (iii) will not interfere with Lessee's ability to obtain and maintain the maintenance contract required by Section 3 hereof. Any such additional feature, option or modification shall become the property of Lessor. It is the intention and understanding of both Lessor and Lessee that the Equipment shall be and at all times remain separately identifiable personal property. Lessee shall not permit any Equipment to be installed in, or used, stored or maintained with, any personal property (except other Equipment leased hereunder) in such manner or under such circumstances that such Equipment might be or become an accession to or confused with such other personal property. Lessee shall not permit any Equipment to be installed in or used, stored or maintained with, any real property in such a manner or under such circumstances that any person might acquire any rights in such Equipment paramount to the rights of Lessor or Secured Party by reason of such Equipment being deemed to be real property or a fixture thereon

**6  RISK OF LOSS**

(a)  Lessee assumes and shall bear the entire risk of partial or complete loss, theft, damage, destruction, condemnation, requisition, taking by eminent domain or other interruption or termination of use of the Equipment from any cause whatsoever, whether or not insured against, from the date of delivery of the Equipment until the Equipment is returned to and received by Lessor. Except as otherwise expressly provided herein, no such loss, theft, damage, destruction, condemnation, requisition, taking by eminent domain or other interruption or termination of use of the Equipment, and no delay, deficiency or absence of insurance proceeds, and no unavailability, delay or failure of supplies, parts, mechanisms, devices or service for the Equipment or any failure of the Equipment to function for any cause, shall relieve Lessee of the obligation to pay Rent hereunder. Except as otherwise expressly provided in Section 6(c) hereof, this Lease shall not terminate, nor shall the respective obligations of the Lessor or the Lessee be affected, by reason of any defect in or Total Casualty (as defined in this Section 6) to or obsolescence of the Equipment or any item thereof from whatever cause, or the interference with the use thereof by any private person, corporation or governmental authority, or any other disability of the Lessee to use the Equipment, or war, act of God or governmental regulations, any present or future law or regulation to the contrary notwithstanding. Lessee shall promptly notify Lessor in writing of the occurrence of any of the above events and all pertinent details connected therewith. Except during any period when an Event of Default shall have occurred, Lessee shall be entitled to the proceeds of any claim or right of Lessor or Lessee against any third party on account of any of the foregoing events and Lessee shall be subrogated to the Lessor's right of recovery therefor against any third party. Lessee shall execute and deliver from time to time such instruments and take such other action as may be necessary or appropriate more fully to vest in Lessee such proceeds or effect such subrogation, provided, however that all costs and expenses, including court costs and attorneys' fees, incurred in connection with enforcing or realizing upon any such claim or right to proceeds or obtaining enforcement of or realizing upon such right of subrogation, shall be paid by Lessee

(b)  In the event any item of Equipment is physically damaged to a material extent by any occurrence whatsoever, Lessee shall immediately notify Lessor of such damage and, unless Lessor shall determine that Section 6(c) hereof is applicable to such damage, Lessee, at Lessee's expense, shall promptly cause such item of Equipment to be returned to the condition described in Sections 3 and 5 hereof.

(c)  In the event any item of Equipment shall be lost, stolen, destroyed, damaged beyond repair or permanently rendered unfit for use for any reason whatsoever or shall be subjected to a requisition, taking by eminent domain or other interruption or termination of use for a stated period which exceeds the term of this Lease (any such occurrence being referred to as "Total Casualty"). Lessee shall promptly notify Lessor and either: (i) at its expense, obtain replacement equipment of identical make, model, configuration, capacity and condition, having utility and remaining useful life at least equal to that of each such replaced item of Equipment and, in which case, Lessee shall immediately convey to Lessor good title for all such replacement equipment free of all liens, claims or encumbrances and such replacement

2

equipment shall be substituted for each such item of Equipment replaced hereunder; or (ii) pay to Lessor, on the next Monthly Rent payment date for such item of Equipment following such Total Casualty, an amount equal to the Casualty Value (specified in the applicable Schedule) of such item of Equipment on such Monthly Rent payment date. If Lessee elects to pay the Casualty Value rather than replace the Equipment, after the payment of such Casualty Value and all Monthly Rent due and owing for the period prior to the date of the Total Casualty with respect to such item of Equipment, Lessee's obligation to pay further Monthly Rent for such item of Equipment shall cease, but Lessee's obligation to pay Rent for all other items of Equipment shall remain unchanged. So long as no Event of Default shall have occurred and provided Lessee shall have made the Casualty Value payment identified above, Lessor shall pay Lessee any insurance proceeds received by Lessor by reason of such Total Casualty up to the amount of the Casualty Value paid by the Lessee

**7  INSURANCE**

Lessee shall at all times during the term of this Lease and until the Equipment has been returned to Lessor as provided below, at its own expense, maintain physical damage insurance in an amount sufficient to cover the replacement of the Equipment but in no event less than the Casualty Value thereof, and liability and property damage insurance covering the Equipment (including Lessee's contractual liability under Section 9 hereof), in such amount, and with such companies and such endorsements and covering such hazards, as are in general usage by companies owning or operating similar property and engaged in a business similar to Lessee's in order to adequately protect the parties hereto. All insurance so maintained shall provide for a thirty-day prior written notice to Lessor and its assigns of any cancellation or reduction of coverages and an option in Lessor or its assignees to prevent cancellation by payment of premiums, shall cover both the interest of the Lessor and any assigns of which the Lessee has notice and of the Lessee in the Equipment, and shall provide that all insurance proceeds shall be payable to the Lessee, Lessor and any such assignee as their respective interests may appear at the time of any such payment. Lessor and any such assignee shall be named as additional insureds on any public liability insurance policies so maintained. Lessee shall furnish to Lessor satisfactory evidence of any insurance so maintained no later than the date of delivery of each item of Equipment and once annually, upon Lessor's request, during the term hereof. Lessee's above obligation shall commence on the initial date of delivery of the Equipment and shall continue until the Lease term hereof expires and the Equipment is returned to Lessor Lessee shall cooperate and, to the extent possible, cause others to cooperate with Lessor and all companies providing any insurance to Lessee or Lessor or both with respect to the Equipment in collection or in enforcement of any such insurance. By this Section 7, Lessor does not modify or limit any provision of this Lease relating to disclaimer of warranties and liability, or indemnity

**8  RETURN OF EQUIPMENT**

Upon the expiration or earlier termination of the Lease term, Lessee shall return the Equipment to Lessor in the same condition as received, reasonable wear and tear excepted and in the condition required by Sections 3 and 5 hereof, and shall permit the Equipment to be (a) inspected by agent(s) of the respective manufacturer(s), if Lessor so requests, (b) repaired, if necessary, so as to place the Equipment in the foregoing condition, (c) secured for shipping, and (d) shipped by truck or other normal ground transportation to such address as Lessor may designate. Lessee shall pay all expenses arising from the above clause (a) of this Section 8, and Lessee shall pay all expenses arising from the above clauses (b), (c), and (d) of this Section 8, provided that shipping charges payable by Lessee under such clause (d) shall be limited to an amount equal to the cost of shipping the Equipment to any location within the Continental United States

**9  DISCLAIMER OF LIABILITY AND INDEMNITY**

Lessor shall not be liable for, and Lessee agrees to indemnify and hold Lessor, Secured Party, and their respective successors and assigns harmless against any loss, claim, action, suit, demand, proceeding, liability, penalty cost, damage, obligation, lien or expense of any kind on account of personal injury, property damage or otherwise, including but not limited to any matter arising under strict liability in tort, imposed on or incurred by or asserted against Lessor or Secured Party or its or their successors or assigns, including without limitation attorneys' fees incurred on account of any of the foregoing, in any way relating to this Lease or any document contemplated hereby, or in any way relating to the selection manufacture, purchase, acceptance, ownership, delivery, installation, lease, sublease, possession, use, operation, maintenance, condition, return or storage of any item of Equipment, or any accident in connection therewith, or arising by operation of law as a consequence of any of the foregoing. The provisions of this Section 9 shall survive any termination of this Lease provided, however, that the Lessee shall not be required to indemnify the Lessor for (a) any claim in respect of any item of Equipment arising from acts or events which occur after possession of such item has been redelivered to the Lessor, (b) any claim resulting from the willful misconduct or negligence of the Lessor Lessee shall give Lessor prompt written notice of any matter hereby indemnified against and agrees that unless directed to the contrary by written notice by the indemnified party, Lessee shall assume full responsibility for the defense thereof on behalf of such party

**10  EVENTS OF DEFAULT**

(a)  Each of the following shall constitute an Event of Default hereunder: (i) default in the payment of any Rent hereunder and continuance thereof for ten days after notice by Lessor to Lessee of said default; (ii) failure by Lessee to make any other payment required by this Lease, or to perform any other of Lessee's agreements set forth in this Lease, within 30 days after notice thereof is given by Lessor to Lessee; (iii) Lessee becomes insolvent or admits in writing its inability to pay its debts as they mature, or applies for, consents to, or acquiesces in the

INITIAL: Lessee _[signature]_          Lessor _MMB_

appoinment of a trustee or a receiver or similar officer for it or any of its property, or, in the absence of such application, consent or acquiescence, a trustee or receiver or similar officer is appointed for Lessee or for a substantial part of its property and is not discharged within 60 days, or any bankruptcy, reorganization, debt, dissolution or other proceeding under any bankruptcy or insolvency law, or any dissolution or liquidation proceeding, is instituted by or against Lessee, and if instituted against Lessee is consented to or acquiesced in by Lessee or remains for 60 days undismissed; (iv) Lessee shall make an assignment for the benefit of creditors; (v) any warranty, representation, statement or report made by Lessee in this Lease or in any document or certificate furnished in connection with this Lease or any financing obtained in connection therewith proves to have been untrue or incorrect in any material respect; or (vi) a material adverse change in the financial position of Lessee or Co-Lessee has occurred between the time the Equipment Schedule is approved by Lessor and receipt of the signed and dated Certificate of Acceptance

(b)  Upon the occurrence of an Event of Default and so long as the same is continuing, Lessor may, at its option, declare the applicable Schedule(s) to be in default by notice to Lessee, and thereafter exercise one or more of the following remedies, as Lessor in its sole discretion lawfully elects:

(1) Proceed by court action, either at law or in equity, to enforce performance by Lessee of this Lease or to recover damages for the breach thereof.

(2) By notice terminate the applicable Schedule, whereupon all rights of Lessee in the Equipment subject to said Schedule will absolutely cease but Lessee will remain liable as hereinafter provided; and thereupon Lessee, if so requested, will at its expense promptly return the Equipment to Lessor at the place designated by Lessor within the Continental United States and in the condition required pursuant to the terms hereof, or Lessor, at its option, may enter the premises where the Equipment is located and take immediate possession of and remove the same in a lawful manner, Lessee will, without further demand, forthwith pay Lessor an amount equal to any past due Rent which was due and payable for all periods up to and including the Monthly Rent payment date following the date on which Lessor has declared the Schedule to be in default, plus, as liquidated damages for loss of a bargain and not as a penalty, an amount ("Default Value") equal to the present value of (i) the Monthly Rent which would otherwise have accrued from such Monthly Rent payment date to the end of the term of the applicable Schedule ("Rental Amount"), plus (ii) all other amounts which absent a default would have been payable by Lessee hereunder and under the applicable Schedule(s) for the full term thereof, including, if Lessee is permitted or required pursuant to any applicable Schedule to purchase the Equipment, or pay any deficiency, the purchase price or deficiency amount provided therein. Such present value shall be computed utilizing a rate of 3% per annum. Following the return of the Equipment to Lessor pursuant to this clause (2), Lessor will proceed to sell or re-lease the Equipment in a commercially reasonable manner. The proceeds of such sale or re-lease will be applied by Lessor (A) first, to pay all costs and expenses, including reasonable legal fees and disbursements, incurred by Lessor as a result of the default and the exercise of its remedies with respect thereto, (B) second, to pay Lessor an amount equal to any unpaid past due Rent due and payable the Default Value, to the extent not previously paid by Lessee, and (C) third, to reimburse Lessee for the portion of the Default Value attributable to Rental Amount to the extent (i) the full Default Value has been previously paid as liquidated damages and (ii) such proceeds are attributable or allocated to the period commencing on the Monthly Rent payment date following the date on which the Lessor has declared the Schedule to be in default and ending on the date the applicable Schedule would have terminated if Lessee had not defaulted.  Any surplus remaining thereafter will be retained by Lessor. To the extent Lessee has not paid Lessor the amounts specified in this clause (2), Lessee will forthwith pay such amounts to Lessor plus interest at the rate provided for in Section 14 (a) of this Lease Agreement, but not more than the highest lawful rate under applicable law, on such amounts, computed from the date the Default Value is payable until such amounts are paid.

(3)  If Lessee default continues ten (10) days after written or telephonic notice of such default from Lessor, Lessor may, at its option, render the system unusable until Lessor receives payment in full

(c)  In addition, Lessee shall be liable for any damages and expenses which Lessor shall have sustained by reason of the breach of any covenant, representation or warranty of this Lease other than for the payment of the Monthly Rent, and shall be liable for any and all unpaid amounts due hereunder before, during or after the exercise of any of the foregoing remedies and for all reasonable attorneys' fees and other costs and expenses incurred by reason of the occurrence of any Event of Default or the exercise of Lessor's remedies with respect thereto, including all costs and expenses incurred in connection with the return of any item of Equipment. Upon the occurrence and during the continuance of an Event of Default hereunder, Lessor shall be exclusively entitled to enforce the warranties assigned to Lessee under Section 4 hereof, notwithstanding such assignment.  No remedy referred to in this Section is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lessor at law or in equity

(d)  A cancellation or termination hereunder shall occur only upon written notice by Lessor to Lessee, or repossession as provided above, and only with respect to such items of Equipment as Lessor specifically elects to cancel or terminate by such notice or repossession. Except as to any such item of Equipment with respect to which there is a cancellation or termination, this Lease shall remain in full force and effect and Lessee shall be and remain liable for the full performance of all its obligations

11  SUBLEASE AND ASSIGNMENT

(a)  LESSEE SHALL NOT, WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR

ANY OTHER WAY TRANSFER THIS LEASE, THE EQUIPMENT OR ANY PART THEREOF, OR ANY INTEREST THEREIN, OR (ii) PERMIT THE EQUIPMENT OR ANY PART THEREOF TO BE USED BY ANYONE OTHER THAN LESSEE OR LESSEE'S EMPLOYEES; excepting only that so long as no Event of Default hereunder has occurred, Lessee may sublease the Equipment provided that the following are fulfilled as conditions precedent to Lessee's having authority hereunder so to sublease; (1) the sublease shall not contain any provisions which would or the performance of which would, with notice or lapse of time or both or neither, result in any default under this Lease; (2) the sublease shall contain a provision expressly subordinating the sublease to Lessor's rights under this Lease, a provision by which the sublessee agrees, jointly and severally with Lessee, to be bound by and perform Lessee's obligations under this Lease, and a provision prohibiting any further subleasing except on conditions identical to the provisions of this Section 11; (3) such sublease shall be assigned to Lessor as security for the performance of Lessee's obligations under this Lease, under an assignment (including a consent of the sublessee) in form and substance satisfactory to Lessor; (4) such subleasing shall not in any way adversely affect any federal, state or other tax benefits of the Lessor or Secured Party; (5) all such Uniform Commercial Code financing statements and other instruments necessary or appropriate to perfect or record Lessor's or Secured Party's interest in the sublease, the payments due thereunder and the Equipment shall have been duly executed and filed or recorded; (6) the identity of the sublessee and form of sublease shall have been approved by Lessor and Secured Party, which approval shall not be unreasonably withheld.  No such permitted sublease shall relieve Lessee of any of its obligations hereunder.  Any assignment, sublease, pledge hypothecation or transfer for which consent is required hereby and which is made without such consent shall be void.  The consent of Lessor or Secured Party to any of the foregoing applies only in the specific instance in which given, and shall not be deemed a consent to any subsequent like act by Lessee or any other person.  Subject to the foregoing, this Lease inures to the benefit of, and is binding upon, the successors and assigns of the parties hereto.  Lessee's interest herein shall not be assigned by operation of law.  Lessor and any direct or remote assignee of any right, title and interest of Lessor hereunder shall have the right at any time or from time to time to assign to any third party all or any part of its right, title and interest in and to this Lease or the Equipment.  Lessee acknowledges that any assignment or transfer by Lessor permitted under this Lease shall not materially change Lessee's duties or obligations under this Lease or materially increase the burdens or risks imposed upon Lessee

(b)  Lessor may obtain financing through financial institutions and secure such financial institutions ("Secured Party") by granting a security interest in or lien on all or any part of Lessor's interest in the Equipment, the applicable Schedule, any collateral therefor, and amounts payable by Lessee under the applicable Schedule.  Such financing may include the purchase of the Equipment by the Secured Party in the event of such financing (I) the lien instrument or security agreement will specifically provide that it is subject to Lessee's rights as herein provided; (2) such assignment of the applicable Schedule or any interest herein will not relieve Lessor from its obligations hereunder or be construed to be an assumption by Secured Party of such obligations (but Secured Party may perform, at its option, some or all of Lessor's obligations); (3) upon appropriate notice and upon request by Secured Party, Lessee will thereafter pay directly to Secured Party all Rent and other amounts payable hereunder; and (4) Lessee's obligations hereunder, including, without limitation, its obligation to pay Rent and other amounts hereunder, shall be absolute and unconditional and shall not be subject to any reduction, abatement, defense, set-off, counterclaim or recoupment for any reason whatsoever

12  PROGRESS PAYMENTS

If progress payments are approved by Lessor, not less than 15 days prior to the due date thereof, Lessee shall deliver to Lessor on the form provided by Lessor Lessee's authorization to make a progress payment.  Provided on such due date no Event of Default has occurred and be continuing hereunder or under the Master Lease Agreement, Lessor shall make the authorized progress payment set forth to the manufacturer(s) or supplier(s) specified on such authorization in respect of such progress payments made by Lessee.  Lessee agrees as follows:

(i)  To pay the Lessor or Lessor's Assignee a daily rental amount equal to the product of the aggregate amount of progress payments actually made by Lessor multiplied by the monthly rental payment as set forth in the Equipment Schedule divided by thirty (30) from the date such progress payments are in-fact made.  Lessee agrees to pay the total daily rental amount through the final Acceptance Date and thereafter, Lessee will pay the Periodic Rental Payment as and when due under the Lease.  Lessee's daily rental payments hereunder shall be made by Lessee to Lessor within ten (10) days of Lessee's receipt of a written invoice therefor (but not more than one such invoice shall be made within any given period of thirty (30) days accompanied by evidence reasonably satisfactory to Lessee indicating the amount and date of payment by Lessor of the progress payments in respect of which such payment is so requested;

(ii)  Lessee acknowledges and understands that Lessor may elect to borrow all or any portion of the progress payments required by Lessor under this provision and that as security therefor, Lessor may assign this Equipment Schedule, including, but not limited to, Lessor's rights hereunder, to the lender of such amounts or Lessor's assignee.  Lessee agrees, without notice to Lessee, Lessor may make such assignment in connection with any such borrowing and for the protection and benefit of Lessor and any such assignee, the rights of Lessor or its assignee in and to such payments shall be absolute and unconditional in accordance with Section 2 of the Master Lease Agreement

INITIAL: Lessee _____ Lessor _____

4

(iii) In the event Lessee does not deliver Lessee's Equipment Acceptance Certificate for the Equipment to Lessor on or before 3 months from the date such progress payment is made hereunder (unless such period is extended by mutual agreement of Lessor and Lessee), Lessee will pay to Lessor or Lessor's assignee, upon demand, an amount equal to the sum of all progress payments theretofore made by Lessor pursuant to this authorization, together with unpaid daily rental amounts thereon

13  LESSOR'S TAX BENEFITS

Lessee acknowledges that Lessor shall be entitled to claim all tax benefits, credits and deductions related to the Equipment for federal income tax purposes including, without limitation: (i) deductions on Lessor's cost of the Equipment for each of its tax years during the term of the Lease under any method of depreciation or other cost recovery formula permitted by the Internal Revenue Code of 1986, as amended (hereinafter called the "Code"), and (ii) interest deductions as permitted by the Code on the aggregate interest paid to any Assignee (hereinafter collectively "Lessor's Tax Benefits")  Lessee agrees to take no action inconsistent (including voluntary substitution of Equipment) with the foregoing or which would result in the loss, disallowance, recapture or unavailability to Lessor of Lessor's Tax Benefits.  Lessee hereby indemnifies Lessor and its Assignee(s) from and against (a) any loss, disallowance, unavailability or recapture of Lessor's Tax Benefits resulting from any action or failure to act of Lessee, including replacement of the Equipment plus (b) all interest, penalties, costs (including attorney fees) or additions to tax resulting from such loss, disallowance, unavailability or recapture

14  GENERAL

(a)  Any provision herein that Lessee shall take any action shall require Lessee to do so at its sole cost and expense  Lessee shall pay Lessor interest at the maximum rate permitted by applicable law, but in no event in excess of a rate of 1-1/2% per month, on any amount past due from the date it is required to make any payment of Rent or other amount hereunder  Such interest shall be payable with respect to the period commencing on the date such payment is due through the date such payment is actually made

(b)  Any notice hereunder shall be in writing and shall be deemed to be given when delivered, including but not limited to overnight courier or electronic transmission or, if mailed, on the third day after mailing by registered or certified mail, postage prepaid and addressed to Lessee or Lessor at its respective address shown on the first page hereof, or to either party at such other address it has designated as its address for purposes of notice hereunder

(c)  Promptly upon Lessor's written request, Lessee agrees to execute, acknowledge and deliver such instruments, and to take such other action, as may reasonably be necessary in the opinion of Lessor, or Lessor's counsel, to protect Lessor's or any Secured Party's interests in the Equipment, this Lease and any Rent, including, but without limitation, the obtaining and execution of landlord and mortgage waivers and Uniform Commercial Code financing statements in recordable form, incumbency certificates and, at Lessee's expense, opinion of Lessee's legal counsel regarding the matters contained in Section 4(b) hereof. Upon Lessor's written request, Lessee also agrees to provide quarterly financial statements and annual audited financial statements in the form previously furnished to Lessor within 120 days of the end of each quarter and Lessee's fiscal year end  Lessor may file or record a copy of this Lease, as a financing statement or for any other purpose  Lessee agrees to pay Lessor a transaction fee of $350 per Schedule for filing fees in connection with Uniform Commercial Code financing statements  Lessee hereby authorizes Lessor to file UCC financing statements in recordable form on its behalf with respect to the Equipment  It is the intention of the parties that the Lease constitutes a true lease  In the event that the Lease is not held to be a true lease, Lessee hereby grants to Lessor a lien on and security interest in the Equipment and all proceeds thereof to secure the payment and performance of Lessee's obligations to Lessor under the Lease

(d)  This Lease Agreement is and is intended to be, a lease, and Lessee does not acquire hereby any right, title or interest in or to the Equipment except the right to use the same as Lessee under the terms hereof  Both Lessor and Lessee agree to characterize this Lease Agreement as a lease for Federal income tax purposes.

(e)  This Master Lease Agreement and all Schedules duly executed and attached hereto from time to time constitute the entire agreement between the parties hereto with respect to the Equipment, and any change or modification hereto and any related agreement must be in writing and signed by the parties hereto  There shall be a single executed original of this Master Lease

Agreement which shall be marked and for the purposes hereof shall be referred to as the "Original"; all other counterparts shall be marked "Duplicate"  With respect to any Schedule to this Master Lease Agreement executed by the parties hereto, the following shall apply: (i) each such Schedule shall constitute a new lease between the parties; (ii) there shall be a single executed original of each such Schedule marked "Original"; (iii) all other counterparts of such Schedule shall be marked "Duplicate"; and (iv) to the extent, if any, that any such Schedule constitutes chattel paper (as such term is defined in the Uniform Commercial Code as in effect in any applicable jurisdiction) no security interest therein may be created through the transfer or possession of the Original of this Master Lease Agreement or any Duplicate of such a Schedule, but such security interest may be created by the transfer or possession of the Original of such Schedule together with a certified copy of this Master Lease Agreement

(f)  Lessor is not, and shall not be deemed to be, an agent, employee or representative of Lessee or any manufacturer of any Equipment, for any purpose whatsoever

(g)  If this Lease or any provision hereof shall be deemed invalid, illegal or unenforceable in any respect or in any jurisdiction, the validity, legality and enforceability of this Lease in other respects and in other jurisdictions shall not be in any way impaired or affected thereby  No covenant or condition of this Lease can be waived except by the written consent of the party to be bound by such waiver  No waiver by Lessor of any Event of Default hereunder shall in any way be, or be construed to be, a waiver of any future or subsequent Event of Default  Forbearance or indulgence by Lessor or Lessee in any regard whatsoever shall not constitute a waiver of the covenant or condition to be performed by the other party to which such forbearance or indulgence may apply  and until complete performance by such party of such covenant or condition, Lessor or Lessee, as the case may be, shall be entitled to invoke any remedy available to such party under this Lease or by law or in equity or otherwise despite said forbearance or indulgence  This Lease shall be governed by the laws of the State of Illinois  LESSEE WAIVES TRIAL BY JURY AND SUBMITS TO THE JURISDICTION OF AND CONSENTS TO VENUE IN THE FEDERAL DISTRICT COURT OR ANY STATE COURT LOCATED WITHIN COOK COUNTY IN THE STATE OF ILLINOIS AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM

(h)  Should Lessee fail to make any payment or to do any act as herein provided, after notice to Lessee which is reasonable under the circumstances  Lessor shall have the right, but not the obligation and without releasing Lessee from any obligation hereunder or waiving Lessor's right to declare a default hereunder  to make or do the same, and to pay, purchase, contest or compromise any encumbrance, charge or lien which in the reasonable judgment of Lessor appears to materially and adversely affect Lessor's interest in the Equipment, and in exercising any such rights, Lessor may incur any liability and expend whatever amount in its reasonable discretion it may deem necessary therefor  All sums so incurred or expended by Lessor shall be without demand immediately due and payable by Lessee

(i)  Whenever the context of this Lease requires, the singular number includes the plural  Section headings contained herein are solely for the convenience of the parties, and are not an aid in the interpretation of the instrument  Although this Master Lease Agreement is dated as of the date first above written for convenience, the Agreement Date and the Commencement Date shall be as specified in the applicable Schedule

(j)  This Master Lease Agreement may be canceled by Lessee in writing, provided all outstanding Schedules hereunder have either expired or have been terminated with respect to their individual termination provisions, and that no Events of Default have occurred under any Schedules, and Lessee has fulfilled all obligations under all such Schedules

(k)  This agreement signed by both parties constitutes the final written expression of all the terms of this agreement and is a complete and exclusive statement of those terms, and supersedes all negotiations or discussions which may have been previously conducted.  No other oral or written agreement or understanding of any nature concerning the subject matter of this agreement has been made or entered into  This agreement may be modified or rescinded only by a writing signed both the parties

(l)  Lessee hereby agrees that it shall promptly notify Lessor if Lessee changes its name or state of registration

INSIGHT FINANCIAL CORPORATION
LESSOR

By: _Mary A M Baur_

Title: _Assistant Secretary_

B.E.S.C.R., INC.
LESSEE

By: _[signature]_

Title: _President_

## EQUIPMENT SCHEDULE NUMBER 993-01

LESSEE: B.E.S.C.R., INC.

MASTER LEASE AGREEMENT DATE: February 15, 2005

MASTER LEASE AGREEMENT NUMBER: 993

This Equipment Schedule is issued pursuant to the Master Lease Agreement identified above. All of the terms and conditions of the Master Lease Agreement are hereby incorporated herein and made a part hereof as if such terms and conditions were set forth in this Equipment Schedule. This Equipment Schedule, together with the terms and conditions as incorporated herein, constitutes a separately enforceable lease agreement with respect to the Equipment

Lessee acknowledges that any assignment or transfer permitted under this Lease shall not materially change Lessee's duties or obligations under this Lease or materially increase the burdens or risks imposed upon Lessee.

EQUIPMENT SCHEDULE AGREEMENT DATE: February 15, 2005

EQUIPMENT SCHEDULE COMMENCEMENT DATE:  First day of the month following acceptance of Equipment.

RATE ADJUSTMENT:  The Lease Rate Factor ("LRF") will be adjusted upward in direct proportion to increases in 3 year Treasury Notes as listed in the *Federal Reserve Statistical Release* on the Acceptance date as compared to February 15, 2005.

EQUIPMENT:  Savin Digital Copier Equipment per Exhibit A to Equipment Schedule No. 01.

LEASE TERM AND RENTAL PAYMENTS:  Term 36 months, payable monthly on the first day of each month with the last month's rental payment payable in advance.  The amount of each payment is $5,193.28.

REDOCUMENTATION:  Upon final acceptance, Lessee and Lessor agree to redocument this Equipment Schedule as necessary to reflect any changes to the items of Equipment, the Equipment Cost and the rent amount.

CONTINGENCIES: This Lease is contingent upon the following: Lessor's receipt of a personal guaranty each from Elizabeth Eastwood and Steven Artstein covering Lessee's obligations under the Lease, in a from approved by Lessor.

OPTIONS AT END OF LEASE TERM: Subject to the provisions of the Master Lease Agreement and provided there has been no Event of Default, at the end of ther lease term, Lessee must purchase the Equipment for the sum of $101.00 and other good and valuable consideration on an "AS-IS/WHERE-IS" basis.

LOCATION OF EQUIPMENT: 700 S. Flower St., Suite 1050, Los Angeles, CA  90017

ADDITIONAL PROVISIONS TO EQUIPMENT SCHEDULE:     Casualty Values. . . . . . . . . . . . .  Exhibit B

INSIGHT FINANCIAL CORPORATION
(Lessor)

By: _____

Title: _____

B.E.S.C.R., INC.
(Lessee)

By: _____

Title: _____

## EXHIBIT A TO EQUIPMENT SCHEDULE NO. 993-01
## EQUIPMENT/LOCATION

LESSEE: B.E.S.C.R., INC.

AGREEMENT DATE:  February 15, 2005

EQUIPMENT LOCATION:   700 S. Flower St., Suite 1050, Los Angeles, CA  90017

EQUIPMENT:     Savin Digital Copier Equipment, consisting of the following:

QUANTITY    DESCRIPTION

| QUANTITY | DESCRIPTION |
|---|---|
| 1 | SAVIN 25105 DIGITAL COPIER          SERIAL NUMBER H3721100008 |
| 1 | |
| 1 | SAVIN 2105 FINISHER |
| 1 | SAVIN 2585/25105 2 HOLE PUNCH KIT |
| 1 | SAVIN 2105 LCT |
| 1 | SAVIN 2085/2105 PRINT CONTROLLER BOARD TYPE 850 |
| 1 | SAVIN 2070 NIC CARD |
| 1 | SAVIN 256MB MEMORY |
| 1 | SAVIN COPY CONNECTOR KIT TYPE 850 |
| 1 | KODAK ADA AHA 29160 68 PIN ULTRA SCSI CARD |
| 1 | KODAK SC3520D PRODUCTION SCANNER |
| 1 | KODAK 6 FT 68 PIN SCSI CABLE |
| 1 | PC BASED FILE SERVER, 40X CDRW, RAID CONTROLLER, 2X 120GBHD, FLAT PANEL MONITOR |
| 1 | DOCULEX PDF CAPTURE SOFTWARE |
| 1 | ADOBE ACROBAT (1 USER LICENSE) |
| 1 | RICOH/ SAVIN INSTALLATION & SETUP |
| 1 | SAVIN 25105 START-UP KIT |
| 2 | DOCULEX PDF CAPTURE FULL-DAY TRAINING |

This Exhibit is hereby attached to and made a part of the Equipment Schedule No. 01 dated February 15, 2005 to Master Lease Agreement No. 993 dated February 15, 2005 between INSIGHT FINANCIAL CORPORATION, as Lessor and B.E.S.C.R., Inc., as Lessee.

EXHIBIT B
TO
EQUIPMENT SCHEDULE NO. 01
DATED FEBRUARY 15, 2005
To
MASTER LEASE AGREEMENT NO. 993
DATED FEBRUARY 15, 2005
BETWEEN
INSIGHT FINANCIAL CORPORATION (Lessor)
AND
B.E.S.C.R., INC. (Lessee)


CASUALTY VALUES


The Casualty Value of the Equipment covered by the Master Lease Agreement identified above (hereinafter called the Agreement), as of any date, shall be the amount indicated below opposite the period of time in which such date occurs. Values for those periods between the ones indicated below can be calculated through interpolation of nearest values.

| Months Expired After Equipment Schedule Commencement Date | Casualty Value |
|---|---|
| 0 | $176,000.00 |
| 12 | $160,496.00 |
| 24 | $142,704.00 |
| 36 | $122,304.00 |

Following payment of the Casualty Value, the Lessor and the Lessee shall each make reasonable efforts to obtain bids for the purchase of any existing Equipment suffering such Loss. Such Equipment shall be sold for the highest cash offer then available, or if higher, other offer acceptable to Lessor and Lessee. Upon such sale, the Lessee shall be refunded of the proceeds of the sale less the actual expenses incurred by Lessor in making the sale, including, without limitation, storage, insurance, advertising and sales taxes, but such refund shall not be in excess of the Casualty Value previously paid.

Following payment of the Casualty Value, the Lessee shall be entitled to the proceeds of any insurance covering the Equipment suffering such a total Casualty up to an amount not in excess of the Casualty Value previously paid, but in no event shall aggregate of amounts refunded to or received by Lessee pursuant to this Exhibit B exceed the Casualty Value

This Exhibit is hereby attached to and made a part of the Equipment Schedule of the Master Lease Agreement bearing the date as set forth above, between INSIGHT FINANCIAL CORPORATION and B.E.S.C.R., INC.

CERTIFIED
COPY
MMB
3/8/05

## OFFICER'S CERTIFICATE

The undersigned, _____, of B.E.S.C.R., Inc. (the "Company"), hereby certifies as follows to Insight Financial Corporation ("INSIGHT"):

1.      The person specified in item 2 below is authorized to execute Master Lease Agreement No. 993 dated February 15, 2005, Equipment Schedule No. 01 dated February 15, 2005, any Equipment Schedule(s) entered into thereafter and ancillary documents as may be required between the Company and INSIGHT, on behalf of the Company.

2.      The following person is, and has been at all times since _____, a duly qualified and acting officer of the Company, duly elected or appointed to the office set forth opposite his name:

| Name | Office | Signature |
|------|--------|-----------|
| Elizabeth M. Eastwood | President | |

IN WITNESS WHEREOF, the undersigned officer has executed this Certificate and affixed the corporate seal of the Company this 28 day of Felui , 2005.

(CORPORATE SEAL)

By: 

Name: PETER EASTWOOD

Title: CHIEF FINANCIAL OFFICER

THE PERSON EXECUTING THE MASTER LEASE AGREEMENT, RELATED DOCUMENTS AND THIS CERTIFICATE IN SECTION 2 ABOVE MUST BE OTHER THAN THE PERSON EXECUTING THIS OFFICER'S CERTIFICATE OF THE CORPORATION.

08CV3020   EDA
JUDGE ST. EVE
MAGISTRATE JUDGE COX

**EXHIBIT B**

# CERTIFICATE OF ACCEPTANCE
## TO
## EQUIPMENT SCHEDULE NO. 993-01

The undersigned being the Lessee under Equipment Schedule Number 01 dated February 15, 2005 to Master Lease Agreement No. 993 dated February 15, 2005 ("Lease") by and between INSIGHT FINANCIAL CORPORATION, as Lessor and the undersigned, as Lessee, hereby certifies as follows:

(a)    The equipment listed below is acceptable by Lessee as being installed and being acceptable under the terms of the Lease.

        EQUIPMENT:    Savin Digital Copier Equipment, per Exhibit A to Equipment Schedule No. 01 attached hereto and made a part hereof.

(b)    The Lessor is not known to be in default under the terms of said Lease and Lessee has no known claim against Lessor under the Lease as of the date thereof.

(c)    There has been no material adverse change in the financial position of the Lessee or, if applicable, Co-Lessee or Guarantor.

(d)    Lessee hereby waives any right it may have under Section 2A-517 of the Uniform Commercial Code or otherwise to revoke this acceptance for any reason whatsoever including, but not limited to (i) any assumption by Lessee that a nonconformity would be cured, (ii) any inducement of acceptance by the Lessor's assurances or any difficulty to discover a nonconformity before acceptance, or (iii) any Lessor default under the Lease. Lessee further hereby waives its rights under Section 2A-401 and 2A-402 of the Uniform Commercial Code to suspend performance of any of its obligation under the Lease with respect to the Equipment hereby accepted.

ACCEPTANCE DATE: February 25, 2005

B.E.S.C.R., INC.
(Lessee)

By: _____

Title: _____

08CV3020   EDA
JUDGE ST. EVE
MAGISTRATE JUDGE COX

**EXHIBIT C**

CERTIFIED
COPY

*MMB*
*3/8/05*

## PERSONAL GUARANTY

THIS PERSONAL GUARANTY CREATES SPECIFIC LEGAL OBLIGATIONS. When we use the words *you* and *your* in this Personal Guaranty, we mean the Personal Guarantor(s) indicated below. When we use the words. *we, us* and *our* in this Personal Guaranty, we mean INSIGHT FINANCIAL CORPORATION

In consideration of our entering into Equipment Schedule No. 01 dated February 15, 2005 to the Master Lease Agreement dated February 15, 2005 with B E.S.C.R., Inc., as Lessee ("Lease"), you unconditionally and irrevocably guarantee to us, our successors and assigns the prompt payment and performance of all obligations under the Lease. You agree that this is a guaranty of payment and not of collection, and that we can proceed directly against you without first proceeding against the Customer identified in the Lease ("Lessee") or against the equipment covered by the Lease. You waive all defenses and notices, including those of protest, presentment and demand. You agree that we can renew, extend or otherwise modify the terms of the Lease and you will be bound by such changes. If the Lessee defaults under the Lease, you will immediately perform all other obligations of the Lessee under the Lease, including, but not limited to, paying all amounts due under the Lease. You will pay to us all expenses (including attorneys' fees) incurred by us in enforcing our rights against you or the Lessee. This is a continuing guaranty that will not be discharged or affected by your death and will bind your heirs and personal representatives. You waive any right to seek repayment from the Lessee in the event you must pay us. If more than one personal guarantor has signed this Personal Guaranty, each of you agree that your liability is joint and several.

THIS PERSONAL GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS. YOU CONSENT TO THE JURISDICTION OF ANY COURT LOCATED WITHIN THAT STATE, BOTH YOU AND WE EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY.

| | |
|---|---|
| Personal Guarantor (no title) | Personal Guarantor (no title) |
| Elizabeth Marie Eastwood        February 15, 2005 | Steven H. Artstein |
| Print Name ELIZABETH M. EASTWOOD    Date 2/25/05 | Print Name STEVEN H. ARTSTEIN    2/25/05 |
| Date | |
| 2337 Wyckwood Dr., Aurora, IL 60506 | 915 Huckleberry Lane, Northbrook, IL 60062 |
| Home Street Address/City/State/Zip | Home Street Address/City/State/Zip |
| 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        (847) 498-5195 | (630) 890-1839 | 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 |
| Social Security Number        Phone No. | Phone No. | Social Security Number |

**EXHIBIT D**



1935 Skermer Road • Suite 300 • Northbrook IL 60062
Phone: 847.509-8500 • Fax: 847 509-8525

NOTICE AND ACKNOWLEDGMENT OF ASSIGNMENT

February 25, 2005

VIA DHL Expressmail

Mr. Peter Eastwood
B.E.S.C.R., Inc.
11 S. LaSalle St., Suite 900
Chicago, IL  60603

Dear Mr. Eastwood:

Reference is made to Equipment Schedule No. 01 dated February 15, 2005 to the Master Lease Agreement No. 993 dated February 15, 2005, (the "Lease"), and any amendments or riders thereto between Insight Financial Corporation ("Lessor") and B.E.S.C.R., Inc.  ("Lessee").

Lessor hereby gives Lessee notice that Lessor has assigned the Lease to The CIT Group/Equipment Financing, Inc. ("Assignee").

In order to induce Assignee to accept an assignment of all Lessor's right, title and interest in the Lease, but none of Lessor's obligations with respect thereto, you confirm to Assignee the following:

1.   The Lease is the only agreement between you and the Lessor with respect to the leased equipment.  You acknowledge that the copy of the Lease attached hereto is a complete copy of the Lease.

2.   As of March 1, 2005, there are thirty-six (36) payments of rent due under the Lease, each in the amount of $5,193.28, of which you shall pay Assignee thirty-two (32) payments commencing June 1, 2005.  Provided all amounts then due and owing are paid, the aggregate amount of rent due under the Lease as of June 1, 2005 is $166,184.96.

3.   You will pay directly to Assignee all payments of rent and other amounts due under the Lease, commencing June 1, 2005.

4.   The leased equipment has been installed and accepted by you and is in good operating order and condition.

5.   You agree that your obligations to make payments to Assignee in the amounts required by the Lease are absolute and unconditional and are independent of your use or enjoyment of the leased equipment or the performance by Lessor of any of its obligations under the Lease or otherwise.  You will make all such payments to Assignee regardless of, and will not assert against Assignee, any defense, claim, setoff, recoupment, abatement or other right, existing or future, which you may have against the Lessor or any other person or entity.  You will also make all such payments to Assignee regardless of any bankruptcy, insolvency, reorganization or similar event with respect to Lessor and regardless of the effect of any such event on the Lease or your use or enjoyment of the leased equipment.

Mr. Peter Eastwood
B.E.S.C.R., Inc.
February 25, 2005
Page -2- of -2-

6. Assignee is not responsible for performance of any of the duties of Lessor or any other person under the lease or any other agreement, including but not limited to responsibility for service, repairs or maintenance. You are obligated to pay rent to Assignee regardless of any failure of Lessor or any other person to perform such service, maintenance or repairs required by the Lease.

7. Wherever the Lease requires you to give notice to, or obtain consent from, the Lessor, you agree to give such notice to, or obtain such consent from, Assignee. You agree not to change, amend or alter the Lease without the prior written consent of Assignee.

8. In no event shall you, upon demand by Lessor for payment of unpaid rentals, upon acceleration of the maturity of the Lease or otherwise, be obligated to pay any amount in excess of that permitted by law.

Please indicate your confirmation of the foregoing by signing and returning the enclosed copy of this letter directly to Assignee. as follows:

THE CIT GROUP/EQUIPMENT FINANCING, INC.
One CIT Drive, Livingston, NJ 07039
Attn: Mr. Steve Babeuf – (973) 740-5032 – Fax: (973) 740-5362

Very truly yours,

INSIGHT FINANCIAL CORPORATION
Lessor
By: _____
Title: _____

We confirm the foregoing on _____, 2005.

B.E.S.C.R., INC.
Lessee
By: _____
Title: _____

THE CIT GROUP/EQUIPMENT FINANCING, INC.
Assignee
By: _____
Title: _____

J. STEVENSON BABEUF
VICE PRESIDENT

08CV3020    EDA
JUDGE ST. EVE
MAGISTRATE JUDGE COX

**EXHIBIT E**

# MANDELL MENKES LLC

Suite 300
333 West Wacker Drive
Chicago, Illinois 60606
Telephone (312) 251-1000
Fax (312) 251-1010
www.mandellmenkes.com

April 1, 2008

**VIA OVERNIGHT COURIER**
**AND REGULAR U.S. MAIL**

B.E.S.C.R., Inc.
120 South State Street, 4th Floor
Chicago, Illinois 60603
Attention: Elizabeth M. Eastwood, President

> Re:    Lease agreement number 993 between The CIT Group/Equipment Financing, Inc.
>        and B.E.S.C.R., Inc.; Account No. 258-0119588-000

Dear Ms. Eastwood:

Please be advised that we have been retained by The CIT Group/Equipment Financing, Inc., as assignee for Insight Financial Corporation ("CIT"), in connection with the above-referenced lease.

On or about February 15, 2005, B.E.S.C.R., Inc. ("BESCR") entered into a lease agreement with CIT for the lease of certain copier equipment collectively referred to as Savin Digital Copier Equipment. A copy of the master lease agreement, equipment schedule together with the exhibits, officer's certificate, certificate of acceptance, and notice of assignment are enclosed herewith for your reference. BESCR is to make 32 monthly payments in the amount of $5,193.28 to CIT commencing on June 1, 2005. It is our understanding that BESCR has failed to make any payments to CIT since its last payment in or about April 18, 2007.

On behalf of CIT, we hereby demand immediate payment of the past due lease payments together with the late charges accrued thereon through date of payment. If we do not hear from you within 10 days of your receipt of this correspondence, we shall have no other alternative but to file suit to recover the outstanding balance in excess of $166,000.00, including unpaid lease payments, finance charges thereon, plus interest and reimbursement for our client's attorneys' fees and costs of suit.

Very truly yours,

Agata P. Karpowicz

APK:jr
Enclosures
167465 v2

CERTIFIED
COPY
MMB
3/8/05

# MASTER LEASE AGREEMENT

**LESSOR:**   INSIGHT FINANCIAL CORPORATION, a Delaware corporation
1935 Shermer Road, Northbrook, IL  60062

**LESSEE:**   B.E.S.C.R., Inc., an Illinois corporation
11 S. LaSalle St., Suite 900, Chicago, IL  60603

**AGREEMENT DATE:**   February 15, 2005

**LEASE AGREEMENT NO:**   993

This contract is a Master Lease Agreement. The terms of each Equipment Schedule ("Schedule") hereto are subject to any and all conditions and provisions set forth herein at the time of execution of such Schedule as the same may have been amended prior to the execution of such Schedule. Each Schedule shall provide a description of Equipment, Lease Term, Rental Payment(s), Location of Equipment, Commencement Date, Commitment Expiration Date and such other information as may be required. Each Schedule is enforceable according to the terms and conditions contained therein and in the event of a conflict between the language of the Master Lease Agreement and any Schedule hereto, the language of the Schedule shall prevail in respect to that Schedule. Each Schedule together with the terms and conditions of this Master Lease Agreement incorporated therein is referred to herein as the "Lease" or "Lease Agreement." Lessee, by its acceptance hereof, hereby leases to Lessee and the Lessee hereby leases from Lessor, in accordance with the terms and conditions set forth herein and in the applicable Schedule, the Equipment described on the Schedule and in any attachments thereto together with all replacement parts, additions, accessories, alterations and repairs incorporated therein or now or hereafter affixed to such Equipment (the "Equipment").

## 1. LEASE TERM

This Master Lease Agreement shall be effective from the date hereof. As to any particular item of Equipment, the term shall continue as stated in the applicable Schedule, from the respective Commencement Date, as, from time to time. Equipment described in any Schedule is accepted by Lessee. Said term shall be automatically extended for an additional twelve (12) month period at the monthly lease rate in effect at the end of said term unless and until terminated by either party hereto giving the other not less than one hundred eighty (180) days prior written notice. Acceptance ("Acceptance") shall occur on the following applicable date:  (i) in the case of Equipment acquired by Lessor from a third party vendor which Equipment by its nature does not require installation, the date of delivery of the item of Equipment to Lessee; (ii) in the case of Equipment acquired by Lessor from a third party Vendor which Equipment by its nature does require installation, the day the Equipment is installed; or (iii) in the case of an item of Equipment which is the subject of a sale and leaseback between Lessor and Lessee, the date upon which Lessor purchases such Equipment from Lessee

## 2. PAYMENTS OF RENT

Unless otherwise set forth in the respective Schedule, the following shall apply: The first rental payment shall be due upon the Acceptance of the Equipment by Lessee, and such payment shall cover the lease month or other period commencing on the Commencement Date. Each subsequent rental payment shall be due and payable in advance, for the lease period covered by such payment, on the first day thereof. In the event Acceptance occurs prior to the Commencement Date, interim rental shall be paid by Lessee in the amount equal to a proration on a per diem basis of the Monthly Rent, as hereinafter derived, for the period commencing as of the date of Acceptance to the Commencement Date. All rental and other payments by Lessee under this Lease shall be made to Lessor at its address stated above or at such other address as Lessor may designate in writing and if payment shall be made by check, such check shall arrive at such address on or before the date the rental payment shall be due. Monthly rent payable with respect to each item of Equipment ("Monthly Rent") shall be as set forth for such item in the applicable Schedule. Any and all amounts payable to Lessor hereunder other than Monthly Rent shall be considered and referred to herein as "Supplemental Rent." Monthly Rent, together with Supplemental Rent, shall be referred to herein as "Rent." This Lease provides for a net lease, and the Rent due hereunder from Lessee to Lessor shall be absolute and unconditional and shall not be subject to any abatement, recoupment, defense, claim, counter-claim, reduction, set-off, or any other adjustment of any kind for any reason whatsoever.

## 3. ADDITIONAL SUMS PAYABLE BY LESSEE

(a)   All transportation, transit insurance and other charges payable for delivery of the Equipment to Lessee, and for installation of the Equipment, shall be paid by Lessee.

(b)   Lessee shall promptly pay all costs, expenses and obligations of every kind and nature incurred in connection with the use, maintenance, servicing, repair or operation of the Equipment which may arise or be payable during the lease term of such Equipment hereunder, except as specifically provided herein, and shall keep the Equipment in as good repair, condition and working order as when delivered to Lessee hereunder, reasonable wear and tear from the proper use thereof alone excepted, and shall furnish any and all parts, mechanisms and devices required to keep the Equipment in such good repair, condition and working order, at the

maintenance. Without limiting the foregoing, Lessee shall, during the continuance of this Lease, at its own expense, make appropriate arrangements for maintenance of each item of Equipment, including without limitation with respect to each item of Equipment entering into and maintaining in force a contract with the manufacturer of the Equipment or other person or entity approved in writing by Lessor covering at least prime shift maintenance

(c)   Lessee shall indemnify and hold harmless Lessor against and shall pay all federal, state, county or local taxes, fees or other charges, however designated (together with any related interest or penalties not arising from negligence on the part of Lessor), imposed or assessed against or with respect to this Lease, Rent hereunder, the Equipment, Lessor or Lessee or payable by Lessor or Lessee with respect to the use, lease, sale, purchase, delivery, possession, sublease or ownership of the Equipment, excepting only (i) taxes on or to the extent measured by the net income of Lessor, franchise taxes and gross receipts taxes in the nature of an income tax; and (ii) sales, use or similar taxes or other amounts paid by Lessor if, and only if, any such taxes or other amounts are included as part of the acquisition cost of any Equipment

## 4. WARRANTIES

(a)   Lessor hereby warrants and covenants to Lessee that so long as no Event of Default has occurred under the applicable Schedule hereto, Lessee shall and may quietly have, hold and enjoy the Equipment and every part thereof leased hereunder for the term of this Lease, as such term may be extended hereunder, free from disturbance by Lessor or its agents, employees, successors or assigns, or by anyone (whether the holder of a lien or otherwise) claiming solely by, through or under Lessor. LESSEE HAS EXCLUSIVELY SELECTED AND CHOSEN THE TYPE, DESIGN, CONFIGURATION, SPECIFICATION AND QUALITY OF THE EQUIPMENT HEREIN LEASED AND THE VENDOR, DEALER, SELLER, MANUFACTURER OR SUPPLIER THEREOF (the "Seller"). LESSEE LEASES, HIRES AND RENTS THE EQUIPMENT "AS IS, WHERE IS." LESSOR HAS NOT MADE AND MAKES NO, AND HEREBY EXPRESSLY DISCLAIMS ANY OTHER, EXPRESS OR IMPLIED WARRANTY WHATSOEVER HEREUNDER, INCLUDING ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR ANY PURPOSE, OR OTHERWISE, REGARDING THE EQUIPMENT OR ANY PART OR THE DESIGN OR CONDITION THEREOF. Subject to the provisions of Section 10 hereof, Lessor hereby transfers and assigns to Lessee during the term of this Lease all of its right, title and interest in any express or implied warranties and covenants of any Equipment manufacturer or vendor which are assignable by Lessor. Lessor shall not be liable for any loss or damage suffered by Lessee or by any other person or entity, direct or indirect or consequential, including, but not limited to, business interruption and injury to persons or property, resulting from the non-delivery or late delivery, installation, failure or faulty operation, condition, suitability or use of the Equipment leased by Lessee hereunder, or for any failure of any representations, warranties or covenants made by the Seller. Any claims of Lessee, with respect to claims discussed in the preceding sentences shall not be made against Lessor but shall be made, if at all, solely and exclusively against Seller, or any persons other than the Lessor.

(b)   Lessee, at the time of execution of this Master Lease Agreement and any Schedule hereto, hereby warrants and represents to Lessor, Secured Party, as hereinafter defined, and their respective successors and assigns: (i) that execution, delivery and performance of this Lease Agreement have been duly authorized by all necessary corporate action on its part and are not in conflict with its charter or bylaws or with or constitute a breach of or default under any indenture, contract or agreement by which it is bound, or with any statute, judgment, decree, rule or regulation binding upon it; (ii) that no consent or approval of any trustee or holder of any indebtedness or obligation, and no consent or approval of, or taking of any other action with respect to, any governmental authority, is necessary for execution, delivery or performance of this Lease Agreement; (iii) that this Lease Agreement is legal, valid, binding and enforceable against the Lessee in accordance with its terms, subject to enforcement limitations imposed by rules of equity or by bankruptcy or similar laws; (iv) Lessee is an Illinois corporation validly existing and in good standing under the laws of the jurisdiction of its incorporation and the jurisdiction(s) where the Equipment will be located and has adequate corporate power to enter into and perform this Lease; (v) Lessee's organizational number is 58657895; and (vi) there are no actions, suits or proceedings pending or, to the knowledge of Lessee threatened against or affecting Lessee in any court or before any governmental commission, board or authority which, if adversely determined, will have a materially adverse effect on the ability of Lessee to perform its obligations under this Lease.

INITIAL here _____  MMB

2

## 5  POSSESSION, USE AND MAINTENANCE OF THE EQUIPMENT

(a)  The Equipment shall be kept by Lessee (i) subject to inspection by Lessor at reasonable times and manner, (2) at Lessee's address, as stated on each Schedule hereto, which Equipment shall not be relocated without prior written consent of Lessor, which consent shall not be unreasonably withheld, (3) free of all security interests of any kind whatever, liens, encumbrances and other claims except (i) those of persons claiming solely against Lessor but not Lessee on account of obligations which is not required by this Lease to discharge, (ii) liens of current taxes not delinquent (except liens for taxes which are being contested by Lessee as provided in Section 3 hereof), (4) marked with the manufacturer's identification marks or numbers and, if requested by Lessor or Secured Party, conspicuously labeled with labels supplied by Lessor or Secured Party to disclose Lessor's and any Secured Party's interest in the Equipment, and (5) in good and efficient working order, condition and repair, reasonable wear and tear excepted, and acceptable for maintenance under the manufacturer's maintenance agreement at the expiration of the Lease Term. If such agreement is then generally available for the item of Equipment. Lessee will, within ten (10) working days of receiving notice thereof, promptly notify Lessor in writing of any mortgage, pledge, lien, attachment, charge, encumbrance or right of others which has arisen with respect to the Equipment.

(b)  Lessee shall use the Equipment with due care to prevent injury thereto, and to any person or property, and in conformity with all applicable laws, ordinances, rules, regulations and other requirements of any insurer or governmental body and with all requirements of the manufacturer with respect to the use, maintenance and operation of the Equipment. Except as provided below, Lessee shall not modify any Equipment without the prior written consent of Lessor which consent shall not be unreasonably withheld. Lessee shall be entitled, from time to time during the term of this Lease, without written consent of Lessor, to acquire and install at Lessee's expense, such additional features, options or modifications as may be available at such time which (i) shall be of the type which are readily removable without causing material damage to the Equipment; (ii) will not impair the originally intended function or use of the Equipment in which they are installed; and (iii) will not interfere with Lessee's ability to obtain and maintain the maintenance contract required by Section 3 hereof. Any such additional feature, option or modification shall become the property of Lessor. It is the intention and understanding of both Lessor and Lessee that the Equipment shall be and at all times remain separately identifiable personal property. Lessee shall not permit any Equipment to be installed in, or used, stored or maintained with, any personal property (except other Equipment leased hereunder) in such manner or under such circumstances that such Equipment might be or become an accession to or confused with such other personal property. Lessee shall not permit any Equipment to be installed in or used, stored or maintained with, any real property in such a manner or under such circumstances that any person might acquire any rights in such Equipment paramount to the rights of Lessor or Secured Party by reason of such Equipment being deemed to be real property or a fixture thereon.

## 6  RISK OF LOSS

(a)  Lessee assumes and shall bear the entire risk of partial or complete loss, theft, damage, destruction, condemnation, requisition, taking by eminent domain or other interruption or termination of use of the Equipment from any cause whatsoever, whether or not insured against, from the date of delivery of the Equipment until the Equipment is returned to and received by Lessor. Except as otherwise expressly provided herein, no such loss, theft, damage, destruction, condemnation, requisition, taking by eminent domain or other interruption or termination of use of the Equipment, and no delay, deficiency or absence of insurance proceeds, and no unavailability, delay or failure of supplies, parts, mechanisms, devices or service for the Equipment or any failure of the Equipment to function for any cause, shall relieve Lessee of the obligation to pay Rent hereunder. Except as otherwise expressly provided in Section 6(c) hereof, this Lease shall not terminate, nor shall the respective obligations of the Lessor or the Lessee be affected, by reason of any defect in or Total Casualty (as defined in this Section 6) to or obsolescence of the Equipment or any item thereof from whatever cause, or the interference with the use thereof by any private person, corporation or governmental authority, or any other disability of the Lessee to use the Equipment or war, act of God, or governmental regulations, any present or future law or regulation to the contrary notwithstanding. Lessee shall promptly notify Lessor in writing of the occurrence of any of the above events and all pertinent details connected therewith. Except during any period when an Event of Default shall have occurred, Lessee shall be entitled to the proceeds of any claim or right of Lessor or Lessee against any third party on account of any of the foregoing events and Lessee shall be subrogated to the Lessor's right of recovery therefor against any third party. Lessee shall execute and deliver from time to time such instruments and take such other action as may be necessary or appropriate more fully to vest in Lessee such proceeds or effect such subrogation, provided, however, that all costs and expenses, including court costs and attorneys' fees, incurred in connection with enforcing or realizing upon any such claim or right to proceeds or obtaining enforcement of or realizing upon such right of subrogation, shall be paid by Lessee.

(b)  In the event any item of Equipment is physically damaged to a material extent by any occurrence whatsoever, Lessee shall immediately notify Lessor of such damage and, unless Lessor shall determine that Section 6(c) hereof is applicable to such damage, Lessee, at Lessee's expense, shall promptly cause such item of Equipment to be returned to the condition described in Sections 3 and 5 hereof.

(c)  In the event any item of Equipment shall be lost, stolen, destroyed, damaged beyond repair or permanently rendered unfit for use for any reason whatsoever, or shall be subjected to a requisition, taking by eminent domain or other interruption or termination of use for a stated period which exceeds the term of this Lease (any such occurrence being referred to as "Total Casualty"), Lessee shall promptly notify Lessor and either: (i) at its expense, obtain replacement equipment of identical make, model, configuration, capacity and condition, having utility and remaining useful life at least equal to that of each such replaced item of Equipment

equipment shall be substituted for each such item of Equipment replaced hereunder; or (ii) pay to Lessor, on the next Monthly Rent payment date for such item of Equipment following such Total Casualty, an amount equal to the Casualty Value (specified in the applicable Schedule) of such item of Equipment on such Monthly Rent payment date. If Lessee elects to pay the Casualty Value rather than replace the Equipment, after the payment of such Casualty Value, and all Monthly Rent due and owing for the period prior to the date of the Total Casualty with respect to such item of Equipment, Lessee's obligation to pay further Monthly Rent for such item of Equipment shall cease, but Lessee's obligation to pay Rent for all other items of Equipment, shall remain unchanged. So long as no Event of Default shall have occurred and provided Lessee shall have made the Casualty Value payment identified above, Lessor shall pay Lessee any insurance proceeds received by Lessor by reason of such Total Casualty up to the amount of the Casualty Value paid by the Lessee.

## 7  INSURANCE

Lessee shall at all times during the term of this Lease and until the Equipment has been returned to Lessor as provided below, at its own expense, maintain physical damage insurance in an amount sufficient to cover the replacement of the Equipment but in no event less than the Casualty Value thereof, and liability and property damage insurance covering the Equipment (including Lessee's contractual liability under Section 9 hereof), in such amount, and with such companies and such endorsements and covering such hazards, as are in general usage by companies owning or operating similar property and engaged in a business similar to Lessee's, in order to adequately protect the parties hereto. All insurance so maintained shall provide for a thirty-day prior written notice to Lessor and its assigns of any cancellation or reduction of coverages and an option in Lessor or its assignee to prevent cancellation by payment of premiums, shall cover both the interest of the Lessor and any assigns of which the Lessee has notice and of the Lessee in the Equipment and shall provide that all insurance proceeds shall be payable to the Lessee. Lessor and any such assignee as their respective interests may appear at the time of any such payment. Lessor and any such assignee shall be named as additional insureds on any public liability insurance policies so maintained. Lessee shall furnish to Lessor satisfactory evidence of any insurance so maintained no later than the date of delivery of each item of Equipment and once annually, upon Lessor's request, during the term hereof. Lessee's above obligation shall commence on the initial date of delivery of the Equipment and shall continue until the Lease term hereof expires and the Equipment is returned to Lessor. Lessee shall cooperate and, to the extent possible, cause others to cooperate with Lessor and all companies providing any insurance to Lessee or Lessor or both with respect to the Equipment in collection on or enforcement of any such insurance. By this Section 7, Lessor does not modify or limit any provision of this Lease relating to disclaimer of warranties and liability, or indemnity.

## 8.  RETURN OF EQUIPMENT

Upon the expiration or earlier termination of the Lease term, Lessee shall return the Equipment to Lessor in the same condition as received, reasonable wear and tear excepted and in the condition required by Sections 3 and 5 hereof, and shall permit the Equipment to be (a) inspected by agent(s) of the respective manufacturer(s). If Lessor so requests, (b) repaired, if necessary, so as to place the Equipment in the foregoing condition, (c) secured for shipping, and (d) shipped by truck or other normal ground transportation to such address as Lessor may designate. Lessor shall pay all expenses arising from the above clause (a) of this Section 8, and Lessee shall pay all expenses arising from the above clauses (b), (c), and (d) of this Section 8, provided that shipping charges payable by Lessee under such clause (d) shall be limited to an amount equal to the cost of shipping the Equipment to any location within the Continental United States.

## 9  DISCLAIMER OF LIABILITY AND INDEMNITY

Lessor shall not be liable for, and Lessee agrees to indemnify and hold Lessor, Secured Party, and their respective successors and assigns harmless against any loss, claim, action, suit, demand, proceeding, liability, penalty, cost, damage, obligation, lien or expense of any kind on account of personal injury, property damage or otherwise, including but not limited to any matter arising under strict liability in tort, imposed on or incurred by or assessed against Lessor or Secured Party or its or their successors or assigns, including without limitation attorneys' fees incurred on account of any of the foregoing, in any way relating to this Lease or any document contemplated hereby, or in any way relating to the selection, manufacture, purchase, acceptance, ownership, delivery, installation, lease, sublease, possession, use, operation, maintenance, condition, return or storage of any item of Equipment, or any accident in connection therewith, or arising by operation of law as a consequence of any of the foregoing. The provisions of this Section 9 shall survive any termination of this Lease, provided, however, that the Lessee shall not be required to indemnify the Lessor for (a) any claim in respect of any item of Equipment arising from acts or events which occur after possession of such item has been redelivered to the Lessor, (b) any claim resulting from the willful misconduct or negligence of the Lessor. Lessee shall give Lessor prompt written notice of any matter hereby indemnified against and agrees that unless directed to the contrary by written notice by the indemnified party, Lessee shall assume full responsibility for the defense thereof on behalf of such party.

## 10  EVENTS OF DEFAULT

(a)  Each of the following shall constitute an Event of Default hereunder; (i) default in the payment of any Rent hereunder and continuance thereof for ten days after notice by Lessor to Lessee of said default; (ii) failure by Lessee to make any other payment required by this Lease, or to perform any other of Lessee's agreements set forth in this Lease, within 30 days after notice thereof is given by Lessor to Lessee; (iii) Lessee becomes insolvent or admits in writing its inability to pay its debts as they mature, or applies for, consents to, or acquiesces in the

appointment of a trustee or a receiver or similar officer for it or any of its property, or, in the absence of such application. consent or acquiescence. a trustee or receiver or similar officer is appointed for Lessee or for a substantial part of its property and is not discharged within 60 days. or any bankruptcy reorganization. debt dissolution or other proceeding under any bankruptcy or insolvency law, or any dissolution or liquidation proceeding. is instituted by or against Lessee, and if instituted against Lessee is consented to or acquiesced in by Lessee or remains for 60 days undismissed; (iv) Lessee shall make an assignment for the benefit of creditors; (v) any warranty, representation. statement or report made by Lessee in this Lease or in any document or certificate furnished in connection with this Lease or any financing obtained in connection therewith proves to have been untrue or incorrect in any material respect; or (vi) a material adverse change in the financial position of Lessee or Co-Lessee has occurred between the time the Equipment Schedule is approved by Lessor and receipt of the signed and dated Certificate of Acceptance

(b)  Upon the occurrence of an Event of Default and so long as the same is continuing Lessor may, at its option, declare the applicable Schedule(s) to be in default by notice to Lessee, and thereafter exercise one or more of the following remedies, as Lessor in its sole discretion lawfully elects:

(1)  Proceed by court action, either at law or in equity to enforce performance by Lessee of this Lease or to recover damages for the breach thereof.

(2)  By notice terminate the applicable Schedule, whereupon all rights of Lessee in the Equipment subject to said Schedule will absolutely cease but Lessee will remain liable as hereinafter provided; and thereupon Lessee, if so requested, will at its expense promptly return the Equipment to Lessor at the place designated by Lessor within the Continental United States and in the condition required pursuant to the terms hereof, or Lessor at its option, may enter the premises where the Equipment is located and take immediate possession of and remove the same in a lawful manner. Lessee will, without further demand, forthwith pay Lessor an amount equal to any past due Rent which was due and payable for all periods up to and including the Monthly Rent payment date following the date on which Lessor has declared the Schedule to be in default, plus, as liquidated damages for loss of a bargain and not as a penalty, an amount ("Default Value") equal to the present value of (i) the Monthly Rent which would otherwise have accrued from such Monthly Rent payment date to the end of the term of the applicable Schedule ("Rental Amount") plus (ii) all other amounts which absent a default would have been payable by Lessee hereunder and under the applicable Schedule(s) for the full term thereof, including. if Lessee is permitted or required pursuant to any applicable Schedule to purchase the Equipment, or pay any deficiency the purchase price or deficiency amount provided therein  Such present value shall be computed utilizing a rate of 5% per annum. Following the return of the Equipment to Lessor pursuant to this clause (2), Lessor will proceed to sell or re-lease the Equipment in a commercially reasonable manner. The proceeds of such sale or re-lease will be applied by Lessor (A) first, to pay all costs and expenses, including reasonable legal fees and disbursements, incurred by Lessor as a result of the default and the exercise of its remedies with respect thereto, (B) second, to pay Lessor an amount equal to any unpaid past due Rent due and payable plus the Default Value, to the extent not previously paid by Lessee, and (C) third, to reimburse Lessee for the portion of the Default Value attributable to Rental Amount to the extent (i) the full Default Value has been previously paid as liquidated damages and (ii) such proceeds are attributable to allocated to the period commencing on the Monthly Rent payment date following the date on which the Lessor has declared the Schedule to be in default and ending on the date the applicable Schedule would have terminated if Lessee had not defaulted.  Any surplus remaining thereafter will be retained by Lessor. To the extent Lessee has not paid Lessor the amounts specified in this clause (2). Lessee will forthwith pay such amounts to Lessor plus interest at the rate provided for in Section 14 (a) of this Lease Agreement, but not more than the highest lawful rate under applicable law, on such amounts, computed from the date the Default Value is payable hereunder until such amounts are paid.

(3)  If Lessee default continues ten (10) days after written or telephonic notice of such default from Lessor. Lessor may, at its option, render the system unusable until Lessor receives payment in full

(c)  In addition. Lessee shall be liable for any damages and expenses which Lessor shall have sustained by reason of the breach of any covenant, representation or warranty of this Lease other than for the payment of the Monthly Rent, and shall be liable for any and all unpaid amounts due hereunder before, during or after the exercise of any of the foregoing remedies and for all reasonable attorneys' fees and other costs and expenses incurred by reason of the occurrence of any Event of Default or the exercise of Lessor's remedies with respect thereto, including all costs and expenses incurred in connection with the return of any item of Equipment. Upon the occurrence and during the continuance of an Event of Default hereunder. Lessor shall be exclusively entitled to enforce the warranties assigned to Lessee under Section 4 hereof, notwithstanding such assignment  No remedy referred to in this Section is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lessor at law or in equity

(d)  A cancellation or termination hereunder shall occur only upon written notice by Lessor to Lessee, or repossession as provided above, and only with respect to such items of Equipment as Lessor specifically elects to cancel or terminate by such notice or repossession. Except as to any such item of Equipment with respect to which there is a cancellation or termination, this Lease shall remain in full force and effect and Lessee shall be and remain liable for the full performance of all its obligations

11  SUBLEASE AND ASSIGNMENT

3

ANY OTHER WAY TRANSFER THIS LEASE, THE EQUIPMENT OR ANY PART THEREOF, OR ANY INTEREST THEREIN, OR (ii) PERMIT THE EQUIPMENT OR ANY PART THEREOF TO BE USED BY ANYONE OTHER THAN LESSEE OR LESSEE'S EMPLOYEES; excepting only that so long as no Event of Default hereunder has occurred. Lessee may sublease the Equipment provided that the following are fulfilled as conditions precedent to Lessee's having authority hereunder so to sublease; (1) the sublease shall not contain any provisions which would or the performance of which would, with notice or lapse of time or both or neither, result in any default under this Lease; (2) the sublease shall contain a provision expressly subordinating the sublease to Lessor's rights under this Lease, a provision by which the sublessee agrees jointly and severally with Lessee, to be bound by and perform Lessee's obligations under this Lease, and a provision prohibiting any transfer, and any further subleasing except on conditions identical to the provisions of this Section 11; (3) such sublease shall be assigned to Lessor as security for the performance of Lessee's obligations under this Lease, under an assignment (including a consent of the sublessee) in form and substance satisfactory to Lessor; (4) such subleasing shall not in any way adversely affect any federal, state or other tax benefits of the Lessor or Secured Party; (5) all such Uniform Commercial Code financing statements and other instruments necessary or appropriate to perfect or record Lessor's or Secured Party's interest in the sublease. the payments due thereunder and the Equipment shall have been duly executed and filed or recorded; (6) the identity of the sublessee and form of sublease shall have been approved by Lessor and Secured Party, which approval shall not be unreasonably withheld  No such permitted sublease shall relieve Lessee of any of its obligations hereunder  Any assignment, sublease, pledge hypothecation or transfer for which consent is required hereby and which is made without such consent shall be void. The consent of Lessor or Secured Party to any of the foregoing applies only to the specific instance in which given, and shall not be deemed a consent to any subsequent like act by Lessee or any other person. Subject to the foregoing, this Lease inures to the benefit of, and is binding upon, the successors and assigns of the parties hereto. Lessee's interest herein shall not be assigned by operation of law. Lessor and any direct or remote assignee of any right, title and interest of Lessor hereunder shall have the right at any time or from time to time to assign to any third party all or any part of its right, title and interest in and to this Lease or the Equipment. Lessee acknowledges that any assignment or transfer by Lessor permitted under this Lease shall not materially change Lessee's duties or obligations under this Lease or materially increase the burdens or risks imposed upon Lessee.

(b)  Lessor may obtain financing through financial institutions and secure such financial institutions ("Secured Party") by granting a security interest in or lien on all or any part of Lessor's interest in the Equipment, the applicable Schedule, any collateral therefor, and amounts payable by Lessee under the applicable Schedule. Such financing may include the purchase of the Equipment by the Secured Party. In the event of such financing (1) the lien instrument or security agreement will specifically provide that it is subject to Lessee's rights as herein provided; (2) such assignment of the applicable Schedule or any interest herein will not relieve Lessor from its obligations hereunder or be construed to be an assumption by Secured Party of such obligations (but Secured Party may perform, at its option, some or all of Lessor's obligations); (3) upon appropriate notice and upon request by Secured Party, Lessee will thereafter pay directly to Secured Party all Rent and other amounts payable hereunder; and (4) Lessee's obligations hereunder, including, without limitation, its obligation to pay Rent and other amounts hereunder, shall be absolute and unconditional and shall not be subject to any reduction, abatement, defense, set-off, counterclaim or recoupment for any reason whatsoever

(b)  PROGRESS PAYMENTS

12  PROGRESS PAYMENTS

If progress payments are approved by Lessor, not less than 15 days prior to the due date thereof, Lessee shall deliver to Lessor on the form provided by Lessor Lessee's authorization to make a progress payment. Provided on such due date no Event of Default has occurred and be continuing hereunder or under the Master Lease Agreement, Lessor shall make the authorized progress payment set forth to the manufacturer(s) or supplier(s) specified on such authorization in respect of such progress payments made by Lessor. Lessee agrees as follows:

(i)  To pay the Lessor or Lessor's Assignee a daily rental amount equal to the product of the aggregate amount of progress payments actually made by Lessor multiplied by the monthly rental payment as set forth in the Equipment Schedule divided by thirty (30) from the date such progress payments are in fact made.  Lessee agrees to pay the total daily rental amount through the final Acceptance Date and thereafter. Lessee will pay the Periodic Rental Payment as and when due under the Lease.  Lessee's daily rental payments hereunder shall be made by Lessee to Lessor within ten (10) days of Lessee's receipt of a written invoice therefor (but not more than one such invoice shall be made within any given period of thirty (30) days accompanied by evidence reasonably satisfactory to Lessee indicating the amount and date of payment by Lessor of the progress payments in respect of which such payment is so requested);

(ii)  Lessee acknowledges and understands that Lessor may elect to borrow all or any portion of the progress payments required by Lessor under this provision and that as security therefor, Lessor may assign this Equipment Schedule, including, but not limited to, Lessee's rights hereunder, to the lender of such amounts so borrowed.  Lessee agrees, without notice to Lessee, Lessor may make such assignment in connection with any such borrowing and for the protection and benefit of Lessor and any such assignee, the rights of Lessor or its assignee in and to such payments shall be absolute and unconditional in accordance with Section 2 of the Master Lease Agreement

INITIAL: Lessee _____   Lessor _____

(iii) In the event Lessee does not deliver Lessee's Equipment Acceptance Certificate for the Equipment to Lessor on or before 3 months from the date such progress payment is made hereunder (unless such period is extended by mutual agreement of Lessor and Lessee), Lessee will pay to Lessor or Lessor's assignee, upon demand, an amount equal to the sum of all progress payments theretofore made by Lessor pursuant to this authorization, together with unpaid daily rental amounts thereon

13. LESSOR'S TAX BENEFITS

Lessee acknowledges that Lessor shall be entitled to claim all tax benefits, credits and deductions related to the Equipment for federal income tax purposes including, without limitation: (i) deductions on Lessor's cost of the Equipment for each of its tax years during the term of the Lease under any method of depreciation or other cost recovery formula permitted by the Internal Revenue Code of 1986, as amended (hereinafter called the "Code"), and (ii) interest deductions as permitted by the Code on the aggregate interest paid to any Assignee (hereinafter collectively "Lessor's Tax Benefits") Lessee agrees to take no action inconsistent (including voluntary substitution of Equipment) with the foregoing or which would result in the loss, disallowance, recapture or unavailability to Lessor of Lessor's Tax Benefits. Lessee hereby indemnifies Lessor and its Assignee(s) from and against (a) any loss, disallowance, unavailability or recapture of Lessor's Tax Benefits resulting from any action or failure to act of Lessee, including replacement of the Equipment plus (b) all interest, penalties, costs (including attorney fees), or additions to tax resulting from such loss disallowance unavailability or recapture.

14 GENERAL

(a) Any provision herein that Lessee shall take any action shall require Lessee to do so at its sole cost and expense Lessee shall pay Lessor interest at the maximum rate permitted by applicable law, but in no event in excess of a rate of 1-1/2% per month, on any amount past due from the date it is required to make any payment of Rent or other amount hereunder. Such interest shall be payable with respect to the period commencing on the date such payment is due through the date such payment is actually made

(b) Any notice hereunder shall be in writing and shall be deemed to be given when delivered, including but not limited to overnight courier or electronic transmission or, if mailed, on the third day after mailing by registered or certified mail, postage prepaid and addressed to Lessee or Lessor at its respective address shown on the first page hereof, or to either party at such other address it has designated as its address for purposes of notice hereunder.

(c) Promptly upon Lessor's written request, Lessee agrees to execute, acknowledge and deliver such instruments, and to take such other action, as may reasonably be necessary in the opinion of Lessor, or Lessor's counsel, to protect Lessor's or any Secured Party's interests in the Equipment, this Lease and any Rent, including, but without limitation, the obtaining and execution of landlord and mortgage waivers and Uniform Commercial Code financing statements in recordable form, incumbency certificates and, at Lessee's expense, opinion of Lessee's legal counsel regarding the matters contained in Section 4(b) hereof Upon Lessor's written request, Lessee also agrees to provide quarterly financial statements and annual audited financial statements in the form previously furnished to Lessor within 120 days of the end of each quarter and Lessee's fiscal year end. Lessor may file or record a copy of this Lease, as a financing statement or for any other purpose. Lessee agrees to pay Lessor a transaction fee of $350 per Schedule for filing fees in connection with Uniform Commercial Code financing statements Lessee hereby authorizes Lessor to file UCC financing statements in recordable form on its behalf with respect to the Equipment It is the intention of the parties that the Lease constitutes a true lease In the event that the Lease is not held to be a true lease, Lessee hereby grants to Lessor a lien and security interest in the Equipment and all proceeds thereof to secure the payment and performance of Lessee's obligations to Lessor under the Lease

(d) This Lease Agreement is, and is intended to be, a lease, and Lessee does not acquire hereby any right, title or interest in or to the Equipment except the right to use the same as Lessee under the terms hereof. Both Lessor and Lessee agree to characterize this Lease Agreement as a lease for Federal income tax purposes

(e) This Master Lease Agreement and all Schedules duly executed and attached hereto from time to time constitute the entire agreement between the parties hereto with respect to the Equipment, and any change or modification hereto and any related agreement must be in writing and signed by the parties hereto There shall be a single executed original of this Master Lease

4

Agreement which shall be marked and for the purposes hereof shall be referred to as the "Original"; all other counterparts shall be marked "Duplicate" With respect to any Schedule to this Master Lease Agreement executed by the parties hereto, the following shall apply: (i) each such Schedule shall constitute a new lease between the parties; (ii) there shall be a single executed original of each such Schedule marked "Original"; (iii) all other counterparts of such Schedule shall be marked "Duplicate"; and (iv) to the extent, if any, that any such Schedule constitutes chattel paper (as such term is defined in the Uniform Commercial Code as in effect in any applicable jurisdiction) no security interest therein may be created through the transfer or possession of the Original of this Master Lease Agreement or any Duplicate of such a Schedule. but such security interest may be created by the transfer or possession of the Original of such Schedule together with a certified copy of this Master Lease Agreement

(f) Lessor is not, and shall not be deemed to be an agent, employee or representative of Lessee or any manufacturer of any Equipment for any purpose whatsoever.

(g) If this Lease or any provision hereof shall be deemed invalid, illegal or unenforceable in any respect or in any jurisdiction, the validity, legality and enforceability of this Lease in other respects and in other jurisdictions shall not be in any way impaired or affected thereby. No covenant or condition of this Lease can be waived except by the written consent of the party to be bound by such waiver No waiver by Lessor of any Event of Default hereunder shall in any way be, or be construed to be, a waiver of any future or subsequent Event of Default Forbearance or indulgence by Lessor or Lessee in any regard whatsoever shall not constitute a waiver of the covenant or condition to be performed by the other party to which such forbearance or indulgence may apply and, until complete performance by such party of such covenant or condition, Lessor or Lessee, as the case may be, shall be entitled to invoke any remedy available to such party under this Lease or by law or in equity or otherwise despite said forbearance or indulgence This Lease shall be governed by the laws of the State of Illinois. LESSEE WAIVES TRIAL BY JURY AND SUBMITS TO THE JURISDICTION OF AND CONSENTS TO VENUE IN THE FEDERAL DISTRICT COURT OR ANY STATE COURT LOCATED WITHIN COOK COUNTY IN THE STATE OF ILLINOIS AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

(h) Should Lessee fail to make any payment or to do any act as herein provided, after notice to Lessee which is reasonable under the circumstances. Lessor shall have the right, but not the obligation and without releasing Lessee from any obligation hereunder or waiving Lessor's right to declare a default hereunder, to make or do the same, and to pay, purchase, contest or compromise any encumbrance, charge or lien which in the reasonable judgment of Lessor appears to materially and adversely affect Lessor's interest in the Equipment, and in exercising any such rights, Lessor may incur any liability and expend whatever amount in its reasonable discretion it may deem necessary therefor. All sums so incurred or expended by Lessor shall be without demand immediately due and payable by Lessee

(i) Whenever the context of this Lease requires, the singular number includes the plural. Section headings contained herein are solely for the convenience of the parties, and are not an aid in the interpretation of the instrument Although this Master Lease Agreement is dated as of the date first above written for convenience, the Agreement Date and the Commencement Date shall be as specified in the applicable Schedule.

(j) This Master Lease Agreement may be canceled by Lessee in writing, provided all outstanding Schedules hereunder have either expired or have been terminated with respect to their individual termination provisions, and that no Events of Default have occurred under any Schedules, and Lessee has fulfilled all obligations under all such Schedules.

(k) This agreement signed by both parties constitutes the final written expression of all the terms of this agreement and is a complete and exclusive statement of those terms, and supersedes all negotiations or discussions which may have been previously conducted. No other oral or written agreement or understanding of any nature concerning the subject matter of this agreement has been made or entered into This agreement may be modified or rescinded only by a writing signed both the parties

(l) Lessee hereby agrees that it shall promptly notify Lessor if Lessee changes its name or state of registration

INSIGHT FINANCIAL CORPORATION
LESSOR

By: _____

Title: _____

B.E.S.C.R., INC.
LESSEE

By: _____

Title: _____

## EQUIPMENT SCHEDULE NUMBER 993-01

LESSEE: B.E.S.C.R., INC.

MASTER LEASE AGREEMENT DATE: February 15, 2005

MASTER LEASE AGREEMENT NUMBER: 993

This Equipment Schedule is issued pursuant to the Master Lease Agreement identified above. All of the terms and conditions of the Master Lease Agreement are hereby incorporated herein and made a part hereof as if such terms and conditions were set forth in this Equipment Schedule. This Equipment Schedule, together with the terms and conditions as incorporated herein, constitutes a separately enforceable lease agreement with respect to the Equipment.

Lessee acknowledges that any assignment or transfer permitted under this Lease shall not materially change Lessee's duties or obligations under this Lease or materially increase the burdens or risks imposed upon Lessee.

EQUIPMENT SCHEDULE AGREEMENT DATE: February 15, 2005

EQUIPMENT SCHEDULE COMMENCEMENT DATE: First day of the month following acceptance of Equipment.

RATE ADJUSTMENT: The Lease Rate Factor ("LRF") will be adjusted upward in direct proportion to increases in 3 year Treasury Notes as listed in the *Federal Reserve Statistical Release* on the Acceptance date as compared to February 15, 2005.

EQUIPMENT: Savin Digital Copier Equipment per Exhibit A to Equipment Schedule No. 01.

LEASE TERM AND RENTAL PAYMENTS: Term 36 months, payable monthly on the first day of each month with the last month's rental payment payable in advance. The amount of each payment is $5,193.28.

REDOCUMENTATION: Upon final acceptance, Lessee and Lessor agree to redocument this Equipment Schedule as necessary to reflect any changes to the items of Equipment, the Equipment Cost and the rent amount.

CONTINGENCIES: This Lease is contingent upon the following: Lessor's receipt of a personal guaranty each from Elizabeth Eastwood and Steven Artstein covering Lessee's obligations under the Lease, in a from approved by Lessor.

OPTIONS AT END OF LEASE TERM: Subject to the provisions of the Master Lease Agreement and provided there has been no Event of Default, at the end of ther lease term, Lessee must purchase the Equipment for the sum of $101.00 and other good and valuable consideration on an "AS-IS/WHERE-IS" basis.

LOCATION OF EQUIPMENT: 700 S. Flower St., Suite 1050, Los Angeles, CA 90017

ADDITIONAL PROVISIONS TO EQUIPMENT SCHEDULE:        Casualty Values. . . . . . . . . . . . . . .    Exhibit B

INSIGHT FINANCIAL CORPORATION
(Lessor)

By: _____

Title: _____

B.E.S.C.R., INC.
(Lessee)

By: _____

Title: _____

EXHIBIT A TO EQUIPMENT SCHEDULE NO. 993-01
EQUIPMENT/LOCATION

LESSEE: B.E.S.C.R., INC.

AGREEMENT DATE: February 15, 2005

EQUIPMENT LOCATION:    700 S. Flower St., Suite 1050, Los Angeles, CA 90017

EQUIPMENT:       Savin Digital Copier Equipment, consisting of the following:

QUANTITY     DESCRIPTION

| QUANTITY | DESCRIPTION | |
|---|---|---|
| 1 | SAVIN 25105 DIGITAL COPIER | SERIAL NUMBER H3721100008 |
| 1 | | |
| 1 | SAVIN 2105 FINISHER | |
| 1 | SAVIN 2585/25105 2 HOLE PUNCH KIT | |
| 1 | SAVIN 2105 LCT | |
| 1 | SAVIN 2085/2105 PRINT CONTROLLER BOARD TYPE 850 | |
| 1 | SAVIN 2070 NIC CARD | |
| 1 | SAVIN 256MB MEMORY | |
| 1 | SAVIN COPY CONNECTOR KIT TYPE 850 | |
| 1 | KODAK ADA AHA 29160 68 PIN ULTRA SCSI CARD | |
| 1 | KODAK SC3520D PRODUCTION SCANNER | |
| 1 | KODAK 6 FT 68 PIN SCSI CABLE | |
| 1 | PC BASED FILE SERVER, 40X CDRW, RAID CONTROLLER, 2X 120GBHD, FLAT PANEL MONITOR | |
| 1 | DOCULEX PDF CAPTURE SOFTWARE | |
| 1 | ADOBE ACROBAT (1 USER LICENSE) | |
| 1 | RICOH/ SAVIN INSTALLATION & SETUP | |
| 1 | SAVIN 25105 START-UP KIT | |
| 2 | DOCULEX PDF CAPTURE FULL-DAY TRAINING | |

This Exhibit is hereby attached to and made a part of the Equipment Schedule No. 01 dated February 15, 2005 to Master Lease Agreement No. 993 dated February 15, 2005 between INSIGHT FINANCIAL CORPORATION, as Lessor and B.E.S.C.R., Inc., as Lessee.

EXHIBIT B
TO
EQUIPMENT SCHEDULE NO. 01
DATED FEBRUARY 15, 2005
To
MASTER LEASE AGREEMENT NO. 993
DATED FEBRUARY 15, 2005
BETWEEN
INSIGHT FINANCIAL CORPORATION (Lessor)
AND
B.E.S.C.R., INC. (Lessee)


CASUALTY VALUES


The Casualty Value of the Equipment covered by the Master Lease Agreement identified above (hereinafter called the Agreement), as of any date, shall be the amount indicated below opposite the period of time in which such date occurs. Values for those periods between the ones indicated below can be calculated through interpolation of nearest values.

| Months Expired After Equipment Schedule Commencement Date | Casualty Value |
|---|---|
| 0 | $176,000.00 |
| 12 | $160,496.00 |
| 24 | $142,704.00 |
| 36 | $122,304.00 |

Following payment of the Casualty Value, the Lessor and the Lessee shall each make reasonable efforts to obtain bids for the purchase of any existing Equipment suffering such Loss. Such Equipment shall be sold for the highest cash offer then available, or if higher, other offer acceptable to Lessor and Lessee. Upon such sale, the Lessee shall be refunded of the proceeds of the sale less the actual expenses incurred by Lessor in making the sale, including, without limitation, storage, insurance, advertising and sales taxes, but such refund shall not be in excess of the Casualty Value previously paid.

Following payment of the Casualty Value, the Lessee shall be entitled to the proceeds of any insurance covering the Equipment suffering such a total Casualty up to an amount not in excess of the Casualty Value previously paid, but in no event shall aggregate of amounts refunded to or received by Lessee pursuant to this Exhibit B exceed the Casualty Value.

This Exhibit is hereby attached to and made a part of the Equipment Schedule of the Master Lease Agreement bearing the date as set forth above, between INSIGHT FINANCIAL CORPORATION and B.E.S.C.R., INC.

# OFFICER'S CERTIFICATE

CERTIFIED
COPY
_MMB_
_3/9/05_

The undersigned, _____, of B.E.S.C.R., Inc. (the "Company"), hereby certifies as follows to Insight Financial Corporation ("INSIGHT"):

1.    The person specified in item 2 below is authorized to execute Master Lease Agreement No. 993 dated February 15, 2005, Equipment Schedule No. 01 dated February 15, 2005, any Equipment Schedule(s) entered into thereafter and ancillary documents as may be required between the Company and INSIGHT, on behalf of the Company.

2.    The following person is, and has been at all times since _____, a duly qualified and acting officer of the Company, duly elected or appointed to the office set forth opposite his name:

| Name | Office | Signature |
|------|--------|-----------|
| Elizabeth M. Eastwood | President | |

IN WITNESS WHEREOF, the undersigned officer has executed this Certificate and affixed the corporate seal of the Company this _28_ day of _Febu_, 2005.

(CORPORATE SEAL)

By: _____

Name: _PETER EASTWOOD_

Title: _CHIEF FINANCIAL OFFICER_

THE PERSON EXECUTING THE MASTER LEASE AGREEMENT, RELATED DOCUMENTS AND THIS CERTIFICATE IN SECTION 2 ABOVE MUST BE OTHER THAN THE PERSON EXECUTING THIS OFFICER'S CERTIFICATE OF THE CORPORATION.

CERTIFICATE OF ACCEPTANCE
TO
EQUIPMENT SCHEDULE NO. 993-01

The undersigned being the Lessee under Equipment Schedule Number 01 dated February 15, 2005 to Master Lease Agreement No. 993 dated February 15, 2005 ("Lease") by and between INSIGHT FINANCIAL CORPORATION, as Lessor and the undersigned, as Lessee, hereby certifies as follows:

(a)    The equipment listed below is acceptable by Lessee as being installed and being acceptable under the terms of the Lease.

        EQUIPMENT:          Savin Digital Copier Equipment, per Exhibit A to Equipment Schedule No. 01 attached
                            hereto and made a part hereof.

(b)    The Lessor is not known to be in default under the terms of said Lease and Lessee has no known claim against Lessor under the Lease as of the date thereof.

(c)    There has been no material adverse change in the financial position of the Lessee or, if applicable, Co-Lessee or Guarantor.

(d)    Lessee hereby waives any right it may have under Section 2A-517 of the Uniform Commercial Code or otherwise to revoke this acceptance for any reason whatsoever including, but not limited to (i) any assumption by Lessee that a nonconformity would be cured, (ii) any inducement of acceptance by the Lessor's assurances or any difficulty to discover a nonconformity before acceptance, or (iii) any Lessor default under the Lease. Lessee further hereby waives its rights under Section 2A-401 and 2A-402 of the Uniform Commercial Code to suspend performance of any of its obligation under the Lease with respect to the Equipment hereby accepted.

ACCEPTANCE DATE:  February 25, 2005

B.E.S.C.R., INC.
(Lessee)

By:

Title:

EXHIBIT A TO EQUIPMENT SCHEDULE NO. 993-01
EQUIPMENT/LOCATION

LESSEE: B.E.S.C.R., INC.

AGREEMENT DATE: February 15, 2005

EQUIPMENT LOCATION:    700 S. Flower St., Suite 1050, Los Angeles, CA 90017

EQUIPMENT:    Savin Digital Copier Equipment, consisting of the following:

| QUANTITY | DESCRIPTION | |
|---|---|---|
| 1 | SAVIN 25105 DIGITAL COPIER | SERIAL NUMBER H3721100008 |
| 1 | | |
| 1 | SAVIN 2105 FINISHER | |
| 1 | SAVIN 2585/25105 2 HOLE PUNCH KIT | |
| 1 | SAVIN 2105 LCT | |
| 1 | SAVIN 2085/2105 PRINT CONTROLLER BOARD TYPE 850 | |
| 1 | SAVIN 2070 NIC CARD | |
| 1 | SAVIN 256MB MEMORY | |
| 1 | SAVIN COPY CONNECTOR KIT TYPE 850 | |
| 1 | KODAK ADA AHA 29160 68 PIN ULTRA SCSI CARD | |
| 1 | KODAK SC3520D PRODUCTION SCANNER | |
| 1 | KODAK 6 FT 68 PIN SCSI CABLE | |
| 1 | PC BASED FILE SERVER, 40X CDRW, RAID CONTROLLER, 2X 120GBHD, FLAT PANEL MONITOR | |
| 1 | DOCULEX PDF CAPTURE SOFTWARE | |
| 1 | ADOBE ACROBAT (1 USER LICENSE) | |
| 1 | RICOH/ SAVIN INSTALLATION & SETUP | |
| 1 | SAVIN 25105 START-UP KIT | |
| 2 | DOCULEX PDF CAPTURE FULL-DAY TRAINING | |

This Exhibit is hereby attached to and made a part of the Equipment Schedule No. 01 dated February 15, 2005 to Master Lease Agreement No. 993 dated February 15, 2005 between INSIGHT FINANCIAL CORPORATION, as Lessor and B.E.S.C.R., Inc., as Lessee



1935 Shermer Road • Suite 300 • Northbrook, IL 60062
Phone: 847-509-3500 • Fax: 847 509-8525

NOTICE AND ACKNOWLEDGMENT OF ASSIGNMENT

February 25, 2005

VIA DHL Expressmail

Mr. Peter Eastwood
B.E.S.C.R., Inc.
11 S. LaSalle St., Suite 900
Chicago, IL  60603

Dear Mr. Eastwood:

Reference is made to Equipment Schedule No. 01 dated February 15, 2005 to the Master Lease Agreement No. 993 dated February 15, 2005, (the "Lease"), and any amendments or riders thereto between Insight Financial Corporation ("Lessor") and B.E.S.C.R., Inc.  ("Lessee").

Lessor hereby gives Lessee notice that Lessor has assigned the Lease to The CIT Group/Equipment Financing, Inc. ("Assignee").

In order to induce Assignee to accept an assignment of all Lessor's right, title and interest in the Lease, but none of Lessor's obligations with respect thereto, you confirm to Assignee the following:

1.   The Lease is the only agreement between you and the Lessor with respect to the leased equipment.  You acknowledge that the copy of the Lease attached hereto is a complete copy of the Lease.

2.   As of March 1, 2005, there are thirty-six (36) payments of rent due under the Lease, each in the amount of $5,193.28, of which you shall pay Assignee thirty-two (32) payments commencing June 1, 2005.  Provided all amounts then due and owing are paid, the aggregate amount of rent due under the Lease as of June 1, 2005 is $166,184.96.

3.   You will pay directly to Assignee all payments of rent and other amounts due under the Lease, commencing June 1, 2005.

4.   The leased equipment has been installed and accepted by you and is in good operating order and condition.

5.   You agree that your obligations to make payments to Assignee in the amounts required by the Lease are absolute and unconditional and are independent of your use or enjoyment of the leased equipment or the performance by Lessor of any of its obligations under the Lease or otherwise.  You will make all such payments to Assignee regardless of, and will not assert against Assignee, any defense, claim, setoff, recoupment, abatement or other right, existing or future, which you may have against the Lessor or any other person or entity.  You will also make all such payments to Assignee regardless of any bankruptcy, insolvency, reorganization or similar event with respect to Lessor and regardless of the effect of any such event on the Lease or your use or enjoyment of the leased equipment.

Mr. Peter Eastwood
B.E.S.C.R., Inc.
February 25, 2005
Page -2- of -2-

6.  Assignee is not responsible for performance of any of the duties of Lessor or any other person under the lease or any other agreement, including but not limited to responsibility for service, repairs or maintenance. You are obligated to pay rent to Assignee regardless of any failure of Lessor or any other person to perform such service, maintenance or repairs required by the Lease.

7.  Wherever the Lease requires you to give notice to, or obtain consent from, the Lessor, you agree to give such notice to, or obtain such consent from, Assignee. You agree not to change, amend or alter the Lease without the prior written consent of Assignee.

8.  In no event shall you, upon demand by Lessor for payment of unpaid rentals, upon acceleration of the maturity of the Lease or otherwise, be obligated to pay any amount in excess of that permitted by law.

Please indicate your confirmation of the foregoing by signing and returning the enclosed copy of this letter directly to Assignee, as follows:

THE CIT GROUP/EQUIPMENT FINANCING, INC.
One CIT Drive, Livingston, NJ 07039
Attn: Mr. Steve Babeuf – (973) 740-5032 – Fax: (973) 740-5362

Very truly yours,

INSIGHT FINANCIAL CORPORATION
Lessor

By: _____
Title: _____

We confirm the foregoing on _____, 2005.

B.E.S.C.R., INC.
Lessee

By: _____
Title: _____

THE CIT GROUP/EQUIPMENT FINANCING, INC.
Assignee

By: _____
Title: _____
J. STEVENSON BABEUF
VICE PRESIDENT

```
08CV3020    EDP
JUDGE ST. EVE
MAGISTRATE JUDGE COX
```

**EXHIBIT F**

MANDELL MENKES LLC

Suite 300
333 West Wacker Drive
Chicago, Illinois 60606
Telephone (312) 251-1000
Fax (312) 251-1010
www.mandellmenkes.com

March 27, 2008

**VIA OVERNIGHT COURIER**
**AND REGULAR U.S. MAIL**

Elizabeth M. Eastwood
2337 Wyckwood Drive
Aurora, Illinois 60506

Re:    Lease agreement number 993 between The CIT Group/Equipment Financing, Inc.
and B.E.S.C.R., Inc., personally guaranteed by Elizabeth M. Eastwood and Steven
H. Artstein; Account No. 258-0119588-000

Dear Ms. Eastwood:

Please be advised that we have been retained by The CIT Group/Equipment Financing,
Inc., as assignee for Insight Financial Corporation ("CIT"), in connection with the above-
referenced lease.

As you know, on or about February 15, 2005, B.E.S.C.R., Inc. ("BESCR") entered into a
lease agreement with CIT for the lease of certain copier equipment collectively referred to as
Savin Digital Copier Equipment. A copy of the master lease agreement, equipment schedule
together with the exhibits, officer's certificate, certificate of acceptance, and notice of
assignment are enclosed herewith for your reference. BESCR is to make 32 monthly payments
in the amount of $5,193.28 to CIT commencing on June 1, 2005. It is our understanding that
BESCR has failed to make any payments to CIT since its last payment in or about April 18,
2007. Pursuant to the Personal Guarantee you signed on or about February 15, 2005, once
BESCR defaulted under the lease, you became immediately obligated to perform all of the
obligations of BESCR, including, without limitation, paying the amounts due under the lease. A
copy of the Personal Guarantee is enclosed herewith.

On behalf of CIT, we hereby demand immediate payment of the past due lease payments
together with the late charges accrued thereon through date of payment. If we do not hear from
you within 10 days of your receipt of this correspondence, we shall have no other alternative but
to file suit to recover the outstanding balance in excess of $166,000.00, including unpaid lease
payments, finance charges thereon, plus interest and reimbursement for our client's attorneys'
fees and costs of suit.

Very truly yours,

Agata P. Karpowicz

APK:jr
Enclosures
168835 v1

# MASTER LEASE AGREEMENT

CERTIFIED
COPY
MMB
3/8/05

**LESSOR:**  INSIGHT FINANCIAL CORPORATION, a Delaware corporation
1935 Shermer Road, Northbrook, IL  60062

**LESSEE:**  B E S C R , Inc , an Illinois corporation
11 S  LaSalle St , Suite 900, Chicago, IL  60603

**AGREEMENT DATE:**  February 15, 2005

**LEASE AGREEMENT NO:**  993

This contract is a Master Lease Agreement  The terms of each Equipment Schedule ("Schedule") hereto are subject to any and all conditions and provisions set forth herein at the time of execution of such Schedule as the same may have been amended prior to the execution of such Schedule  Each Schedule shall provide a description of Equipment, Lease Term, Rental Payment(s), Location of Equipment Commencement Date, Commitment Expiration Date and such other information as may be required  Each Schedule is enforceable according to the terms and conditions contained therein and in the event of a conflict between the language of this Master Lease Agreement and any Schedule hereto, the language of the Schedule shall prevail in respect to that Schedule  Each Schedule together with the terms and conditions of this Master Lease Agreement incorporated therein is referred to herein as the "Lease" or "Lease Agreement"  Lessor, by its acceptance hereof, hereby leases to Lessee and the Lessee hereby leases from Lessor, in accordance with the terms and conditions set forth herein and in the applicable Schedule, the Equipment described on the Schedule and in any attachments thereto together with all replacement parts additions, accessories, alterations and repairs incorporated therein or now or hereafter affixed to such Equipment (the "Equipment").

## 1  LEASE TERM

This Master Lease Agreement shall be effective from the date hereof. As to any particular item of Equipment the term shall continue as stated in the applicable Schedule, from the respective Commencement Date  as, from time to time  Equipment described in any Schedule is accepted by Lessee. Said term shall be automatically extended for an additional twelve (12) month period at the monthly lease rate in effect at the end of said term unless and until terminated by either party hereto giving the other not less than one hundred eighty (180) days prior written notice. Acceptance ("Acceptance") shall occur on the following applicable date:  (i) in the case of Equipment acquired by Lessor from a third party vendor which Equipment by its nature does not require installation, the date of delivery of the item of Equipment to Lessee; (ii) in the case of Equipment acquired by Lessor from a third party Vendor which Equipment by its nature does require installation the day the Equipment is installed; or (iii) in the case of an item of Equipment which is the subject of a sale and leaseback between Lessor and Lessee  the date upon which Lessor purchases such Equipment from Lessee.

## 2  PAYMENTS OF RENT

Unless otherwise set forth in the respective Schedule  the following shall apply: The first rental payment shall be due upon the Acceptance of the Equipment by Lessee, and such payment shall cover the lease month or other period commencing on the Commencement Date  Each subsequent rental payment shall be due and payable in advance, for the lease period covered by such payment, on the first day thereof. In the event Acceptance occurs prior to the Commencement Date, interim rental shall be paid by Lessee in the amount equal to a proration on a per diem basis of the Monthly Rent as hereinafter defined, for the period commencing as of the date of Acceptance to the Commencement Date. All rental and other payments by Lessee under this Lease shall be made to Lessor at its address stated above or at such other address as Lessor may designate in writing and if payment shall be made by check  such check shall arrive at such address on or before the date the rental payment shall be due  Monthly rent payable with respect to each item of Equipment ("Monthly Rent") shall be as set forth for such item in the applicable Schedule. Any and all amounts payable to Lessor hereunder other than Monthly Rent shall be considered and referred to herein as "Supplemental Rent" Monthly Rent together with Supplemental Rent  shall be referred to herein as "Rent" This Lease provides for a net lease  and the Rent due hereunder from Lessee to Lessor shall be absolute and unconditional and shall not be subject to any abatement, recoupment  defense, claim, counter-claim reduction, set-off, or any other adjustment of any kind for any reason whatsoever

## 3  ADDITIONAL SUMS PAYABLE BY LESSEE

(a)  All transportation, transit insurance and other charges payable for delivery of the Equipment to Lessee, and for installation of the Equipment  shall be paid by Lessee

(b)  Lessee shall promptly pay all costs  expenses and obligations of every kind and nature incurred in connection with the use, maintenance, servicing  repair or operation of the Equipment which may arise or be payable during the lease term of such Equipment hereunder except as specifically provided herein, and shall keep the Equipment in as good repair condition and working order as when delivered to Lessee hereunder, reasonable wear and tear from the proper use thereof alone excepted, and shall furnish any and all parts  mechanisms and devices required to keep the Equipment in such good repair condition and working order, at the expense of Lessee, and in addition will permit the manufacturer to make all free-of-charge engineering changes  all so that the Equipment will remain acceptable to the manufacturer for

maintenance  Without limiting the foregoing  Lessee shall  during the continuance of this Lease  at its own expense  make appropriate arrangements for maintenance of each item of Equipment, including without limitation with respect to each item of Equipment entering into and maintaining in force a contract with the manufacturer of the Equipment or other person or entity approved in writing by Lessor covering at least prime shift maintenance

(c)  Lessee shall indemnify and hold harmless Lessor against and shall pay all federal  state, county or local taxes  fees or other charges, however designated (together with any related interest or penalties not arising from negligence on the part of Lessor)  imposed or assessed against or with respect to this Lease, Rent hereunder  the Equipment  Lessor or Lessee or payable by Lessor or Lessee with respect to the use, lease, sale purchase delivery possession, sublease or ownership of the Equipment  excepting only (i) taxes on or to the extent measured by the net income of Lessor, franchise taxes and gross receipts taxes in the nature of an income tax; and (ii) sales, use or similar taxes or other amounts paid by Lessor if, and only if, any such taxes or other amounts are included as part of the acquisition cost of any Equipment

## 4  WARRANTIES

(a)  Lessor hereby warrants and covenants to Lessee that so long as no Event of Default has occurred under the applicable Schedule hereto  Lessee shall and may quietly have, hold and enjoy the Equipment and every part thereof leased hereunder for the term of this Lease  as such term may be extended hereunder, free from disturbance by Lessor or its agents  employees  successors or assigns  or by anyone (whether the holder of a lien or otherwise) claiming solely by, through or under Lessor  LESSEE HAS EXCLUSIVELY SELECTED AND CHOSEN THE TYPE, DESIGN, CONFIGURATION, SPECIFICATION AND QUALITY OF THE EQUIPMENT HEREIN LEASED AND THE VENDOR  DEALER, SELLER, MANUFACTURER OR SUPPLIER THEREOF (the "Seller").  LESSEE LEASES, HIRES AND RENTS THE EQUIPMENT  AS IS, WHERE IS "  LESSOR HAS NOT MADE AND MAKES NO, AND HEREBY EXPRESSLY DISCLAIMS ANY OTHER, EXPRESS OR IMPLIED WARRANTY WHATSOEVER HEREUNDER  INCLUDING ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR ANY PURPOSE, OR OTHERWISE, REGARDING THE EQUIPMENT OR ANY PART OR THE DESIGN OR CONDITION THEREOF  Subject to the provisions of Section 10 hereof, Lessor hereby transfers and assigns to Lessee during the term of this Lease all of its right, title and interest in any express or implied warranties and covenants of any Equipment manufacturer or vendor which are assignable by Lessor  Lessor shall not be liable for any loss or damage suffered by Lessee or by any other person or entity, direct or indirect or consequential  including, but not limited to  business interruption and injury to persons or property, resulting from the non-delivery or late delivery  installation  failure or faulty operation  condition  suitability or use of the Equipment leased by Lessee hereunder, or for any of Lessee's or any other representatives  warranties or covenants made by the Seller. Any claims of Lessee  with respect to claims discussed in the preceding sentences shall not be made against Lessor but shall be made  if at all  solely and exclusively against Seller  or any persons other than the Lessor

(b)  Lessee at the time of execution of this Master Lease Agreement and any Schedule hereto hereby warrants and represents to Lessor  Secured Party, as hereinafter defined  and their respective successors and assigns: (i) that execution  delivery and performance of this Lease Agreement have been duly authorized by all necessary corporate action on its part and are not in conflict with its charter or bylaws or with or constitute a breach of or default under any indenture  contract or agreement by which it is bound  or with any statute, judgment  decree rule or regulation binding upon it; (ii) that no consent or approval of any trustee or holder of any indebtedness or obligation  and no consent or approval of  or taking of any other action with respect to  any governmental authority, is necessary for execution, delivery or performance of this Lease Agreement (iii) that this Lease Agreement is legal, valid, binding  and enforceable against the Lessee in accordance with its terms  subject to enforcement limitations imposed by rules of equity or by bankruptcy or similar laws; (iv) Lessee is an Illinois corporation validly existing and in good standing under the laws of the jurisdiction of its incorporation and the jurisdiction(s) where the Equipment will be located and has adequate corporate power to enter into and perform this Lease; (v) Lessee's organizational number is 58657875; and (vi) there are no actions  suits or proceedings pending or  to the knowledge of Lessee threatened against or affecting Lessee in any court or before any governmental commission  board or authority  which  if adversely determined  will have a materially adverse effect on the ability of Lessee to perform its obligations under this Lease

INITIAL: Lessee _[signature]_        Lessor _MMB_

2

## 5 POSSESSION, USE AND MAINTENANCE OF THE EQUIPMENT

(a) The Equipment shall be kept by Lessee (i) subject to inspection by Lessor at reasonable times and manner, (ii) at Lessee's address, as stated on each Schedule hereto, which Equipment shall not be relocated without prior written consent of Lessor, which consent shall not be unreasonably withheld (3) free of all security interests of any kind whatever, liens encumbrances and other claims except (i) those of persons claiming solely against Lessor but not Lessee on account of obligations which Lessee is not required by this Lease to discharge (ii) liens of current taxes not delinquent (except liens for taxes which are being contested by Lessee as provided in Section 3 hereof) (4) marked with the manufacturer's identification marks or numbers and if requested by Lessor or Secured Party conspicuously labeled with labels supplied by Lessor or Secured Party to disclose Lessor's and any Secured Party's interest in the Equipment, and (5) in good and efficient working order condition and repair, reasonable wear and tear excepted, and acceptable for maintenance under the manufacturer's maintenance agreement at the expiration of the Lease Term. If such agreement is then generally available for the item of Equipment Lessee will within ten (10) working days of receiving notice thereof promptly notify Lessor in writing of any mortgage pledge lien attachment charge, encumbrance or right of others which has arisen with respect to the Equipment

(b) Lessee shall use the Equipment with due care to prevent injury thereto, and to any person or property, and in conformity with all applicable laws ordinances, rules regulations and other requirements of any insurer or governmental body and with all requirements of the manufacturer with respect to the use maintenance and operation of the Equipment Except as provided below Lessee shall not modify any Equipment without the prior written consent of Lessor which consent shall not be unreasonably withheld Lessee shall be entitled from time to time during the term of this Lease without written consent of Lessor to acquire and install at Lessee's expense, such additional features, options or modifications as may be available at such time which (i) shall be of the type which are readily removable without causing material damage to the Equipment; (ii) will not impair the originally intended function or use of the Equipment in which they are installed; and (iii) will not interfere with Lessee's ability to obtain and maintain the maintenance contract required by Section 3 hereof. Any such additional feature option or modification shall become the property of Lessor It is the intention and understanding of both Lessor and Lessee that the Equipment shall be and at all times remain separately identifiable personal property Lessee shall not permit any Equipment to be installed in or used stored or maintained with any personal property (except other Equipment leased hereunder) in such manner or under such circumstances that such Equipment might be or become an accession to or confused with such other personal property Lessee shall not permit any Equipment to be installed in or used stored or maintained with any real property in such a manner or under such circumstances that any person might acquire any rights in such Equipment paramount to the rights of Lessor or Secured Party by reason of such Equipment being deemed to be real property or a fixture thereon

## 6 RISK OF LOSS

(a) Lessee assumes and shall bear the entire risk of partial or complete loss theft, damage destruction condemnation requisition taking by eminent domain or other interruption or termination of use of the Equipment from any cause whatsoever whether or not insured against from the date of delivery of the Equipment until the Equipment is returned to and received by Lessor Except as otherwise expressly provided herein no such loss theft damage, destruction condemnation requisition taking by eminent domain or other interruption or termination of use of the Equipment, and no delay deficiency or absence of insurance proceeds, and no unavailability, delay or failure of supplies parts mechanisms, devices or service for the Equipment or any failure of the Equipment to function for any cause, shall relieve Lessee of the obligation to pay Rent hereunder Except as otherwise expressly provided in Section 6(c) hereof, this Lease shall not terminate, nor shall the respective obligations of the Lessor or the Lessee be affected, by reason of any defect in or Total Casualty (as defined in this Section 6) to or obsolescence of the Equipment or any item thereof from whatever cause, or the interference with the use thereof by any private person, corporation or governmental authority or any other disability of the Lessee to use the Equipment or war, act of God or governmental regulations any present or future law or regulation to the contrary notwithstanding Lessee shall promptly notify Lessor in writing of the occurrence of any of the above events and all pertinent details connected therewith Except during any period when an Event of Default shall have occurred Lessee shall be entitled to the proceeds of any claim or right of Lessor or Lessee against any third party on account of any of the foregoing events and Lessee shall be subrogated to the Lessor's right of recovery therefor against any third party Lessor shall execute and deliver from time to time such instruments and take such other action as may be necessary or appropriate more fully to vest in Lessee such proceeds or effect such subrogation provided, however that all costs and expenses, including court costs and attorneys' fees incurred in connection with enforcing or realizing upon any such claim or right to proceeds or obtaining enforcement of or realizing upon such right of subrogation shall be paid by Lessee

(b) In the event any item of Equipment is physically damaged to a material extent by any occurrence whatsoever Lessee shall immediately notify Lessor of such damage and, unless Lessor shall determine that Section 6(c) hereof is applicable to such damage, Lessee, at Lessee's expense, shall promptly cause such item of Equipment to be returned to the condition described in Sections 3 and 5 hereof.

(c) In the event any item of Equipment shall be lost stolen destroyed damaged beyond repair or permanently rendered unfit for use for any reason whatsoever or shall be subjected to a requisition taking by eminent domain or other interruption or termination of use for a stated period which exceeds the term of this Lease (any such occurrence being referred to as "Total Casualty") Lessee shall promptly notify Lessor and either: (i) at its expense obtain replacement equipment of identical make, model configuration capacity and condition having utility and remaining useful life at least equal to that of each such replaced item of Equipment and in which case Lessee shall immediately convey to Lessor good title for all such replacement equipment free of all liens claims or encumbrances and such replacement

equipment shall be substituted for each such item of Equipment replaced hereunder, or (ii) pay to Lessor, on the next Monthly Rent payment date for such item of Equipment following such Total Casualty, an amount equal to the Casualty Value (specified in the applicable Schedule) of such item of Equipment on such Monthly Rent payment date If Lessee elects to pay the Casualty Value, rather than replace the Equipment, after the payment of such Casualty Value and all Monthly Rent due and owing for the period prior to the date of the Total Casualty with respect to such item of Equipment, Lessee's obligation to pay further Monthly Rent for such item of Equipment shall cease, but Lessee's obligation to pay Rent for all other items of Equipment shall remain unchanged So long as no Event of Default shall have occurred and provided Lessee shall have made the Casualty Value payment identified above, Lessor shall pay Lessee any insurance proceeds received by Lessor by reason of such Total Casualty up to the amount of the Casualty Value paid by the Lessee

## 7 INSURANCE

Lessee shall at all times during the term of this Lease and until the Equipment has been returned to Lessor as provided below, at its own expense, maintain physical damage insurance in an amount sufficient to cover the replacement of the Equipment but in no event less than the Casualty Value thereof, and liability and property damage insurance covering the Equipment (including Lessee's contractual liability under Section 9 hereof), in such amount, and with such companies and such endorsements and covering such hazards, as are in general usage by companies owning or operating similar property and engaged in a business similar to Lessee's in order to adequately protect the parties hereto. All insurance so maintained shall provide for a thirty-day prior written notice to Lessor and its assigns of any cancellation or reduction of coverages and an option in Lessor or its assignees to prevent cancellation by payment of premiums, shall cover both the interest of the Lessor and any assigns of which the Lessee has notice and of the Lessee in the Equipment and shall provide that all insurance proceeds shall be payable to the Lessor and any such assignee as their respective interests may appear at the time of any such payment Lessor and any such assignee shall be named as additional insureds on any public liability insurance policies so maintained Lessee shall furnish to Lessor satisfactory evidence of any insurance so maintained no later than the date of delivery of each item of Equipment and once annually, upon Lessor's request, during the term hereof. Lessee's above obligation shall commence on the initial date of delivery of the Equipment and shall continue until the Lease term hereof expires and the Equipment is returned to Lessor Lessee shall cooperate and, to the extent possible, cause others to cooperate with Lessor and all companies providing any insurance to Lessee or Lessor or both with respect to the Equipment in collection on or enforcement of any such insurance By this Section 7, Lessor does not modify or limit any provision of this Lease relating to disclaimer of warranties and liability or indemnity

## 8 RETURN OF EQUIPMENT

Upon the expiration or earlier termination of this Lease term, Lessee shall return the Equipment to Lessor in the same condition as received, reasonable wear and tear excepted and in the condition required by Sections 3 and 5 hereof, and shall permit the Equipment to be (a) inspected by agent(s) of the respective manufacturer(s) If Lessor so requests, (b) repaired, if necessary, so as to place the Equipment in the foregoing condition (c) secured for shipping, and (d) shipped by truck or other normal ground transportation to such address as Lessor may designate Lessor shall pay all expenses arising from the above clause (a) of this Section 8, and Lessee shall pay all expenses arising from the above clauses (b), (c) and (d) of this Section 8, provided that shipping charges payable by Lessee under such clause (d) shall be limited to an amount equal to the cost of shipping the Equipment to any location within the Continental United States

## 9 DISCLAIMER OF LIABILITY AND INDEMNITY

Lessor shall not be liable for and Lessee agrees to indemnify and hold Lessor, Secured Party and their respective successors and assigns harmless against any loss, claim, action, suit, demand proceeding liability, penalty cost, damage, obligation, lien or expense of any kind on account of personal injury, property damage or otherwise including but not limited to any matter arising under, select liability in tort imposed on or incurred by or asserted against Lessor or Secured Party or its or their successors or assigns including without limitation attorneys' fees incurred on account of any of the foregoing, in any way relating to this Lease or any document contemplated hereby, or in any way relating to the selection, manufacture, purchase, acceptance, ownership, delivery, installation, lease, sublease, possession, use, operation, maintenance, condition, return or storage of any item of Equipment, or any accident in connection therewith, or arising by operation of law as a consequence of any of the foregoing The provisions of this Section 9 shall survive any termination of this Lease, provided however that the Lessee shall not be required to indemnify the Lessor for (a) any claim in respect of any item of Equipment arising from acts or events which occur after possession of such item has been redelivered to the Lessor. (b) any claim resulting from the willful misconduct or negligence of the Lessor Lessee shall give Lessor prompt written notice of any matter hereby indemnified against and agrees that unless directed to the contrary by written notice by the indemnified party Lessee shall assume full responsibility for the defense thereof on behalf of such party

## 10 EVENTS OF DEFAULT

(a) Each of the following shall constitute an Event of Default hereunder: (i) default in the payment of any Rent hereunder and continuance thereof for ten days after notice by Lessor to Lessee of said default; (ii) failure by Lessee to make any other payment required by this Lease or to perform any other of Lessee's agreements set forth in this Lease within 30 days after notice thereof is given by Lessee to Lessor; (iii) Lessee becomes insolvent or admits in writing its inability to pay its debts as they mature or applies for consents to or acquiesces in the

INITIAL: Lessee _SMS_                                    Lessor _MMB_

3

appointment of a trustee or a receiver or similar officer for it or any of its property or, in the absence of such application consent or acquiescence a trustee or receiver or similar officer is appointed for Lessee or for a substantial part of its property and is not discharged within 60 days or any bankruptcy reorganization debt dissolution or other proceeding under any bankruptcy or insolvency law, or any dissolution or liquidation proceeding is instituted by or against Lessee, and if instituted against Lessee it is consented to or acquiesced in by Lessee or remains for 60 days undismissed; (iv) Lessee shall make an assignment for the benefit of creditors; (v) any warranty representation statement or report made by Lessee in this Lease or in any document or certificate furnished in connection with this Lease or any financing obtained in connection therewith proves to have been untrue or incorrect in any material respect; or (vi) a material adverse change in the financial position of Lessee or Co-Lessee has occurred between the time the Equipment Schedule is approved by Lessor and receipt of the signed and dated Certificate of Acceptance

(b) Upon the occurrence of an Event of Default and so long as the same is continuing Lessor may at its option declare the applicable Schedule(s) to be in default by notice to Lessee and thereafter exercise one or more of the following remedies, as Lessor in its sole discretion lawfully elects:

(1) Proceed by court action either at law or in equity to enforce performance by Lessee of this Lease or to recover damages for the breach thereof.

(2) By notice terminate the applicable Schedule, whereupon all rights of Lessee in the Equipment subject to said Schedule will absolutely cease but Lessee will remain liable as hereinafter provided; and thereupon Lessee if so requested will at its expense promptly return the Equipment to Lessor at the place designated by Lessor within the Continental United States and in the condition required pursuant to the terms hereof. or Lessor at its option may enter the premises where the Equipment is located and take immediate possession of and remove the same in a lawful manner. Lessee will, without further demand, forthwith pay Lessor an amount equal to any past due Rent which was due and payable for all periods up to and including the Monthly Rent payment date following the date on which Lessor has declared the Schedule to be in default plus, as liquidated damages for loss of a bargain and not as a penalty, an amount ("Default Value") equal to the present value of (i) the Monthly Rent which would otherwise have accrued from such Monthly Rent payment date to the end of the term of the applicable Schedule ("Rental Amount") plus (ii) all other amounts which absent a default would have been payable by Lessee hereunder and under the applicable Schedule(s) for the full term thereof, including, if Lessee is permitted or required pursuant to any applicable Schedule to purchase the Equipment or pay any deficiency the purchase price or deficiency amount provided therein Such present value shall be computed utilizing a rate of 5% per annum. Following the return of the Equipment to Lessor pursuant to this clause (2), Lessor will proceed to sell or re-lease the Equipment in a commercially reasonable manner The proceeds of such sale or re-lease will be applied by Lessor (A) first to pay all costs and expenses, including reasonable legal fees and disbursements, incurred by Lessor as a result of the default and the exercise of its remedies with respect thereto, (B) second, to pay Lessor an amount equal to any unpaid past due Rent due and payable plus the Default Value to the extent not previously paid by Lessee, and (C) third. to reimburse Lessee for the portion of the Default Value attributable to Rental Amount to the extent (I) the full Default Value has been previously paid as liquidated damages and (ii) such proceeds are attributable or allocated to the period commencing on the Monthly Rent payment date following the date on which the Lessor has declared the Schedule to be in default and ending on the date the applicable Schedule would have terminated if Lessee had not defaulted Any surplus remaining thereafter will be retained by Lessor. To the extent Lessee has not paid Lessor the amounts specified in this clause (2) Lessee will forthwith pay such amounts to Lessor plus interest at the rate provided for in Section 14 (a) of this Lease Agreement, but not more than the highest lawful rate under applicable law on such amounts computed from the date the Default Value is payable hereunder until such amounts are paid

(3) If Lessee default continues ten (10) days after written or telephonic notice of such default from Lessor Lessor may at its option, render the system unusable until Lessor receives payment in full

(c) In addition. Lessee shall be liable for any damages and expenses Lessor shall have sustained by reason of the breach of any covenant, representation or warranty of this Lease other than for the payment of the Monthly Rent and shall be liable for any and all unpaid amounts due hereunder before, during or after the exercise of any of the foregoing remedies and for all reasonable attorneys' fees and other costs and expenses incurred by reason of the occurrence of any Event of Default or the exercise of Lessor's remedies with respect thereto, including all costs and expenses incurred in connection with the return of any item of Equipment. Upon the occurrence and during the continuance of an Event of Default hereunder Lessor shall be exclusively entitled to enforce the warranties assigned to Lessee under Section 4 hereof, notwithstanding such assignment No remedy referred to in this Section is intended to be exclusive but each shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lessor at law or in equity

(d) A cancellation or termination hereunder shall occur only upon written notice by Lessor to Lessee or repossession as provided above and only with respect to such items of Equipment as Lessor specifically elects to cancel or terminate by such notice or repossession Except as to any such item of Equipment with respect to which there is a cancellation or termination this Lease shall remain in full force and effect and Lessee shall be and remain liable for the full performance of all its obligations

11  SUBLEASE AND ASSIGNMENT

(a) LESSEE SHALL NOT  WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR

ANY OTHER WAY TRANSFER THIS LEASE, THE EQUIPMENT OR ANY PART THEREOF, OR ANY INTEREST THEREIN, OR (ii) PERMIT THE EQUIPMENT OR ANY PART THEREOF TO BE USED BY ANYONE OTHER THAN LESSEE OR LESSEE'S EMPLOYEES; excepting only that so long as no Event of Default hereunder has occurred Lessee may sublease the Equipment provided that the following are fulfilled as conditions precedent to Lessee's having authority hereunder so to sublease: (1) the sublease shall not contain any provisions which would or the performance of which would, with notice or lapse of time or both or neither result in any default under this Lease; (2) the sublease shall contain a provision expressly subordinating the sublease to Lessor's rights under this Lease. a provision by which the sublessee agrees. jointly and severally with Lessee to be bound by and perform Lessee's obligations under this Lease, and a provision prohibiting any transfer and any further subleasing except on conditions identical to the provisions of this Section 11; (3) such sublease shall be assigned to Lessor as security for the performance of Lessee's obligations under this Lease. under an assignment (including a consent of the sublessee) in form and substance satisfactory to Lessor; (4) such subleasing shall not in any way adversely affect any federal, state or other tax benefits of the Lessor or Secured Party; (5) all such Uniform Commercial Code financing statements and other instruments necessary or appropriate to perfect or record Lessor's or Secured Party's interest in the sublease the payments due thereunder and the Equipment shall have been duly executed and filed or recorded; (6) the identity of the sublessee and form of sublease shall have been approved by Lessor and Secured Party, which approval shall not be unreasonably withheld No such permitted sublease shall relieve Lessee of any of its obligations hereunder Any assignment sublease, pledge hypothecation or transfer for which consent is required hereby and which is made without such consent shall be void The consent of Lessor or Secured Party to any of the foregoing applies only to the specific instance in which given, and shall not be deemed a consent to any subsequent like act by Lessee or any other person Subject to the foregoing this Lease inures to the benefit of, and is binding upon the successors and assigns of the parties hereto Lessor's interest herein shall not be assigned by operation of law Lessor and any direct or remote assignee of any right. title and interest of Lessor hereunder shall have the right at any time or from time to time to assign to any third party all or any part of its right title and interest in and to this Lease or the Equipment Lessee acknowledges that any assignment or transfer by Lessor permitted under this Lease shall not materially change Lessee's duties or obligations under this Lease or materially increase the burdens or risks imposed upon Lessee

(b)  Lessor may obtain financing through financial institutions and secure such financial institutions ("Secured Party") by granting a security interest in or lien on all or any part of Lessor's interest in the Equipment the applicable Schedule, any collateral therefor and amounts payable by Lessee under the applicable Schedule Such financing may include the purchase of the Equipment by the Secured Party In the event of such financing (1) the lien instrument or security agreement will specifically provide that it is subject to Lessee's rights as herein provided; (2) such assignment of the applicable Schedule or any interest herein will not relieve Lessor from its obligations hereunder or be construed to be an assumption by Secured Party of such obligations (but Secured Party may perform. at its option some or all of Lessor's obligations); (3) upon appropriate notice and upon request by Secured Party, Lessee will thereafter pay directly to Secured Party all Rent and other amounts payable hereunder; and (4) Lessee's obligations hereunder. including, without limitation, its obligation to pay Rent and other amounts hereunder, shall be absolute and unconditional and shall not be subject to any reduction abatement. defense. set-off. counterclaim or recoupment for any reason whatsoever

12  PROGRESS PAYMENTS

If progress payments are approved by Lessor, not less than 15 days prior to the due date thereof, Lessee shall deliver to Lessor on the form provided by Lessor Lessee's authorization to make a progress payment Provided on such due date no Event of Default has occurred and be continuing hereunder or under the Master Lease Agreement, Lessor shall make the authorized progress payment set forth to the manufacturer(s) or supplier(s) specified on such authorization in respect of such progress payments made by Lessor Lessor agrees as follows:

(i) To pay the Lessor or Lessor's Assignee a daily rental amount equal to the product of the aggregate amount of progress payments actually made by Lessor multiplied by the monthly rental payment as set forth in the Equipment Schedule divided by thirty (30) from the date such progress payments are in fact made  Lessee agrees to pay the total daily rental amount through the final Acceptance Date and thereafter. Lessee will pay the Periodic Rental Payment as and when due under the Lease  Lessee's daily rental payments hereunder shall be made by Lessee to Lessor within ten (10) days of Lessee's receipt of a written invoice therefor (but not more than one such invoice shall be made within any given period of thirty (30) days accompanied by evidence reasonably satisfactory to Lessee indicating the amount and date of payment by Lessor of the progress payments in respect of which such payment is so requested);

(ii) Lessee acknowledges and understands that Lessor may elect to borrow all or any portion of the progress payments required by Lessor under this provision and that as security therefor Lessor may assign this Equipment Schedule including. but not limited to. Lessor's rights hereunder, to the lender of such amounts so borrowed  Lessee agrees. without notice to Lessee, Lessor may make such assignment in connection with any such borrowing and for the protection and benefit of Lessor and any such assignee, the rights of Lessor or its assignee in and to such payments shall be absolute and unconditional in accordance with Section 2 of the Master Lease Agreement

INITIAL: Lessee _____      Lessor _____

4

(iii) In the event Lessee does not deliver Lessee's Equipment Acceptance Certificate for the Equipment to Lessor on or before 3 months from the date such progress payment is made hereunder (unless such period is extended by mutual agreement of Lessor and Lessee) Lessee will pay to Lessor or Lessor's assignee upon demand, an amount equal to the sum of all progress payments theretofore made by Lessor pursuant to this authorization together with unpaid daily rental amounts thereon

**13. LESSOR'S TAX BENEFITS**

Lessee acknowledges that Lessor shall be entitled to claim all tax benefits, credits and deductions related to the Equipment for federal income tax purposes including, without limitation: (i) deductions on Lessor's cost of the Equipment for each of its tax years during the term of the Lease under any method of depreciation or other cost recovery formula permitted by the Internal Revenue Code of 1986, as amended (hereinafter called the "Code") and (ii) interest deductions as permitted by the Code on the aggregate interest paid to any Assignee (hereinafter collectively "Lessor's Tax Benefits") Lessee agrees to take no action inconsistent (including voluntary substitution of Equipment) with the foregoing or which would result in the loss, disallowance, recapture or unavailability to Lessor of Lessor's Tax Benefits. Lessee hereby indemnifies Lessor and its Assignee(s) from and against (a) any loss, disallowance, unavailability or recapture of the Equipment plus (b) all interest, penalties, costs (including attorney fees) or additions to tax resulting from such loss disallowance unavailability or recapture

**14 GENERAL**

(a) Any provision herein that Lessee shall take any action shall require Lessee to do so at its sole cost and expense. Lessee shall pay Lessor interest at the maximum rate permitted by applicable law but in no event in excess of a rate of 1-1/2% per month, on any amount past due from the date it is required to make any payment of Rent or other amount hereunder Such interest shall be payable with respect to the period commencing on the date such payment is due through the date such payment is actually made

(b) Any notice hereunder shall be in writing and shall be deemed to be given when delivered including but not limited to overnight courier or electronic transmission or, if mailed, on the third day after mailing by registered or certified mail postage prepaid and addressed to Lessee or Lessor at its respective address shown on the first page hereof, or either party at such other address it has designated as its address for purposes of notice hereunder

(c) Promptly upon Lessor's written request, Lessee agrees to execute acknowledge and deliver such instruments and to take such other action as may reasonably be necessary in the opinion of Lessor, or Lessor's counsel to protect Lessor's or any Secured Party's interests in the Equipment, this Lease and any Rent, including, but without limitation, the obtaining and execution of landlord and mortgage waivers and Uniform Commercial Code financing statements in recordable form, incumbency certificates and, at Lessee's expense, opinion of Lessee's legal counsel regarding the matters contained in Section 4(b) hereof. Upon Lessor's written request, Lessee also agrees to provide quarterly financial statements and annual audited financial statements in the form previously furnished to Lessor within 120 days of the end of each quarter and Lessee's fiscal year end. Lessor may file or record a copy of this Lease, as a financing statement or for any other purpose. Lessee agrees to pay Lessor a transaction fee of $350 per Schedule for filing fees in connection with Uniform Commercial Code financing statements. Lessee hereby authorizes Lessor to file UCC financing statements in recordable form on its behalf with respect to the Equipment. It is the intention of the parties that the Lease constitutes a true lease. In the event that the Lease is not held to be a true lease. Lessee hereby grants to Lessor a lien on and security interest in the Equipment and all proceeds thereof to secure the payment and performance of Lessee's obligations to Lessor under the Lease

(d) This Lease Agreement is, and is intended to be, a lease, and Lessee does not acquire hereby any right title or interest in or to the Equipment except the right to use the same as Lessee under the terms hereof. Both Lessor and Lessee agree to characterize this Lease Agreement as a lease for Federal income tax purposes

(e) This Master Lease Agreement and all Schedules duly executed and attached hereto from time to time constitute the entire agreement between the parties hereto with respect to the Equipment and any change or modification hereto and any related agreement must be in writing and signed by the parties hereto. There shall be a single executed original of this Master Lease

Agreement which shall be marked and for the purposes hereof shall be referred to as the "Original"; all other counterparts shall be marked "Duplicate." With respect to any Schedule to this Master Lease Agreement executed by the parties hereto the following shall apply: (i) each such Schedule shall constitute a new lease between the parties; (ii) there shall be a single executed original of each such Schedule marked "Original"; (iii) all other counterparts of such Schedule shall be marked "Duplicate"; and (iv) to the extent, if any that any such Schedule constitutes chattel paper (as such term is defined in the Uniform Commercial Code as in effect in any applicable jurisdiction) no security interest therein may be created through the transfer or possession of the Original of this Master Lease Agreement or any Duplicate of such a Schedule but such security interest may be created by the transfer or possession of the Original of such Schedule together with a certified copy of this Master Lease Agreement

(f) Lessor is not, and shall not be deemed to be an agent, employee or representative of Lessee or any manufacturer of any Equipment for any purpose whatsoever

(g) If this Lease or any provision hereof shall be deemed invalid, illegal or unenforceable in any respect or in any jurisdiction, the validity, legality and enforceability of this Lease in other respects and in other jurisdictions shall not be in any way impaired or affected thereby. No covenant or condition of this Lease can be waived except by the written consent of the party to be bound by such waiver. No waiver by Lessor of any Event of Default hereunder shall in any way be or be construed to be a waiver of any future or subsequent Event of Default Forbearance or indulgence by Lessor or Lessee in any regard whatsoever shall not constitute a waiver of the covenant or condition to be performed by the other party to which such forbearance or indulgence may apply and, until complete performance by such party of such covenant or condition Lessor or Lessee as the case may be shall be entitled to invoke any remedy available to such party under this Lease or by law or in equity or otherwise despite said forbearance or indulgence. This Lease shall be governed by the laws of the State of Illinois. LESSEE WAIVES TRIAL BY JURY AND SUBMITS TO THE JURISDICTION OF AND CONSENTS TO VENUE IN THE FEDERAL DISTRICT COURT OR ANY STATE COURT LOCATED WITHIN COOK COUNTY IN THE STATE OF ILLINOIS AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM

(h) Should Lessee fail to make any payment or to do any act as herein provided after notice to Lessee which is reasonable under the circumstances, Lessor shall have the right, but not the obligation and without releasing Lessee from any obligation hereunder or waiving Lessor's right to declare a default hereunder to make or do the same, and to pay, purchase, contest or compromise any encumbrance charge or lien which in the reasonable judgment of Lessor appears to materially and adversely affect Lessor's interest in the Equipment and in connection with any such rights Lessor may incur any liability and expend whatever amount in its reasonable discretion it may deem necessary therefor. All sums so incurred or expended by Lessor shall be without demand immediately due and payable by Lessee

(i) Whenever the context of this Lease requires the singular number includes the plural Section headings contained herein are solely for the convenience of the parties and are not an aid in the interpretation of the instrument. Although this Master Lease Agreement is dated as of the date first above written for convenience the Agreement Date and the Commencement Date shall be as specified in the applicable Schedule

(j) This Master Lease Agreement may be canceled by Lessee in writing, provided all outstanding Schedules hereunder have either expired or have been terminated with respect to their individual termination provisions and that no Events of Default have occurred under any Schedules, and Lessee has fulfilled all obligations under all such Schedules

(k) This agreement signed by both parties constitutes the final written expression of all the terms of this agreement and is a complete and exclusive statement of those terms, and supersedes all negotiations or discussions which may have been previously conducted. No other oral or written agreement or understanding of any nature concerning the subject matter of this agreement has been made or entered into. This agreement may be modified or rescinded only by a writing signed both the parties

(l) Lessee hereby agrees that it shall promptly notify Lessor if Lessee changes its name or state of registration

INSIGHT FINANCIAL CORPORATION
LESSOR

By: _____

Title: _____


B.E.S.C.R , INC
LESSEE

By: _____

Title: _____

## EQUIPMENT SCHEDULE NUMBER 993-01

LESSEE: B.E.S.C.R., INC.

MASTER LEASE AGREEMENT DATE: February 15, 2005

MASTER LEASE AGREEMENT NUMBER: 993

This Equipment Schedule is issued pursuant to the Master Lease Agreement identified above. All of the terms and conditions of the Master Lease Agreement are hereby incorporated herein and made a part hereof as if such terms and conditions were set forth in this Equipment Schedule. This Equipment Schedule, together with the terms and conditions as incorporated herein, constitutes a separately enforceable lease agreement with respect to the Equipment

Lessee acknowledges that any assignment or transfer permitted under this Lease shall not materially change Lessee's duties or obligations under this Lease or materially increase the burdens or risks imposed upon Lessee.

EQUIPMENT SCHEDULE AGREEMENT DATE: February 15, 2005

EQUIPMENT SCHEDULE COMMENCEMENT DATE:   First day of the month following acceptance of Equipment.

RATE ADJUSTMENT:   The Lease Rate Factor ("LRF") will be adjusted upward in direct proportion to increases in 3 year Treasury Notes as listed in the *Federal Reserve Statistical Release* on the Acceptance date as compared to February 15, 2005

EQUIPMENT:  Savin Digital Copier Equipment per Exhibit A to Equipment Schedule No. 01.

LEASE TERM AND RENTAL PAYMENTS:  Term 36 months, payable monthly on the first day of each month with the last month's rental payment payable in advance. The amount of each payment is $5,193 28.

REDOCUMENTATION:   Upon final acceptance, Lessee and Lessor agree to redocument this Equipment Schedule as necessary to reflect any changes to the items of Equipment, the Equipment Cost and the rent amount.

CONTINGENCIES:  This Lease is contingent upon the following:  Lessor's receipt of a personal guaranty each from Elizabeth Eastwood and Steven Artstein covering Lessee's obligations under the Lease, in a from approved by Lessor.

OPTIONS AT END OF LEASE TERM:  Subject to the provisions of the Master Lease Agreement and provided there has been no Event of Default, at the end of ther lease term, Lessee must purchase the Equipment for the sum of $101.00 and other good and valuable consideration on an "AS-IS/WHERE-IS" basis.

LOCATION OF EQUIPMENT: 700 S. Flower St., Suite 1050, Los Angeles, CA  90017

ADDITIONAL PROVISIONS TO EQUIPMENT SCHEDULE:        Casualty Values.  . . . .   . . . .   Exhibit B

INSIGHT FINANCIAL CORPORATION
(Lessor)

By: _____

Title: _____

B.E.S.C.R., INC.
(Lessee)

By: _____

Title: _____

## EXHIBIT A TO EQUIPMENT SCHEDULE NO. 993-01
## EQUIPMENT/LOCATION

LESSEE: B.E.S.C.R., INC.

AGREEMENT DATE: February 15, 2005

EQUIPMENT LOCATION:    700 S. Flower St., Suite 1050, Los Angeles, CA 90017

EQUIPMENT:    Savin Digital Copier Equipment, consisting of the following:

| QUANTITY | DESCRIPTION |
|---|---|
| 1 | SAVIN 25105 DIGITAL COPIER    SERIAL NUMBER H3721100008 |
| 1 | |
| 1 | SAVIN 2105 FINISHER |
| 1 | SAVIN 2585/25105 2 HOLE PUNCH KIT |
| 1 | SAVIN 2105 LCT |
| 1 | SAVIN 2085/2105 PRINT CONTROLLER BOARD TYPE 850 |
| 1 | SAVIN 2070 NIC CARD |
| 1 | SAVIN 256MB MEMORY |
| 1 | SAVIN COPY CONNECTOR KIT TYPE 850 |
| 1 | KODAK ADA AHA 29160 68 PIN ULTRA SCSI CARD |
| 1 | KODAK SC3520D PRODUCTION SCANNER |
| 1 | KODAK 6 FT 68 PIN SCSI CABLE |
| 1 | PC BASED FILE SERVER, 40X CDRW, RAID CONTROLLER, 2X 120GBHD, FLAT PANEL MONITOR |
| 1 | DOCULEX PDF CAPTURE SOFTWARE |
| 1 | ADOBE ACROBAT (1 USER LICENSE) |
| 1 | RICOH/ SAVIN INSTALLATION & SETUP |
| 1 | SAVIN 25105 START-UP KIT |
| 2 | DOCULEX PDF CAPTURE FULL-DAY TRAINING |

This Exhibit is hereby attached to and made a part of the Equipment Schedule No. 01 dated February 15, 2005 to Master Lease Agreement No. 993 dated February 15, 2005 between INSIGHT FINANCIAL CORPORATION, as Lessor and B.E.S.C.R., Inc., as Lessee

EXHIBIT B
TO
EQUIPMENT SCHEDULE NO. 01
DATED FEBRUARY 15, 2005
To
MASTER LEASE AGREEMENT NO. 993
DATED FEBRUARY 15, 2005
BETWEEN
INSIGHT FINANCIAL CORPORATION (Lessor)
AND
B.E.S.C.R., INC. (Lessee)

CASUALTY VALUES

The Casualty Value of the Equipment covered by the Master Lease Agreement identified above (hereinafter called the Agreement), as of any date, shall be the amount indicated below opposite the period of time in which such date occurs Values for those periods between the ones indicated below can be calculated through interpolation of nearest values.

| Months Expired After Equipment Schedule Commencement Date | Casualty Value |
|---|---|
| 0 | $176,000.00 |
| 12 | $160,496.00 |
| 24 | $142,704.00 |
| 36 | $122,304.00 |

Following payment of the Casualty Value, the Lessor and the Lessee shall each make reasonable efforts to obtain bids for the purchase of any existing Equipment suffering such Loss. Such Equipment shall be sold for the highest cash offer then available, or if higher, other offer acceptable to Lessor and Lessee. Upon such sale, the Lessee shall be refunded of the proceeds of the sale less the actual expenses incurred by Lessor in making the sale, including, without limitation, storage, insurance, advertising and sales taxes, but such refund shall not be in excess of the Casualty Value previously paid.

Following payment of the Casualty Value, the Lessee shall be entitled to the proceeds of any insurance covering the Equipment suffering such a total Casualty up to an amount not in excess of the Casualty Value previously paid, but in no event shall aggregate of amounts refunded to or received by Lessee pursuant to this Exhibit B exceed the Casualty Value

This Exhibit is hereby attached to and made a part of the Equipment Schedule of the Master Lease Agreement bearing the date as set forth above, between INSIGHT FINANCIAL CORPORATION and B.E.S.C.R., INC.

## OFFICER'S CERTIFICATE

CERTIFIED
COPY

*MMB*
*3/9/05*

The undersigned, _____, of B.E.S.C.R., Inc. (the "Company"), hereby certifies as follows to Insight Financial Corporation ("INSIGHT"):

1.    The person specified in item 2 below is authorized to execute Master Lease Agreement No. 993 dated February 15, 2005, Equipment Schedule No. 01 dated February 15, 2005, any Equipment Schedule(s) entered into thereafter and ancillary documents as may be required between the Company and INSIGHT, on behalf of the Company.

2.    The following person is, and has been at all times since _____, a duly qualified and acting officer of the Company, duly elected or appointed to the office set forth opposite his name:

| Name | Office | Signature |
|------|--------|-----------|
| Elizabeth M. Eastwood | President | |

IN WITNESS WHEREOF, the undersigned officer has executed this Certificate and affixed the corporate seal of the Company this *28* day of *Febru*, 2005

(CORPORATE SEAL)

By: _____

Name: *PETER EASTWOOD*

Title: *CHIEF FINANCIAL OFFICER*

THE PERSON EXECUTING THE MASTER LEASE AGREEMENT, RELATED DOCUMENTS AND THIS CERTIFICATE IN SECTION 2 ABOVE MUST BE OTHER THAN THE PERSON EXECUTING THIS OFFICER'S CERTIFICATE OF THE CORPORATION.

CERTIFICATE OF ACCEPTANCE
TO
EQUIPMENT SCHEDULE NO. 993-01

The undersigned being the Lessee under Equipment Schedule Number 01 dated February 15, 2005 to Master Lease Agreement No. 993 dated February 15, 2005 ("Lease") by and between INSIGHT FINANCIAL CORPORATION, as Lessor and the undersigned, as Lessee, hereby certifies as follows:

(a)    The equipment listed below is acceptable by Lessee as being installed and being acceptable under the terms of the Lease.

EQUIPMENT:    Savin Digital Copier Equipment, per Exhibit A to Equipment Schedule No. 01 attached hereto and made a part hereof

(b)    The Lessor is not known to be in default under the terms of said Lease and Lessee has no known claim against Lessor under the Lease as of the date thereof.

(c)    There has been no material adverse change in the financial position of the Lessee or, if applicable, Co-Lessee or Guarantor.

(d)    Lessee hereby waives any right it may have under Section 2A-517 of the Uniform Commercial Code or otherwise to revoke this acceptance for any reason whatsoever including, but not limited to (i) any assumption by Lessee that a nonconformity would be cured, (ii) any inducement of acceptance by the Lessor's assurances or any difficulty to discover a nonconformity before acceptance, or (iii) any Lessor default under the Lease. Lessee further hereby waives its rights under Section 2A-401 and 2A-402 of the Uniform Commercial Code to suspend performance of any of its obligation under the Lease with respect to the Equipment hereby accepted.

ACCEPTANCE DATE:  February 25, 2005

B.E.S.C.R., INC.
(Lessee)

By:

Title:

EXHIBIT A TO EQUIPMENT SCHEDULE NO. 993-01
EQUIPMENT/LOCATION

LESSEE: B.E.S.C.R., INC.

AGREEMENT DATE: February 15, 2005

EQUIPMENT LOCATION:     700 S  Flower St , Suite 1050, Los Angeles, CA  90017

EQUIPMENT:        Savin Digital Copier Equipment, consisting of the following:

QUANTITY    DESCRIPTION

| QUANTITY | DESCRIPTION | |
|---|---|---|
| 1 | SAVIN 25105 DIGITAL COPIER | SERIAL NUMBER H3721100008 |
| 1 | | |
| 1 | SAVIN 2105 FINISHER | |
| 1 | SAVIN 2585/25105 2 HOLE PUNCH KIT | |
| 1 | SAVIN 2105 LCT | |
| 1 | SAVIN 2085/2105 PRINT CONTROLLER BOARD TYPE 850 | |
| 1 | SAVIN 2070 NIC CARD | |
| 1 | SAVIN 256MB MEMORY | |
| 1 | SAVIN COPY CONNECTOR KIT TYPE 850 | |
| 1 | KODAK ADA AHA 29160 68 PIN ULTRA SCSI CARD | |
| 1 | KODAK SC3520D PRODUCTION SCANNER | |
| 1 | KODAK 6 FT 68 PIN SCSI CABLE | |
| 1 | PC BASED FILE SERVER, 40X CDRW, RAID CONTROLLER, 2X 120GBHD, FLAT PANEL MONITOR | |
| 1 | DOCULEX PDF CAPTURE SOFTWARE | |
| 1 | ADOBE ACROBAT (1 USER LICENSE) | |
| 1 | RICOH/ SAVIN INSTALLATION & SETUP | |
| 1 | SAVIN 25105 START-UP KIT | |
| 2 | DOCULEX PDF CAPTURE FULL-DAY TRAINING | |

This Exhibit is hereby attached to and made a part of the Equipment Schedule No  01 dated February 15, 2005 to Master Lease Agreement No  993 dated February 15, 2005 between INSIGHT FINANCIAL CORPORATION, as Lessor and B E.S.C R , Inc , as Lessee



1935 Shermer Road • Suite 300 • Northbrook, IL 60062
Phone: 847 509-3500 • Fax: 847 509-8525

## NOTICE AND ACKNOWLEDGMENT OF ASSIGNMENT

February 25, 2005

VIA DHL Expressmail

Mr. Peter Eastwood
B.E.S.C.R., Inc.
11 S. LaSalle St., Suite 900
Chicago, IL 60603

Dear Mr. Eastwood:

Reference is made to Equipment Schedule No. 01 dated February 15, 2005 to the Master Lease Agreement No. 993 dated February 15, 2005, (the "Lease"), and any amendments or riders thereto between Insight Financial Corporation ("Lessor") and B.E.S.C.R., Inc. ("Lessee").

Lessor hereby gives Lessee notice that Lessor has assigned the Lease to The CIT Group/Equipment Financing, Inc. ("Assignee").

In order to induce Assignee to accept an assignment of all Lessor's right, title and interest in the Lease, but none of Lessor's obligations with respect thereto, you confirm to Assignee the following:

1.  The Lease is the only agreement between you and the Lessor with respect to the leased equipment. You acknowledge that the copy of the Lease attached hereto is a complete copy of the Lease.

2.  As of March 1, 2005, there are thirty-six (36) payments of rent due under the Lease, each in the amount of $5,193.28, of which you shall pay Assignee thirty-two (32) payments commencing June 1, 2005. Provided all amounts then due and owing are paid, the aggregate amount of rent due under the Lease as of June 1, 2005 is $166,184.96.

3.  You will pay directly to Assignee all payments of rent and other amounts due under the Lease, commencing June 1, 2005.

4.  The leased equipment has been installed and accepted by you and is in good operating order and condition.

5.  You agree that your obligations to make payments to Assignee in the amounts required by the Lease are absolute and unconditional and are independent of your use or enjoyment of the leased equipment or the performance by Lessor of any of its obligations under the Lease or otherwise. You will make all such payments to Assignee regardless of, and will not assert against Assignee, any defense, claim, setoff, recoupment, abatement or other right, existing or future, which you may have against the Lessor or any other person or entity. You will also make all such payments to Assignee regardless of any bankruptcy, insolvency, reorganization or similar event with respect to Lessor and regardless of the effect of any such event on the Lease or your use or enjoyment of the leased equipment.

Mr. Peter Eastwood
B.E.S.C.R., Inc.
February 25, 2005
Page -2- of -2-

6.  Assignee is not responsible for performance of any of the duties of Lessor or any other person under the lease or any other agreement, including but not limited to responsibility for service, repairs or maintenance. You are obligated to pay rent to Assignee regardless of any failure of Lessor or any other person to perform such service, maintenance or repairs required by the Lease.

7.  Wherever the Lease requires you to give notice to, or obtain consent from, the Lessor, you agree to give such notice to, or obtain such consent from, Assignee. You agree not to change, amend or alter the Lease without the prior written consent of Assignee.

8.  In no event shall you, upon demand by Lessor for payment of unpaid rentals, upon acceleration of the maturity of the Lease or otherwise, be obligated to pay any amount in excess of that permitted by law

Please indicate your confirmation of the foregoing by signing and returning the enclosed copy of this letter directly to Assignee, as follows:

> THE CIT GROUP/EQUIPMENT FINANCING, INC.
> One CIT Drive, Livingston, NJ 07039
> Attn: Mr. Steve Babeuf – (973) 740-5032 – Fax: (973) 740-5362

Very truly yours,

INSIGHT FINANCIAL CORPORATION
Lessor

By: _____

Title: _____

We confirm the foregoing on _____, 2005.

B.E.S.C.R., INC.
Lessee

By: _____

Title: _____

THE CIT GROUP/EQUIPMENT FINANCING, INC
Assignee

By: _____

Title: _____
J. STEVENSON BABEUF
VICE PRESIDENT

CERTIFIED
COPY

MMB
3/8/05

# PERSONAL GUARANTY

THIS PERSONAL GUARANTY CREATES SPECIFIC LEGAL OBLIGATIONS. When we use the words *you* and *your* in this Personal Guaranty, we mean the Personal Guarantor(s) indicated below. When we use the words *we*, *us* and *our* in this Personal Guaranty we mean INSIGHT FINANCIAL CORPORATION.

In consideration of our entering into Equipment Schedule No. 01 dated February 15, 2005 to the Master Lease Agreement dated February 15, 2005 with B.E.S.C.R., Inc., as Lessee ("Lease"), you unconditionally and irrevocably guarantee to us, our successors and assigns the prompt payment and performance of all obligations under the Lease. You agree that this is a guaranty of payment and not of collection, and that we can proceed directly against you without first proceeding against the Customer identified in the Lease ("Lessee") or against the equipment covered by the Lease. You waive all defenses and notices, including those of protest, presentment and demand. You agree that we can renew, extend or otherwise modify the terms of the Lease and you will be bound by such changes. If the Lessee defaults under the Lease, you will immediately perform all other obligations of the Lessee under the Lease, including, but not limited to, paying all amounts due under the Lease. You will pay to us all expenses (including attorneys' fees) incurred by us in enforcing our rights against you or the Lessee. This is a continuing guaranty that will not be discharged or affected by your death and will bind your heirs and personal representatives. You waive any right to seek repayment from the Lessee in the event you must pay us. If more than one personal guarantor has signed this Personal Guaranty, each of you agree that your liability is joint and several.

THIS PERSONAL GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS. YOU CONSENT TO THE JURISDICTION OF ANY COURT LOCATED WITHIN THAT STATE, BOTH YOU AND WE EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY.

| | |
|---|---|
| _Personal Guarantor (no title)_ | _Personal Guarantor (no title)_ |
| Elizabeth Marie Eastwood     February 15, 2005 | Steven H. Artstein |
| Print Name ELIZABETH M EASTWOOD   Date 2/25/05 | Print Name STEVEN H ARTSTEIN   2/25/05 |
| _2337 Wyckwood Dr., Aurora, IL 60506_ | _915 Huckleberry Lane, Northbrook, IL 60062_ |
| Home Street Address/City/State/Zip | Home Street Address/City/State/Zip |
| 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        (630) 890-1839 | 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 |
| (847) 498-5195 | |
| Social Security Number     Phone No. | Social Security Number |
| Phone No. | |

MANDELL MENKES LLC

Suite 300
333 West Wacker Drive
Chicago, Illinois 60606
Telephone (312) 251-1000
Fax (312) 251-1010
www.mandellmenkes.com

March 27, 2008

**VIA OVERNIGHT COURIER**
**AND REGULAR U.S. MAIL**

Steven H. Artstein
915 Huckleberry Lane
Northbrook, Illinois 60062

Re:    Lease agreement number 993 between The CIT Group/Equipment Financing, Inc
and B.E S.C.R , Inc., personally guaranteed by Elizabeth M. Eastwood and Steven
H. Artstein; Account No 258-0119588-000

Dear Mr. Artstein:

Please be advised that we have been retained by The CIT Group/Equipment Financing,
Inc., as assignee for Insight Financial Corporation ("CIT"), in connection with the above-
referenced lease.

As you know, on or about February 15, 2005, B.E.S.C.R., Inc. ("BESCR") entered into a
lease agreement with CIT for the lease of certain copier equipment collectively referred to as
Savin Digital Copier Equipment. A copy of the master lease agreement, equipment schedule
together with the exhibits, officer's certificate, certificate of acceptance, and notice of
assignment are enclosed herewith for your reference. BESCR is to make 32 monthly payments
in the amount of $5,193.28 to CIT commencing on June 1, 2005. It is our understanding that
BESCR has failed to make any payments to CIT since its last payment in or about April 18,
2007 Pursuant to the Personal Guarantee you signed on or about February 15, 2005, once
BESCR defaulted under the lease, you became immediately obligated to perform all of the
obligations of BESCR, including, without limitation, paying the amounts due under the lease. A
copy of the Personal Guarantee is enclosed herewith.

On behalf of CIT, we hereby demand immediate payment of the past due lease payments
together with the late charges accrued thereon through date of payment If we do not hear from
you within 10 days of your receipt of this correspondence, we shall have no other alternative but
to file suit to recover the outstanding balance in excess of $166,000.00, including unpaid lease
payments, finance charges thereon, plus interest and reimbursement for our client's attorneys'
fees and costs of suit

Very truly yours,

Agata P. Karpowicz

APK:jr
Enclosures
168837 v1

# MASTER LEASE AGREEMENT

CERTIFIED
COPY
MMB
3/6/05

**LESSOR:**      INSIGHT FINANCIAL CORPORATION, a Delaware corporation
1935 Shermer Road, Northbrook, IL 60062

**LESSEE:**      B.E.S.C.R., Inc , an Illinois corporation
11 S LaSalle St., Suite 900, Chicago, IL 60603

**AGREEMENT DATE:**      February 15, 2005

**LEASE AGREEMENT NO:**      993

---

This contract is a Master Lease Agreement The terms of each Equipment Schedule ("Schedule") hereto are subject to any and all conditions and provisions set forth herein at the time of execution of such Schedule as the same may have been amended prior to the execution of such Schedule Each Schedule shall provide a description of Equipment Lease Term, Rental Payment(s), Location of Equipment, Commencement Date, Commencement Expiration Date and such other information as may be required. Each Schedule is enforceable according to the terms and conditions contained therein and in the event of a conflict between the language of the Master Lease Agreement and any Schedule hereto, the language of the Schedule shall prevail in respect to that Schedule. Each Schedule together with the terms and conditions of this Master Lease Agreement incorporated therein is referred to herein as the "Lease" or "Lease Agreement " Lessor, by its acceptance hereof, hereby leases to Lessee and the Lessee hereby leases from Lessor in accordance with the terms and conditions set forth herein and in the applicable Schedule, the Equipment described on the Schedule and in any attachments thereto together with all replacement parts, additions, accessories, alterations and repairs incorporated therein or now or hereafter affixed to such Equipment (the "Equipment")

## 1 LEASE TERM

This Master Lease Agreement shall be effective from the date hereof. As to any particular item of Equipment the term shall continue as stated in the applicable Schedule, from the respective Commencement Date, as, from time to time, Equipment described in any Schedule is accepted by Lessee Said term shall be automatically extended for an additional twelve (12) month period at the monthly lease rate in effect at the end of said term unless and until terminated by either party hereto giving the other not less than one hundred eighty (180) days prior written notice. Acceptance ("Acceptance") shall occur on the following applicable date: (i) in the case of Equipment required by Lessor from a third party vendor which Equipment by its nature does not require installation, the date of delivery of the item of Equipment to Lessee; (ii) in the case of Equipment required by Lessor from a third party Vendor which Equipment by its nature does require installation, the day the Equipment is installed; or (iii) in the case of an item of Equipment which is the subject of a sale and leaseback between Lessor and Lessee the date upon which Lessor purchases such Equipment from Lessee

## 2 PAYMENTS OF RENT

Unless otherwise set forth in the respective Schedule, the following shall apply: The first rental payment shall be due upon the Acceptance of the Equipment by Lessee, and each payment shall cover the lease month or other period commencing on the Commencement Date Each subsequent rental payment shall be due and payable in advance, for the lease period covered by such payment on the first day thereof. In the event Acceptance occurs prior to the Commencement Date, interim rental shall be paid by Lessee in the amount equal to a proration on the daily basis of the Monthly Rent as hereinafter defined, for the period commencing as of the date of Acceptance to the Commencement Date. All rental and other payments by Lessee under this Lease shall be made to Lessor at its address stated above or at such other address as Lessor may designate in writing and if payment shall be made by check such check shall arrive at such address on or before the date the rental payment shall be due Monthly rent payable with respect to each item of Equipment ("Monthly Rent") shall be as set forth for such item in the applicable Schedule. Any and all amounts payable to Lessor hereunder other than Monthly Rent shall be considered and referred to herein as "Supplemental Rent" Monthly Rent, together with Supplemental Rent, shall be referred to herein as "Rent" This Lease provides for a net lease, and the Rent due hereunder from Lessee to Lessor shall be absolute and unconditional and shall not be subject to any abatement, recoupment, defense, claim, counter-claim, reduction, set-off, or any other adjustment of any kind for any reason whatsoever

## 3 ADDITIONAL SUMS PAYABLE BY LESSEE

(a) All transportation, transit insurance and other charges payable for delivery of the Equipment to Lessee, and for installation of the Equipment shall be paid by Lessee

(b) Lessee shall promptly pay all costs, expenses and obligations of every kind and nature incurred in connection with the use, maintenance, servicing, repair or operation of the Equipment which may arise or be payable during the lease term of such Equipment hereunder except as specifically provided herein, and shall keep the Equipment in as good repair condition and working order as when delivered to Lessee hereunder, reasonable wear and tear from the proper use thereof alone excepted, and shall furnish any and all parts mechanisms and devices required to keep the Equipment in such good repair, condition and working order, at the expense of Lessee and in addition will permit the manufacturer to make all free-of-charge engineering changes, all so that the Equipment will remain acceptable to the manufacturer for

maintenance. Without limiting the foregoing, Lessee shall, during the continuance of this Lease, at its own expense make appropriate arrangements for maintenance of each item of Equipment, including without limitation with respect to each item of Equipment entering into and maintaining in force a contract with the manufacturer of the Equipment or other person or entity approved in writing by Lessor covering at least prime shift maintenance

(c) Lessee shall indemnify and hold harmless Lessor against and shall pay all federal, state, county or local taxes fees or other charges, however designated (together with any related interest or penalties not arising from negligence on the part of Lessor), imposed or assessed against or with respect to this Lease Rent hereunder, the Equipment, Lessor or Lessee or payable by Lessor or Lessee with respect to the use, lease, sale, purchase, delivery, possession, sublease or ownership of the Equipment, excepting only (i) taxes on or to the extent measured by the net income of Lessor, franchise taxes and gross receipts taxes in the nature of an income tax; and (ii) sales, use or similar taxes or other amounts paid by Lessor if, and only if, any such taxes or other amounts are included as part of the acquisition cost of any Equipment

## 4 WARRANTIES

(a) Lessor hereby warrants and covenants to Lessee that so long as no Event of Default has occurred under the applicable Schedule hereto. Lessee shall and may quietly have, hold and enjoy the Equipment and every part thereof leased hereunder for the term of this Lease as such term may be extended hereunder, free from disturbance by Lessor or its agents, employees, successors or assigns, or by anyone (whether the holder of a lien or otherwise) claiming solely by, through or under Lessor LESSEE HAS EXCLUSIVELY SELECTED AND CHOSEN THE TYPE, DESIGN, CONFIGURATION, SPECIFICATION AND QUALITY OF THE EQUIPMENT HEREIN LEASED AND THE VENDOR DEALER, SELLER, MANUFACTURER OR SUPPLIER THEREOF (the "Seller"). LESSEE LEASES, HIRES AND RENTS THE EQUIPMENT AS IS, WHERE IS" LESSOR HAS NOT MADE AND MAKES NO, AND HEREBY EXPRESSLY DISCLAIMS ANY OTHER, EXPRESS OR IMPLIED WARRANTY WHATSOEVER HEREUNDER, INCLUDING ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR ANY PURPOSE, OR OTHERWISE, REGARDING THE EQUIPMENT OR ANY PART OR THE DESIGN OR CONDITION THEREOF Subject to the provisions of Section 10 hereof, Lessor hereby transfers and assigns to Lessee during the term of this Lease all of its right, title and interest in any express or implied warranties and covenants of any Equipment manufacturer or vendor which are assignable by Lessor Lessor shall not be liable for any loss or damage suffered by Lessee or by any other person or entity, direct or indirect or consequential, including, but not limited to, business interruption and injury to persons or property, resulting from the non-delivery or late delivery, installation, failure or faulty operation, condition, suitability or use of the Equipment leased by Lessee hereunder, or for any failure of any representation, warranties or covenants made by the Seller. Any claims of Lessee, with respect to claims discussed in the preceding sentences shall not be made against Lessor but shall be made: if at all solely and exclusively against Seller, or any persons other than the Lessor

(b) Lessee, at the time of execution of this Lease Agreement and any Schedule hereto, hereby warrants and represents to Lessor Secured Party, as hereinafter defined, and their respective successors and assigns: (i) that execution, delivery and performance of this Lease Agreement have been duly authorized by all necessary corporate action on its part and are not in conflict with its charter or bylaws or with or constitute a breach of or default under any indenture, contract or agreement by which it is bound, or with any statute, judgment, decree rule or regulation binding upon it; (ii) that no consent or approval of any trustee or holder of any indebtedness or obligation, and no consent or approval of, or taking of any other action with respect to, any governmental authority, is necessary for execution, delivery or performance of this Lease Agreement (iii) that this Lease Agreement is legal, valid, binding, and enforceable against the Lessee in accordance with its terms, subject to enforcement limitations imposed by rules of equity or by bankruptcy or similar laws; (iv) Lessee is an Illinois corporation validly existing and in good standing under the laws of the jurisdiction of its incorporation and the jurisdiction(s) where the Equipment will be located and has adequate corporate power to enter into and perform this Lease; (v) Lessee's organizational number is 38657875; and (vi) there are no actions, suits or proceedings pending or to the knowledge of Lessee threatened against or affecting Lessee in any court or before any governmental commission, board or authority which, if adversely determined, will have a materially adverse effect on the ability of Lessee to perform its obligations under this Lease

INITIAL: Lessee _____        Lessor MMB

I

2

## 5. POSSESSION, USE AND MAINTENANCE OF THE EQUIPMENT

(a) The Equipment shall be kept by Lessee (1) subject to inspection by Lessor at reasonable times and manner. (2) at Lessee's address, as stated on each Schedule hereto, which Equipment shall not be relocated without prior written consent of Lessor, which consent shall not be unreasonably withheld. (3) free of all security interests of any kind whatever, liens, encumbrances and other claims, except (1) those of persons claiming solely against Lessor but not Lessee on account of obligations which Lessee is not required by this Lease to discharge (ii) liens of current taxes not delinquent (except liens for taxes which are being contested by Lessee as provided in Section 3 hereof) (4) marked with the manufacturer's identification marks or numbers and, if requested by Lessor or Secured Party conspicuously labeled with labels supplied by Lessor or Secured Party to disclose Lessor's and any Secured Party's interest in the Equipment, and (5) in good and efficient working order, condition and repair, reasonable wear and tear excepted and acceptable for maintenance under the manufacturer's maintenance agreement at the expiration of the Lease Term. If such agreement is then generally available for the item of Equipment Lessee will within ten (10) working days of receiving notice thereof, promptly notify Lessor in writing of any mortgage, pledge, lien, attachment, charge, encumbrance or right of others which has arisen with respect to the Equipment

(b) Lessee shall use the Equipment with due care to prevent injury thereto, and to any person or property, and in conformity will all applicable laws, ordinances, rules, regulations and other requirements of any insurer or governmental body, and with all requirements of the manufacturer with respect to the use, maintenance and operation of the Equipment. Except as provided below. Lessee shall not modify any Equipment without the prior written consent of Lessor, which consent shall not be unreasonably withheld. Lessee shall be entitled, from time to time during the term of this Lease without written consent of Lessor, to acquire and install at Lessee's expense such additional features, options or modifications as may be available at such time which (i) shall be of the type which are readily removable without causing material damage to the Equipment; (ii) will not impair the originally intended function or use of the Equipment in which they are installed; and (iii) will not interfere with Lessee's ability to obtain and maintain the maintenance contract required by Section 3 hereof Any such additional feature, option or modification shall become the property of Lessor. It is the intention and understanding of both Lessor and Lessee that the Equipment shall be and at all times remain separately identifiable personal property. Lessee shall not permit any Equipment to be installed in, or used, stored or maintained with, any personal property (except other Equipment leased hereunder) in such manner or under such circumstances that such Equipment might be or become an accession to or confused with such other personal property. Lessee shall not permit any Equipment to be installed in or used, stored or maintained with any real property in such a manner or under such circumstances that any person might acquire any rights in such Equipment paramount to the rights of Lessor or Secured Party by reason of such Equipment being deemed to be real property or a fixture thereon

## 6. RISK OF LOSS

(a) Lessee assumes and shall bear the entire risk of partial or complete loss, theft, damage, destruction, condemnation, requisition, taking by eminent domain or other interruption or termination of use of the Equipment from any cause whatsoever whether or not insured against, from the date of delivery of the Equipment until the Equipment is returned to and received by Lessor. Except as otherwise expressly provided herein, no such loss, theft, damage, destruction, condemnation, requisition, taking by eminent domain or other interruption or termination of use of the Equipment, and no delay, deficiency or absence of insurance proceeds, and no unavailability, delay or failure of supplies, parts, mechanisms, devices or service for the Equipment or any failure of the Equipment to function for any cause, shall relieve Lessee of the obligation to pay Rent hereunder. Except as otherwise expressly provided in Section 6(c) hereof, this Lease shall not terminate, nor shall the respective obligations of the Lessor or the Lessee be affected, by reason of any defect in or Total Casualty (as defined in this Section 6) to or obsolescence of the Equipment or any item thereof from whatever cause, or the interference with the use thereof by any private person, corporation or governmental authority, or any other disability of the Lessee to use the Equipment or war, act of God, or governmental regulations, any present or future law or regulation to the contrary notwithstanding. Lessee shall promptly notify Lessor in writing of the occurrence of any of the above events and all pertinent details connected therewith. Except during any period when an Event of Default shall have occurred Lessee shall be entitled to the proceeds of any claim or right of Lessor or Lessee against any third party on account of any of the foregoing events and Lessee shall be subrogated to the Lessor's right of recovery therefor against any third party. Lessor shall execute and deliver from time to time such instruments and take such other action as may be necessary or appropriate more fully to vest in Lessee such proceeds or effect such subrogation provided, however that all costs and expenses including court costs and attorneys' fees incurred in connection with enforcing or realizing upon any such claim or right to proceeds or obtaining enforcement of or realizing upon such right of subrogation, shall be paid by Lessee

(b) In the event any item of Equipment is physically damaged to a material extent by any occurrence whatsoever Lessee shall immediately notify Lessor of such damage and, unless Lessor shall determine that Section 6(c) hereof is applicable to such damage, Lessee, at Lessee's expense, shall promptly cause such item of Equipment to be returned to the condition described in Sections 3 and 5 hereof.

(c) In the event any item of Equipment shall be lost, stolen, destroyed, damaged beyond repair or permanently rendered unfit for use for any reason whatsoever or shall be subjected to a requisition, taking by eminent domain or other interruption or termination of use for a stated period which exceeds the term of this Lease (any such occurrence being referred to as "Total Casualty") Lessee shall promptly notify Lessor and either: (i) at its expense, obtain replacement equipment of identical make, model, configuration, capacity and condition, having utility and remaining useful life at least equal to that of each such replaced item of Equipment and, in which case Lessee shall immediately convey to Lessor good title for all such replacement equipment free of all liens, claims or encumbrances, and such replacement

equipment shall be substituted for each such item of Equipment replaced hereunder; or (ii) pay to Lessor, on the next Monthly Rent payment date for such item of Equipment following such Total Casualty, an amount equal to the Casualty Value (specified in the applicable Schedule) of such item of Equipment on such Monthly Rent payment date. If Lessee elects to pay the Casualty Value rather than replace the Equipment, after the payment of such Casualty Value and all Monthly Rent due and owing for the period prior to the date of the Total Casualty with respect to such item of Equipment. Lessee's obligation to pay further Monthly Rent for such item of Equipment shall cease, but Lessee's obligation to pay Rent for all other items of Equipment, shall remain unchanged. So long as no Event of Default shall have occurred and provided Lessee shall have made the Casualty Value payment identified above, Lessor shall pay Lessee any insurance proceeds received by Lessor by reason of such Total Casualty up to the amount of the Casualty Value paid by the Lessee

## 7. INSURANCE

Lessee shall at all times during the term of this Lease and until the Equipment has been returned to Lessor as provided below at its own expense, maintain physical damage insurance in an amount sufficient to cover the replacement of the Equipment but in no event less than the Casualty Value thereof, and liability and property damage insurance covering the Equipment (including Lessee's contractual liability under Section 9 hereof), in such amount, and with such companies and such endorsements and covering such hazards as are in general usage by companies owning or operating similar property and engaged in a business similar to Lessee's in order to adequately protect the parties hereto. All insurance so maintained shall provide for a thirty-day prior written notice to Lessor and its assigns of any cancellation or reduction of coverages and an option in Lessor or its assignee to prevent cancellation by payment of premiums, shall cover both the interest of the Lessor and any assigns of which the Lessee has notice and of the Lessee in the Equipment and shall provide that all insurance proceeds shall be payable to the Lessee. Lessor and any such assignee as their respective interests may appear at the time of any such payment. Lessor and any such assignee shall be named as additional insureds on any public liability insurance policies so maintained. Lessee shall furnish to Lessor satisfactory evidence of any insurance so maintained no later than the date of delivery of each item of Equipment and once annually upon Lessor's request, during the term hereof. Lessee's above obligation shall commence on the initial date of delivery of the Equipment and shall continue until the Lease term hereof expires and the Equipment is returned to Lessor. Lessee shall cooperate and, to the extent possible, cause others to cooperate with Lessor and all companies providing any insurance to Lessee or Lessor or both with respect to the Equipment in collection or in enforcement of any such insurance. By this Section 7, Lessor does not modify or limit any provision of this Lease relating to disclaimer of warranties and liability, or indemnity

## 8. RETURN OF EQUIPMENT

Upon the expiration or earlier termination of the Lease term, Lessee shall return the Equipment to Lessor in the same condition as received, reasonable wear and tear excepted and in the condition required by Sections 3 and 5 hereof, and shall permit the Equipment to be (a) inspected by agent(s) of the respective manufacturer(s), if Lessor so requests, (b) repaired if necessary, so as to place the Equipment in the foregoing condition, (c) secured for shipping, and (d) shipped by truck or other normal ground transportation to such address as Lessor may designate. Lessor shall pay all expenses arising from the above clause (a) of this Section 8, and Lessee shall pay all expenses arising from the above clauses (b), (c), and (d) of this Section 8 provided that shipping charges payable by Lessee under such clause (d) shall be limited to an amount equal to the cost of shipping the Equipment to any location within the Continental United States

## 9. DISCLAIMER OF LIABILITY AND INDEMNITY

Lessor shall not be liable for, and Lessee agrees to indemnify and hold Lessor, Secured Party, and their respective successors and assigns harmless against any loss, claim, action, suit, demand proceeding, liability, penalty, cost, damage, obligation, lien or expense of any kind on account of personal injury, property damage or otherwise, including but not limited to any matter arising under strict liability in tort, imposed on or incurred by or asserted against Lessor or Secured Party or its or their successors or assigns, including without limitation attorneys' fees incurred on account of any of the foregoing, in any way relating to this Lease or any document contemplated hereby, or in any way relating to the selection manufacture purchase acceptance, ownership, delivery, installation, lease, sublease, possession, use, operation maintenance, condition, return or storage of any item of Equipment, or any accident in connection therewith, or arising by operation of law as a consequence of any of the foregoing. The provisions of this Section 9 shall survive any termination of this Lease, provided, however, that the Lessee shall not be required to indemnify the Lessor for (a) any claim in respect of any item of Equipment arising from acts or events which occur after possession of such item has been redelivered to the Lessor (b) any claim resulting from the willful misconduct or negligence of the Lessor. Lessee shall give Lessor prompt written notice of any matter hereby indemnified against and agrees that unless directed to the contrary by written notice by the indemnified party, Lessee shall assume full responsibility for the defense thereof on behalf of such party

## 10. EVENTS OF DEFAULT

(a) Each of the following shall constitute an Event of Default hereunder: (i) default in the payment of any Rent hereunder and continuance thereof for ten days after notice by Lessor to Lessee of said default; (ii) failure by Lessee to make any other payment required by this Lease, or to perform any other of Lessee's agreements set forth in this Lease within 10 days after notice thereof is given by Lessor to Lessee; (iii) Lessee becomes insolvent or admits in writing its inability to pay its debts as they mature or applies for consents to or acquiesces in the

INITIAL: Lessee _[signature]_                              Lessor _MMB_

appointment of a trustee or a receiver or similar officer for it or any of its property, or, in the absence of such application, consent or acquiescence, a trustee or receiver or similar officer is appointed for Lessee or for a substantial part of its property and is not discharged within 60 days or any bankruptcy reorganization, debt dissolution or other proceeding under any bankruptcy or insolvency law, or any dissolution or liquidation proceeding, is instituted by or against Lessee, and if instituted against Lessee is consented to or acquiesced in by Lessee or remains for 60 days unstayed; (iv) Lessee shall make an assignment for the benefit of creditors; (v) any warranty representation statement or report made by Lessee in this Lease or in any document or certificate furnished in connection with this Lease or any financing obtained in connection therewith proves to have been untrue or incorrect in any material respect; or (vi) a material adverse change in the financial position of Lessee or Co-Lessee has occurred between the time the Equipment Schedule is approved by Lessor and receipt of the signed and dated Certificate of Acceptance

(b)  Upon the occurrence of an Event of Default and so long as the same is continuing, Lessor may at its option declare the applicable Schedule(s) to be in default by notice to Lessee and thereafter exercise one or more of the following remedies, as Lessor in its sole discretion lawfully elects:

(1)  Proceed by court action, either at law or in equity to enforce performance by Lessee of this Lease or to recover damages for the breach thereof.

(2)  By notice terminate the applicable Schedule whereupon all rights of Lessee in the Equipment subject to said Schedule will absolutely cease but Lessee will remain liable as hereinafter provided; and thereupon Lessee if so requested will at its expense promptly return the Equipment to Lessor at the place designated by Lessor within the Continental United States and in the condition required pursuant to the terms hereof, or Lessor at its option, may enter the premises where the Equipment is located and take immediate possession of and remove the same in a lawful manner; Lessee will, without further demand, forthwith pay Lessor an amount equal to any past due Rent which was due and payable for all periods up to and including the Monthly Rent payment date following the date on which Lessor has declared the Schedule to be in default, plus  as liquidated damages for loss of a bargain and not as a penalty, an amount ("Default Value") equal to the present value of (i) the Monthly Rent which would otherwise have accrued from such Monthly Rent payment date to the end of the term of the applicable Schedule ("Rental Amount"), plus (ii) all other amounts which absent a default would have been payable by Lessee hereunder and under the applicable Schedule(s) for the full term thereof, including, if Lessee is permitted or required pursuant to any applicable Schedule to purchase the Equipment or pay any deficiency the purchase price or deficiency amount provided therein.  Such present value shall be computed utilizing a rate of 3% per annum. Following the return of the Equipment to Lessor pursuant to this clause (2), Lessor will proceed to sell or re-lease the Equipment in a commercially reasonable manner  The proceeds of such sale or re-lease will be applied by Lessor (A) first, to pay all costs and expenses, including reasonable legal fees and disbursements, incurred by Lessor as a result of the default and the exercise of its remedies with respect thereto, (B) second, to pay Lessor an amount equal to any unpaid past due Rent due and payable plus the Default Value, to the extent not previously paid by Lessee, and (C) third, to reimburse Lessee for the portion of the Default Value attributable to Rental Amount to the extent (i) the full Default Value has been previously paid as liquidated damages and (ii) such proceeds are attributable or allocated to the period commencing on the Monthly Rent payment date following the date on which the Lessor has declared the Schedule to be in default and ending on the date the applicable Schedule would have terminated if Lessee had not defaulted.  Any surplus remaining thereafter will be retained by Lessor. To the extent Lessee has not paid Lessor the amounts specified in this clause (2), Lessee will forthwith pay such amounts to Lessor plus interest at the rate provided for in Section 14 (a) of this Lease Agreement, but not more than the highest lawful rate under applicable law  on such amounts computed from the date the Default Value is payable hereunder until such amounts are paid.

(3)  If Lessee default continues ten (10) days after written or telephonic notice of such default from Lessor Lessor may at its option, render the system unusable until Lessor receives payment in full

(c)  In addition, Lessee shall be liable for any damages and expenses which Lessor shall have sustained by reason of the breach of any covenant, representation or warranty of this Lease other than for the payment of the Monthly Rent and shall be liable for any and all unpaid amounts due hereunder before, during or after the exercise of any of the foregoing remedies and for all reasonable attorneys' fees and other costs and expenses incurred by reason of the occurrence of any Event of Default or the exercise of Lessor's remedies with respect thereto, including all costs and expenses incurred in connection with the return of any Item of Equipment. Upon the occurrence and during the continuance of an Event of Default hereunder Lessor shall be exclusively entitled to enforce the warranties assigned to Lessee under Section 4 hereof, notwithstanding such Event of Default.  No remedy referred to in this Section is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lessor at law or in equity

(d)  A cancellation or termination hereunder shall occur only upon written notice by Lessor to Lessee or repossession as provided above  and only with respect to such items of Equipment as Lessor specifically elects to cancel or terminate by such notice or repossession. Except as to any such item of Equipment with respect to which there is a cancellation or termination  this Lease shall remain in full force and effect and Lessee shall be and remain liable for the full performance of all its obligations

11  SUBLEASE AND ASSIGNMENT

(a)  LESSEE SHALL NOT  WITHOUT THE PRIOR  WRITTEN CONSENT OF LESSOR

3

ANY OTHER WAY TRANSFER THIS LEASE, THE EQUIPMENT OR ANY PART THEREOF, OR ANY INTEREST THEREIN, OR (ii) PERMIT THE EQUIPMENT OR ANY PART THEREOF TO BE USED BY ANYONE OTHER THAN LESSEE OR LESSEE'S EMPLOYEES; excepting only that so long as no Event of Default hereunder has occurred Lessee may sublease the Equipment provided that the following are fulfilled as conditions precedent to Lessee's having authority hereunder so to sublease: (1) the sublease shall not contain any provisions which would or the performance of which would  with notice or lapse of time or both or either  result in any default under this Lease; (2) the sublease shall contain a provision expressly subordinating the sublease to Lessor's rights under this Lease, a provision by which the sublessee agrees, jointly and severally with Lessee, to be bound by and perform Lessee's obligations under this Lease, and a provision prohibiting any transfer and any further subleasing except on conditions identical to the provisions of this Section 11; (3) such sublease shall be assigned to Lessor as security for the performance of Lessee's obligations under this Lease  under an assignment (including a consent of the sublessee) in form and substance satisfactory to Lessor; (4) such subleasing shall not in any way adversely affect any federal, state or other tax benefits of the Lessor or Secured Party; (5) all such Uniform Commercial Code financing statements and other instruments necessary or appropriate to perfect or record Lessor's or Secured Party's interest in the sublease the payments due thereunder and the Equipment shall have been duly executed and filed or recorded; (6) the identity of the sublessee and form of sublease shall have been approved by Lessor and Secured Party, which approval shall not be unreasonably withheld  No such permitted sublease shall relieve Lessee of any of its obligations hereunder  Any assignment sublease pledge hypothecation or transfer for which consent is required hereby and which is made without such consent shall be void  The consent of Lessor or Secured Party to any of the foregoing applies only to the specific instance in which given  and shall not be deemed a consent to any subsequent like act by Lessee or any other person  Subject to the foregoing  this Lease inures to the benefit of, and is binding upon the successors and assigns of the parties hereto  Lessee's interest herein shall not be assigned by operation of law  Lessor and any direct or remote assignee of any right  title and interest of Lessor hereunder shall have the right at any time or from time to time to assign to any third party all or any part of its right  title and interest in and to this Lease or the Equipment  Lessee acknowledges that any assignment or transfer by Lessor permitted under this Lease shall not materially change Lessee's duties or obligations under this Lease or materially increase the burdens or risks imposed upon Lessee

(b)  Lessor may obtain financing through financial institutions and secure such financial institutions ("Secured Party") by granting a security interest in or lien on all or any part of Lessor's interest in the Equipment, the applicable Schedule, any collateral therefor and amounts payable by Lessee under the applicable Schedule  Such financing may include the purchase of the Equipment by the Secured Party  In the event of such financing (1) the lien instrument or security agreement will specifically provide that it is subject to Lessee's rights as herein provided; (2) such assignment of the applicable Schedule or any interest herein will not relieve Lessor from its obligations hereunder or be construed to be an assumption by Secured Party of such obligations (but Secured Party may perform as is option, some or all of Lessor's obligations); (3) upon appropriate notice and upon request by Secured Party, Lessee will thereafter pay directly to Secured Party all Rent and other amounts payable hereunder; and (4) Lessee's obligations hereunder including, without limitation, its obligation to pay Rent and other amounts hereunder, shall be absolute and unconditional and shall not be subject to any reduction abatement defense set-off, counterclaim or recoupment for any reason whatsoever

12  PROGRESS PAYMENTS

If progress payments are approved by Lessor not less than 15 days prior to the due date thereof, Lessee shall deliver to Lessor on the form provided by Lessor Lessee's authorization to make a progress payment  Provided on such due date no Event of Default has occurred and be continuing hereunder or under the Master Lease Agreement, Lessor shall make the authorized progress payment set forth to the manufacturer(s) or supplier(s) specified on such authorization in respect of such progress payments required by Lessor  Lessee agrees as follows:

(i)  To pay the Lessor or Lessor's Assignee a daily rental amount equal to the product of the aggregate amount of progress payments actually made by Lessor multiplied by the monthly rental payment as set forth in the Equipment Schedule divided by thirty (30) from the date such progress payments are in fact made  Lessee agrees to pay the total daily rental amount through the final Acceptance Date and thereafter. Lessee will pay the Periodic Rental Payment as and when due under the Lease  Lessee's daily rental payments hereunder shall be made by Lessee to Lessor within ten (10) days of Lessee's receipt of a written invoice therefor (but not more than one such invoice shall be made within any given period of thirty (30) days) accompanied by evidence reasonably satisfactory to Lessor indicating the amount and date of payment by Lessor of the progress payments in respect of which such payment is so requested;

(ii)  Lessee acknowledges and understands that Lessor may elect to borrow all or any portion of the progress payments required by Lessor under this provision and that as security therefor Lessor may assign this Equipment Schedule, including, but not limited to, Lessor's rights hereunder  to the lender of such amounts so borrowed  Lessee agrees  without notice to Lessee, Lessor may make such assignment in connection with any such borrowing and for the protection and benefit of Lessor and any such assignee  the rights of Lessor or its assignee in and to such payments shall be absolute and unconditional in accordance with Section 2 of the Master Lease Agreement

INITIAL: Lessee _EME_            Lessor _MMB_

(iii) In the event Lessee does not deliver Lessee's Equipment Acceptance Certificate for the Equipment to Lessor on or before 3 months from the date such progress payment is made hereunder (unless such period is extended by mutual agreement of Lessor and Lessee) Lessee will pay to Lessor or Lessor's assignee upon demand, an amount equal to the sum of all progress payments theretofore made by Lessor pursuant to this authorization together with unpaid daily rental amounts thereon

13. LESSOR'S TAX BENEFITS

Lessee acknowledges that Lessor shall be entitled to claim all tax benefits, credits and deductions related to the Equipment for federal income tax purposes including, without limitation: (i) deductions on Lessor's cost of the Equipment for each of its tax years during the term of the Lease under any method of depreciation or other cost recovery formula permitted by the Internal Revenue Code of 1986, as amended (hereinafter called the "Code") and (ii) interest deductions as permitted by the Code on the aggregate interest paid to any Assignee (hereinafter collectively "Lessor's Tax Benefits") Lessee agrees to take no action inconsistent (including voluntary substitution of Equipment) with the foregoing or which would result in the loss, disallowance, recapture or unavailability to Lessor of Lessor's Tax Benefits. Lessee hereby indemnifies Lessor and its Assignee(s) from and against (a) any loss, disallowance, unavailability or recapture of Lessor's Tax Benefits resulting from any action or failure to act of Lessee including replacement of the Equipment plus (b) all interest penalties costs (including attorney fees) or additions to tax resulting from such loss disallowance unavailability or recapture

14 GENERAL

(a) Any provision herein that Lessee shall take any action shall require Lessee to do so at its sole cost and expense Lessee shall pay Lessor interest at the maximum rate permitted by applicable law but in no event in excess of a rate of 1-1/2% per month, on any amount past due from the date it is required to make any payment of Rent or other amount hereunder Such interest shall be payable with respect to the period commencing on the date such payment is due through the date such payment is actually made

(b) Any notice hereunder shall be in writing and shall be deemed to be given when delivered, including but not limited to overnight courier or electronic transmission or, if mailed on the third day after mailing by registered or certified mail postage prepaid and addressed to Lessee or Lessor at its respective address shown on the first page hereof, or to either party at such other address it has designated as its address for purposes of notice hereunder

(c) Promptly upon Lessor's written request, Lessee agrees to execute, acknowledge and deliver such instruments, and to take such other action as may reasonably be necessary in the opinion of Lessor, or Lessor's counsel to protect Lessor's or any Secured Party's interests in the Equipment, this Lease and any Rent including, but without limitation, the obtaining and execution of landlord and mortgage waivers and Uniform Commercial Code financing statements in recordable form incumbency certificates and, at Lessee's expense, opinion of Lessee's legal counsel regarding the matters contained in Section 4(b) hereof. Upon Lessor's written request, Lessee also agrees to provide quarterly financial statements and annual audited financial statements in the form previously furnished to Lessor within 120 days of the end of each quarter and Lessee's fiscal year and Lessor may file or record a copy of this Lease, as a financing statement or for any other purpose Lessee agrees to pay Lessor a transaction fee of $350 per Schedule for filing fees in connection with Uniform Commercial Code financing statements Lessee hereby authorizes Lessor to file UCC financing statements in recordable form on its behalf with respect to the Equipment It is the intention of the parties that the Lease constitutes a true lease In the event that the Lease is not held to be a true lease Lessee hereby grants to Lessor a lien on and security interest in the Equipment and all proceeds thereof to secure the payment and performance of Lessee's obligations to Lessor under the Lease

(d) This Lease Agreement is and is intended to be, a lease, and Lessee does not acquire hereby any right title or interest in or to the Equipment except the right to use the same as Lessee under the terms hereof Both Lessor and Lessee agree to characterize this Lease Agreement as a lease for Federal income tax purposes

(e) This Master Lease Agreement and all Schedules duly executed and attached hereto from time to time constitute the entire agreement between the parties hereto with respect to the Equipment and any change or modification hereto and any related agreement must be in writing and signed by the parties hereto There shall be a single executed original of this Master Lease

Agreement which shall be marked and for the purposes hereof shall be referred to as the "Original"; all other counterparts shall be marked "Duplicate " With respect to any Schedule to this Master Lease Agreement executed by the parties hereto the following shall apply: (i) each such Schedule shall constitute a new lease between the parties; (ii) there shall be a single executed original of each such Schedule marked "Original"; (iii) all other counterparts of such Schedule shall be marked "Duplicate"; and (iv) to the extent, if any, that any such Schedule constitutes chattel paper (as such term is defined in the Uniform Commercial Code as in effect in any applicable jurisdiction) no security interest therein may be created through the transfer or possession of the Original of this Master Lease Agreement or any Duplicate of such a Schedule but such security interest may be created by the transfer or possession of the Original of such Schedule together with a certified copy of this Master Lease Agreement

(f) Lessor is not and shall not be deemed to be, an agent, employee or representative of Lessee or any manufacturer of any Equipment. for any purpose whatsoever

(g) If this Lease or any provision hereof shall be deemed invalid illegal or unenforceable in any respect or in any jurisdiction. the validity, legality and enforceability of this Lease in other respects and in other jurisdictions shall not be in any way impaired or affected thereby No covenant or condition of this Lease can be waived except by the written consent of the party to be bound by such waiver No waiver by Lessor of any Event of Default hereunder shall in any way be, or be construed to be, a waiver of any future or subsequent Event of Default Forbearance or indulgence by Lessor or Lessee in any regard whatsoever shall not constitute a waiver of the covenant or condition to be performed by the other party to which such forbearance or indulgence may apply and until complete performance by such party of such covenant or condition. Lessor or Lessee at the case may be shall be entitled to invoke any remedy available to such party under this Lease or by law or in equity or otherwise despite said forbearance or indulgence. This Lease shall be governed by the laws of the State of Illinois LESSEE WAIVES TRIAL BY JURY AND SUBMITS TO THE JURISDICTION OF AND CONSENTS TO VENUE IN THE FEDERAL DISTRICT COURT OR ANY STATE COURT LOCATED WITHIN COOK COUNTY IN THE STATE OF ILLINOIS AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM

(h) Should Lessee fail to make any payment or to do any act as herein provided after notice to Lessee which is reasonable under the circumstances. Lessor shall have the right, but not the obligation and without releasing Lessee from any obligation hereunder or waiving Lessor's right to declare a default hereunder to make or do the same, and to pay, purchase, contest or compromise any encumbrance, charge or lien which in the reasonable judgment of Lessor appears to materially and adversely affect Lessor's interest in the Equipment and in exercising any such rights. Lessor may incur any liability and expend whatever amount in its reasonable discretion it may deem necessary therefor All sums so incurred or expended by Lessor shall be without demand immediately due and payable by Lessee

(i) Whenever the context of this Lease requires, the singular number includes the plural Section headings contained herein are solely for the convenience of the parties and are not an aid in the interpretation of the instrument Although this Master Lease Agreement is dated as of the date first above written for convenience, the Agreement Date and the Commencement Date shall be as specified in the applicable Schedule

(j) This Master Lease Agreement may be canceled by Lessee in writing, provided all outstanding Schedules hereunder have either expired or have been terminated with respect to their individual termination provisions and that no Events of Default have occurred under any Schedules, and Lessee has fulfilled all obligations under all such Schedules

(k) This agreement signed by both parties constitutes the final written expression of all the terms of this agreement and is a complete and exclusive statement of those terms and supersedes all negotiations or discussions which may have been previously conducted No other oral or written agreement or understanding of any nature concerning the subject matter of this agreement has been made or entered into This agreement may be modified or rescinded only by a writing signed both the parties

(l) Lessee hereby agrees that it shall promptly notify Lessor if Lessee changes its name or state of registration

INSIGHT FINANCIAL CORPORATION
LESSOR

By: _Mary A M Baum_

Title: _Assistant Secretary_

B.E.S.C.R., INC.
LESSEE

By: _Elizabeth M Schwartz_

Title: _Vice President_

## EQUIPMENT SCHEDULE NUMBER 993-01

LESSEE: B.E.S.C.R , INC.

MASTER LEASE AGREEMENT DATE:  February 15, 2005

MASTER LEASE AGREEMENT NUMBER: 993

This Equipment Schedule is issued pursuant to the Master Lease Agreement identified above.  All of the terms and conditions of the Master Lease Agreement are hereby incorporated herein and made a part hereof as if such terms and conditions were set forth in this Equipment Schedule  This Equipment Schedule, together with the terms and conditions as incorporated herein, constitutes a separately enforceable lease agreement with respect to the Equipment.

Lessee acknowledges that any assignment or transfer permitted under this Lease shall not materially change Lessee's duties or obligations under this Lease or materially increase the burdens or risks imposed upon Lessee

EQUIPMENT SCHEDULE AGREEMENT DATE:  February 15, 2005

EQUIPMENT SCHEDULE COMMENCEMENT DATE:   First day of the month following acceptance of Equipment.

RATE ADJUSTMENT:  The Lease Rate Factor ("LRF") will be adjusted upward in direct proportion to increases in 3 year Treasury Notes as listed in the *Federal Reserve Statistical Release* on the Acceptance date as compared to February 15, 2005

EQUIPMENT:  Savin Digital Copier Equipment per Exhibit A to Equipment Schedule No. 01.

LEASE TERM AND RENTAL PAYMENTS:  Term 36 months, payable monthly on the first day of each month with the last month's rental payment payable in advance.  The amount of each payment is $5,193.28.

REDOCUMENTATION:   Upon final acceptance, Lessee and Lessor agree to redocument this Equipment Schedule as necessary to reflect any changes to the items of Equipment, the Equipment Cost and the rent amount.

CONTINGENCIES: This Lease is contingent upon the following:  Lessor's receipt of a personal guaranty each from Elizabeth Eastwood and Steven Artstein covering Lessee's obligations under the Lease, in a from approved by Lessor.

OPTIONS AT END OF LEASE TERM:  Subject to the provisions of the Master Lease Agreement and provided there has been no Event of Default, at the end of their lease term, Lessee must purchase the Equipment for the sum of $101.00 and other good and valuable consideration on an "AS-IS/WHERE-IS" basis

LOCATION OF EQUIPMENT:  700 S. Flower St., Suite 1050, Los Angeles, CA  90017

ADDITIONAL PROVISIONS TO EQUIPMENT SCHEDULE:      Casualty Values.  . . . . .  . . . . .   Exhibit B

INSIGHT FINANCIAL CORPORATION
(Lessor)

By: _____

Title: _____

B.E.S.C.R., INC.
(Lessee)

By: _____

Title: _____

EXHIBIT A TO EQUIPMENT SCHEDULE NO. 993-01
EQUIPMENT/LOCATION

LESSEE: B.E.S.C.R., INC.

AGREEMENT DATE:  February 15, 2005

EQUIPMENT LOCATION:    700 S. Flower St., Suite 1050, Los Angeles, CA  90017

EQUIPMENT:        Savin Digital Copier Equipment, consisting of the following:

| QUANTITY | DESCRIPTION |
|---|---|
| 1 | SAVIN 25105 DIGITAL COPIER          SERIAL NUMBER H3721100008 |
| 1 | |
| 1 | SAVIN 2105 FINISHER |
| 1 | SAVIN 2585/25105 2 HOLE PUNCH KIT |
| 1 | SAVIN 2105 LCT |
| 1 | SAVIN 2085/2105 PRINT CONTROLLER BOARD TYPE 850 |
| 1 | SAVIN 2070 NIC CARD |
| 1 | SAVIN 256MB MEMORY |
| 1 | SAVIN COPY CONNECTOR KIT TYPE 850 |
| 1 | KODAK ADA AHA 29160 68 PIN ULTRA SCSI CARD |
| 1 | KODAK SC3520D PRODUCTION SCANNER |
| 1 | KODAK 6 FT 68 PIN SCSI CABLE |
| 1 | PC BASED FILE SERVER, 40X CDRW, RAID CONTROLLER, 2X 120GBHD, FLAT PANEL MONITOR |
| 1 | DOCULEX PDF CAPTURE SOFTWARE |
| 1 | ADOBE ACROBAT (1 USER LICENSE) |
| 1 | RICOH/ SAVIN INSTALLATION & SETUP |
| 1 | SAVIN 25105 START-UP KIT |
| 2 | DOCULEX PDF CAPTURE FULL-DAY TRAINING |

This Exhibit is hereby attached to and made a part of the Equipment Schedule No  01 dated February 15, 2005 to Master Lease Agreement No  993 dated February 15, 2005 between INSIGHT FINANCIAL CORPORATION, as Lessor and B.E.S.C R , Inc., as Lessee

EXHIBIT B
TO
EQUIPMENT SCHEDULE NO. 01
DATED FEBRUARY 15, 2005
To
MASTER LEASE AGREEMENT NO. 993
DATED FEBRUARY 15, 2005
BETWEEN
INSIGHT FINANCIAL CORPORATION (Lessor)
AND
B.E.S.C.R., INC. (Lessee)

CASUALTY VALUES

The Casualty Value of the Equipment covered by the Master Lease Agreement identified above (hereinafter called the Agreement), as of any date, shall be the amount indicated below opposite the period of time in which such date occurs. Values for those periods between the ones indicated below can be calculated through interpolation of nearest values

| Months Expired After Equipment Schedule Commencement Date | Casualty Value |
|---|---|
| 0 | $176,000.00 |
| 12 | $160,496.00 |
| 24 | $142,704.00 |
| 36 | $122,304.00 |

Following payment of the Casualty Value, the Lessor and the Lessee shall each make reasonable efforts to obtain bids for the purchase of any existing Equipment suffering such Loss. Such Equipment shall be sold for the highest cash offer then available, or if higher, other offer acceptable to Lessor and Lessee. Upon such sale, the Lessee shall be refunded of the proceeds of the sale less the actual expenses incurred by Lessor in making the sale, including, without limitation, storage, insurance, advertising and sales taxes, but such refund shall not be in excess of the Casualty Value previously paid.

Following payment of the Casualty Value, the Lessee shall be entitled to the proceeds of any insurance covering the Equipment suffering such a total Casualty up to an amount not in excess of the Casualty Value previously paid, but in no event shall aggregate of amounts refunded to or received by Lessee pursuant to this Exhibit B exceed the Casualty Value.

This Exhibit is hereby attached to and made a part of the Equipment Schedule of the Master Lease Agreement bearing the date as set forth above, between INSIGHT FINANCIAL CORPORATION and B.E.S.C.R., INC.

CERTIFIED
COPY

*MMB*
*3/7/05*

## OFFICER'S CERTIFICATE

The undersigned, _____, of B.E.S.C.R., Inc  (the "Company"), hereby certifies as follows to Insight Financial Corporation ("INSIGHT"):

1.    The person specified in item 2 below is authorized to execute Master Lease Agreement No. 993 dated February 15, 2005, Equipment Schedule No  01 dated February 15, 2005, any Equipment Schedule(s) entered into thereafter and ancillary documents as may be required between the Company and INSIGHT, on behalf of the Company

2.    The following person is, and has been at all times since _____, a duly qualified and acting officer of the Company, duly elected or appointed to the office set forth opposite his name:

| Name | Office | Signature |
|------|--------|-----------|
| Elizabeth M. Eastwood | President | *[signature]* |

IN WITNESS WHEREOF, the undersigned officer has executed this Certificate and affixed the corporate seal of the Company this *28* day of *Febru* , 2005.

(CORPORATE SEAL)

By: *[signature]*

Name: *PETER EASTWOOD*

Title: *CHIEF FINANCIAL OFFICER*

THE PERSON EXECUTING THE MASTER LEASE AGREEMENT,
RELATED DOCUMENTS AND THIS CERTIFICATE IN SECTION 2
ABOVE MUST BE OTHER THAN THE PERSON EXECUTING THIS
OFFICER'S CERTIFICATE OF THE CORPORATION.

CERTIFICATE OF ACCEPTANCE
TO
EQUIPMENT SCHEDULE NO. 993-01

The undersigned being the Lessee under Equipment Schedule Number 01 dated February 15, 2005 to Master Lease Agreement No  993 dated February 15, 2005 ("Lease") by and between INSIGHT FINANCIAL CORPORATION, as Lessor and the undersigned, as Lessee, hereby certifies as follows:

(a)      The equipment listed below is acceptable by Lessee as being installed and being acceptable under the terms of the Lease.

       EQUIPMENT:      Savin Digital Copier Equipment, per Exhibit A to Equipment Schedule No. 01 attached hereto and made a part hereof.

(b)      The Lessor is not known to be in default under the terms of said Lease and Lessee has no known claim against Lessor under the Lease as of the date thereof.

(c)      There has been no material adverse change in the financial position of the Lessee or, if applicable, Co-Lessee or Guarantor.

(d)      Lessee hereby waives any right it may have under Section 2A-517 of the Uniform Commercial Code or otherwise to revoke this acceptance for any reason whatsoever including, but not limited to (i) any assumption by Lessee that a nonconformity would be cured, (ii) any inducement of acceptance by the Lessor's assurances or any difficulty to discover a nonconformity before acceptance, or (iii) any Lessor default under the Lease.  Lessee further hereby waives its rights under Section 2A-401 and 2A-402 of the Uniform Commercial Code to suspend performance of any of its obligation under the Lease with respect to the Equipment hereby accepted.

ACCEPTANCE DATE:  February 25, 2005

B.E.S.C.R., INC.
(Lessee)

By:

Title:

## EXHIBIT A TO EQUIPMENT SCHEDULE NO. 993-01
### EQUIPMENT/LOCATION

LESSEE: B.E.S.C.R., INC.

AGREEMENT DATE: February 15, 2005

EQUIPMENT LOCATION:   700 S Flower St., Suite 1050, Los Angeles, CA 90017

EQUIPMENT:       Savin Digital Copier Equipment, consisting of the following:

QUANTITY    DESCRIPTION

| | |
|---|---|
| 1 | SAVIN 25105 DIGITAL COPIER         SERIAL NUMBER H3721100008 |
| 1 | |
| 1 | SAVIN 2105 FINISHER |
| 1 | SAVIN 2585/25105 2 HOLE PUNCH KIT |
| 1 | SAVIN 2105 LCT |
| 1 | SAVIN 2085/2105 PRINT CONTROLLER BOARD TYPE 850 |
| 1 | SAVIN 2070 NIC CARD |
| 1 | SAVIN 256MB MEMORY |
| 1 | SAVIN COPY CONNECTOR KIT TYPE 850 |
| 1 | KODAK ADA AHA 29160 68 PIN ULTRA SCSI CARD |
| 1 | KODAK SC3520D PRODUCTION SCANNER |
| 1 | KODAK 6 FT 68 PIN SCSI CABLE |
| 1 | PC BASED FILE SERVER, 40X CDRW, RAID CONTROLLER, 2X 120GBHD, FLAT PANEL MONITOR |
| 1 | DOCULEX PDF CAPTURE SOFTWARE |
| 1 | ADOBE ACROBAT (1 USER LICENSE) |
| 1 | RICOH/ SAVIN INSTALLATION & SETUP |
| 1 | SAVIN 25105 START-UP KIT |
| 2 | DOCULEX PDF CAPTURE FULL-DAY TRAINING |

This Exhibit is hereby attached to and made a part of the Equipment Schedule No. 01 dated February 15, 2005 to Master Lease Agreement No. 993 dated February 15, 2005 between INSIGHT FINANCIAL CORPORATION, as Lessor and B.E.S.C.R., Inc., as Lessee.



1935 Shermer Road • Suite 300 • Northbrook, IL 60062
Phone: 847.509-3300 • Fax: 847.509-8535

NOTICE AND ACKNOWLEDGMENT OF ASSIGNMENT

February 25, 2005

VIA DHL Expressmail

Mr. Peter Eastwood
B.E.S.C.R., Inc.
11 S. LaSalle St., Suite 900
Chicago, IL 60603

Dear Mr. Eastwood:

Reference is made to Equipment Schedule No. 01 dated February 15, 2005 to the Master Lease Agreement No. 993 dated February 15, 2005, (the "Lease"), and any amendments or riders thereto between Insight Financial Corporation ("Lessor") and B.E.S.C.R., Inc. ("Lessee").

Lessor hereby gives Lessee notice that Lessor has assigned the Lease to The CIT Group/Equipment Financing, Inc. ("Assignee").

In order to induce Assignee to accept an assignment of all Lessor's right, title and interest in the Lease, but none of Lessor's obligations with respect thereto, you confirm to Assignee the following:

1.  The Lease is the only agreement between you and the Lessor with respect to the leased equipment. You acknowledge that the copy of the Lease attached hereto is a complete copy of the Lease.

2.  As of March 1, 2005, there are thirty-six (36) payments of rent due under the Lease, each in the amount of $5,193.28, of which you shall pay Assignee thirty-two (32) payments commencing June 1, 2005. Provided all amounts then due and owing are paid, the aggregate amount of rent due under the Lease as of June 1, 2005 is $166,184.96.

3.  You will pay directly to Assignee all payments of rent and other amounts due under the Lease, commencing June 1, 2005.

4.  The leased equipment has been installed and accepted by you and is in good operating order and condition.

5.  You agree that your obligations to make payments to Assignee in the amounts required by the Lease are absolute and unconditional and are independent of your use or enjoyment of the leased equipment or the performance by Lessor of any of its obligations under the Lease or otherwise. You will make all such payments to Assignee regardless of, and will not assert against Assignee, any defense, claim, setoff, recoupment, abatement or other right, existing or future, which you may have against the Lessor or any other person or entity. You will also make all such payments to Assignee regardless of any bankruptcy, insolvency, reorganization or similar event with respect to Lessor and regardless of the effect of any such event on the Lease or your use or enjoyment of the leased equipment.

Mr. Peter Eastwood
B.E.S.C.R., Inc.
February 25, 2005
Page -2- of -2-

6.   Assignee is not responsible for performance of any of the duties of Lessor or any other person under the lease or any other agreement, including but not limited to responsibility for service, repairs or maintenance. You are obligated to pay rent to Assignee regardless of any failure of Lessor or any other person to perform such service, maintenance or repairs required by the Lease.

7.   Wherever the Lease requires you to give notice to, or obtain consent from, the Lessor, you agree to give such notice to, or obtain such consent from, Assignee. You agree not to change, amend or alter the Lease without the prior written consent of Assignee.

8.   In no event shall you, upon demand by Lessor for payment of unpaid rentals, upon acceleration of the maturity of the Lease or otherwise, be obligated to pay any amount in excess of that permitted by law.

Please indicate your confirmation of the foregoing by signing and returning the enclosed copy of this letter directly to Assignee, as follows:

THE CIT GROUP/EQUIPMENT FINANCING, INC.
One CIT Drive, Livingston, NJ 07039
Attn:  Mr. Steve Babeuf – (973) 740-5032 – Fax: (973) 740-5362

                    Very truly yours,

                    INSIGHT FINANCIAL CORPORATION
                    Lessor

                    By:  _____

                    Title:  _____

We confirm the foregoing on _____, 2005.

B.E.S.C.R., INC
Lessee

By:  _____

Title:  _____

THE CIT GROUP/EQUIPMENT FINANCING, INC.
Assignee

By:  _____

Title:  J. STEVENSON BABEUF
        VICE PRESIDENT

CERTIFIED
COPY

*MMB*
*3/8/05*

## PERSONAL GUARANTY

THIS PERSONAL GUARANTY CREATES SPECIFIC LEGAL OBLIGATIONS. When we use the words *you* and *your* in this Personal Guaranty, we mean the Personal Guarantor(s) indicated below. When we use the words. *we, us* and *our* in this Personal Guaranty, we mean INSIGHT FINANCIAL CORPORATION

In consideration of our entering into Equipment Schedule No. 01 dated February 15, 2005 to the Master Lease Agreement dated February 15, 2005 with B E.S.C.R., Inc., as Lessee ("Lease"), you unconditionally and irrevocably guarantee to us, our successors and assigns the prompt payment and performance of all obligations under the Lease. You agree that this is a guaranty of payment and not of collection, and that we can proceed directly against you without first proceeding against the Customer identified in the Lease ("Lessee") or against the equipment covered by the Lease. You waive all defenses and notices, including those of protest, presentment and demand. You agree that we can renew, extend or otherwise modify the terms of the Lease and you will be bound by such changes. If the Lessee defaults under the Lease, you will immediately perform all other obligations of the Lessee under the Lease, including, but not limited to, paying all amounts due under the Lease. You will pay to us all expenses (including attorneys' fees) incurred by us in enforcing our rights against you or the Lessee. This is a continuing guaranty that will not be discharged or affected by your death and will bind your heirs and personal representatives. You waive any right to seek repayment from the Lessee in the event you must pay us. If more than one personal guarantor has signed this Personal Guaranty, each of you agree that your liability is joint and several.

THIS PERSONAL GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS. YOU CONSENT TO THE JURISDICTION OF ANY COURT LOCATED WITHIN THAT STATE. BOTH YOU AND WE EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY.

Personal Guarantor (no title)                 Personal Guarantor (no title)

Elizabeth Marie Eastwood          February 15, 2005        Steven H, Artstein
   February 15, 2005
Print Name  ELIZABETH M. EASTWOOD   Date 2/25/05   Print Name  STEVEN H ARTSTEIN   2/25/05
          Date

2337 Wyckwood Dr., Aurora, IL 60506        915 Huckleberry Lane, Northbrook, IL 60062
Home Street Address/City/State/Zip         Home Street Address/City/State/Zip

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        (630) 890-1039        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
   (847) 498-5196
Social Security Number        Phone No.        Social Security Number
   Phone No.